# Exhibit A

# United States Bankruptcy Court

# District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>DEHON, INC.,<br><br>Debtor | ) Chapter 11<br>) Case No. 02-41045-HJB<br>) (Substantively Consolidated)<br>)<br>)<br>)<br>)<br>) |

|  |  |
|---|---|
| STEPHEN S. GRAY,<br>AS PLAN ADMINISTRATOR OF<br>DEHON, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN BARNETT, R. SCHORR<br>BERMAN, JOHN W. BROWN, JILL K.<br>CONWAY, PAUL E. GRAY,<br>JEROME H. GROSSMAN,<br>MICHAEL HAWLEY, THOMAS<br>JOBSKY, ASHOK S. KALELKAR,<br>MARGARET G. KERR, LORENZO<br>LAMADRID, CHARLES R. LAMANTIA,<br>PAMELA W. MCNAMARA,<br>BERNHARD METZGER, ARNO A.<br>PENZIAS, JAVIER ROTLLANT,<br>CLAIRE RUSKIN, STUART SAINT,<br>GERHARD SCHULMEYER, PETER<br>WOOD, and WOLFGANG ZILLESSEN,<br><br>Defendants | ) Adversary Proceeding<br>) No. 04-04287-HJB<br>) |

102

## ORDER

For the reasons stated by this Court at the hearing held on October 26, 2004 regarding "Jill Ker Conway and Paul E. Gray's Motion for Determination that Proceedings are Non-Core," "Defendants R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and Gerhard Schulmeyer's Motion for Determination that Certain Claims are Non-Core Proceedings," and "Defendants R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and Gerhard Schulmeyer's Motion to Dismiss" (the "Motion to Dismiss"), as amended in this Court's Memorandum of Decision of even date; in accordance with paragraph 4 of the District Court's order of January 25, 2005; and pursuant to 28 U.S.C. § 157(b)(3), this Court rules that:

1. the following claims made by the Plaintiff are non-core proceedings:

   a. Counts I through IV of the complaint made under Massachusetts General Law ch. 156B, § 61;

   b. Count V of the complaint for breach of fiduciary duty;

   c. Counts XIV, XXVII and XXXIII of the complaint made under Massachusetts General Law ch. 156B, § 45;

   d. Counts XV, XXVIII, and XXXIV of the complaint for unjust enrichment; and

   e. Count XLV of the complaint for judgment on a promissory note; and

2. the balance of the Plaintiff's claims, Counts VI through XIII, XVI through XXVI, XXIX through XXXII and XXXV through XLIV, are core proceedings under 28 U.S.C. § 157(b).

The Court DENIES the Motion to Dismiss with respect to Counts VI-IX and XXXVI-XLIV of the Complaint.

By the Court,

Dated: October 5, 2005

Henry J. Boroff
United States Bankruptcy Judge

cc:    United States Trustee
       Plaintiff's Counsel
       Defendants' Counsel

# United States Bankruptcy Court

## District of Massachusetts

| | |
|---|---|
| In re:<br><br>DEHON, INC.,<br><br>Debtor | Chapter 11<br>Case No. 02-41045-HJB<br>(Substantively Consolidated) |
| STEPHEN S. GRAY,<br>AS PLAN ADMINISTRATOR OF<br>DEHON, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN BARNETT, R. SCHORR<br>BERMAN, JOHN W. BROWN, JILL K.<br>CONWAY, PAUL E. GRAY,<br>JEROME H. GROSSMAN,<br>MICHAEL HAWLEY, THOMAS<br>JOBSKY, ASHOK S. KALELKAR,<br>MARGARET G. KERR, LORENZO<br>LAMADRID, CHARLES R. LAMANTIA,<br>PAMELA W. MCNAMARA,<br>BERNHARD METZGER, ARNO A.<br>PENZIAS, JAVIER ROTLLANT,<br>CLAIRE RUSKIN, STUART SAINT,<br>GERHARD SCHULMEYER, PETER<br>WOOD, and WOLFGANG ZILLESSEN,<br><br>Defendants | Adversary Proceeding<br>No. 04-04287-HJB |

103

## SUBMISSION OF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

With respect to "Defendants R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and Gerhard Schulmeyer's Motion to Dismiss" and pursuant to the District's Court's Order of January 25, 2005 (Tauro,J.) and 28 U.S.C. § 157(c)(1), I respectfully submit to the District Court Proposed Findings of Fact and Conclusions of Law of even date as to each of (i) Counts I-V and (ii) Count XLV.

DATED: October 5, 2005                    Respectfully submitted,

                                         Henry J. Boroff
                                         United States Bankruptcy Judge

cc:    United States trustee
       Plaintiff's Counsel
       Defendants' Counsel

# United States Bankruptcy Court

# District of Massachusetts

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 02-41045-HJB |
|  | ) | (Substantively Consolidated) |
| DEHON, INC., | ) |  |
|  | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
| STEPHEN S. GRAY, | ) | Adversary Proceeding |
| AS PLAN ADMINISTRATOR OF | ) | No. 04-04287-HJB |
| DEHON, INC., | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| BRIAN BARNETT, R. SCHORR | ) |  |
| BERMAN, JOHN W. BROWN, JILL K. | ) |  |
| CONWAY, PAUL E. GRAY, | ) |  |
| JEROME H. GROSSMAN, | ) |  |
| MICHAEL HAWLEY, THOMAS | ) |  |
| JOBSKY, ASHOK S. KALELKAR, | ) |  |
| MARGARET G. KERR, LORENZO | ) |  |
| LAMADRID, CHARLES R. LAMANTIA, | ) |  |
| PAMELA W. MCNAMARA, | ) |  |
| BERNHARD METZGER, ARNO A. | ) |  |
| PENZIAS, JAVIER ROTLLANT, | ) |  |
| CLAIRE RUSKIN, STUART SAINT, | ) |  |
| GERHARD SCHULMEYER, PETER | ) |  |
| WOOD, and WOLFGANG ZILLESSEN, | ) |  |
|  | ) |  |
| Defendants | ) |  |
|  | ) |  |

104.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## MOTION TO DISMISS COUNT XLV

Before me is "Defendants R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and Gerhard Schulmeyer's Motion to Dismiss" (the "Motion to Dismiss") the complaint filed against them by the Plan Administrator of Dehon, Inc. (the "Debtor"). In Count XLV of that complaint, the Plan Administrator seeks judgment against defendant McNamara to recover outstanding amounts owed to the Debtor under one or more promissory notes (the "Promissory Notes"). This recovery is predicated, in turn, on the Plan Administrator's successful avoidance of a mutual release entered into by McNamara and the Debtor which relieved McNamara of her obligations under the Promissory Notes (the "Release"). The Plan Administrator seeks to avoid the Release as a preferential or fraudulent transfer under the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"). In the Motion to Dismiss, McNamara seeks dismissal of Count XLV on grounds that the core claims for avoidance must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Federal Rules"). I have denied the Motion to Dismiss with respect to all core claims.[1]

---

[1] Subsequent to the filing of the complaint, the United States District Court for the District of Massachusetts withdrew its reference as to all claims, both core and non-core, but further ordered that (1) all pretrial proceedings, including determinations as to whether claims are core or non-core, would remain before me; (2) I had jurisdiction to enter final judgments with respect to pretrial dispositive motions for all core claims; and (3) I should provide the District Court with recommendations and proposed findings of fact and conclusions of law with respect to pretrial dispositive motions affecting non-core claims.

Contemporaneous with this Memorandum, I have issued an order ruling that Counts I-V, XIV, XXVII, XXVIII, XXXIII, XXXIV and XLV are non-core proceedings and the balance of the Counts are core proceedings. That order further denies the Motion to Dismiss with regard to all core claims.

2

However, I cannot make a ruling on the Motion to Dismiss with respect to Count XLV, because the matter is non-core. Therefore, I offer the following to the United States District Court for the District of Massachusetts, pursuant to its order of January 25, 2005 (Tauro, J.) and 28 U.S.C. § 157(c)(1) as proposed findings of fact and conclusions of law.

I.    PROCEDURAL POSTURE

As I have belabored the facts and events relevant to the present adversary proceeding in a concurrently-issued Memorandum addressing the defendants' Motion to Dismiss Counts I-V of the complaint, the following discussion will be brief. The plaintiff in this case is the Plan Administrator for the Debtor's confirmed Chapter 11 plan of liquidation, which plan authorizes him to pursue all rights of action on behalf of the Debtor's bankruptcy estate. In the present adversary proceeding, the Plan Administrator seeks recovery against former members of the Debtor's Board of Directors, including defendant McNamara, on several theories arising under various state and federal laws.

Pursuant to the District Court's January 25 order, see, supra, Footnote 1, I have before me the Motion to Dismiss, which seeks dismissal of non-core claims in Counts I-V and XLV of the complaint and core claims in Counts VI-IX and XXXVI-XLIV. I have denied the Motion to Dismiss as to all core claims and have issued recommendations and proposed findings of fact and conclusions of law with regard to non-core claims I-V. The only remaining issue to be addressed is the Motion to Dismiss Count XLV, the non-core claim for judgment against McNamara on the Promissory Notes.

3

## II.   DISCUSSION

The claims against McNamara are raised in Counts XXXVI through XLV of the complaint. With the exception of Count XLV, all of those claims are core bankruptcy matters.[2] A majority of the core claims seek avoidance of certain transfers made by the Debtor to McNamara prior to the filing of the Debtor's bankruptcy petition. Included among those transfers is the release of McNamara's obligations to the Debtor under the Promissory Notes.   Assuming the successful avoidance of the Release, the Plan Administrator seeks judgment against McNamara for the amount due under the Promissory Notes.

Because Count XLV is contingent upon the Plan Administrator's successful avoidance of the Release, it would follow that the Plan Administrator has not stated a claim for judgment on the Promissory Notes if I had ruled that the core claims for preferential and fraudulent transfers should be dismissed under Federal Rule 12(b)(6). I did not, however, dismiss the core claims against McNamara.  Instead, I have decided that those counts adequately state claims under the relevant provisions of the Bankruptcy Code.  Thus, it would be inappropriate to dismiss Count XLV at this time, as it is possible that the Plan Administrator may establish McNamara's continuing liability under the Promissory Notes.

---

[2] Count XXXVI seeks avoidance of preferential transfers pursuant to § 547 of the Bankruptcy Code; Counts XXXVII and XXXVIII seek avoidance of fraudulent transfers pursuant to § 548 of the Code; Counts XXXIX through XLII seek avoidance of fraudulent transfers pursuant to § 544 of the Code; Count XLIII seeks recovery of the value of any avoided transfers pursuant to § 550 of the Code; and Count XLIV seeks disallowance of any claim asserted by McNamara against the Debtor's bankruptcy estate, to the extent McNamara fails to pay over the value of any avoided transfers, pursuant to § 502 of the Code.

4

III.    <u>CONCLUSION</u>

Because I have denied the Motion to Dismiss with respect to the core claims against defendant McNamara seeking to avoid the Release, I respectfully recommend that the Motion to Dismiss Count XLV, seeking judgment on the Promissory Notes, also be DENIED.

DATED: October 5, 2005                    By the Court,

Henry J. Boroff
United States Bankruptcy Judge

# United States Bankruptcy Court

## District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>DEHON, INC.,<br><br>Debtor | Chapter 11<br>Case No. 02-41045-HJB<br>(Substantively Consolidated) |
| STEPHEN S. GRAY,<br>AS PLAN ADMINISTRATOR OF<br>DEHON, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN BARNETT, R. SCHORR<br>BERMAN, JOHN W. BROWN, JILL K.<br>CONWAY, PAUL E. GRAY,<br>JEROME H. GROSSMAN,<br>MICHAEL HAWLEY, THOMAS<br>JOBSKY, ASHOK S. KALELKAR,<br>MARGARET G. KERR, LORENZO<br>LAMADRID, CHARLES R. LAMANTIA,<br>PAMELA W. MCNAMARA,<br>BERNHARD METZGER, ARNO A.<br>PENZIAS, JAVIER ROTLLANT,<br>CLAIRE RUSKIN, STUART SAINT,<br>GERHARD SCHULMEYER, PETER<br>WOOD, and WOLFGANG ZILLESSEN,<br><br>Defendants | Adversary Proceeding<br>No. 04-04287-HJB |

1

*105*

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**MOTION TO DISMISS COUNTS I-V**

Before me is "Defendants R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and Gerhard Schulmeyer's Motion to Dismiss" (the "Motion to Dismiss") the complaint filed against them and fifteen other defendants[1] (together, the "Defendants") by the Plan Administrator of Dehon, Inc. (the "Debtor"). In that complaint, the Plan Administrator alleges, *inter alia*, that the Defendants, all former directors of the Debtor, violated Massachusetts General Laws ("MGL") ch. 156B, § 61 ("section 61" or "§ 61") and breached their fiduciary duties by authorizing stock repurchases and dividend payments while the Debtor was insolvent. The issues raised in the Motion to Dismiss require a ruling as to whether the Plan Administrator has pled facts sufficient to state a claim under § 61 and for breach of the Defendants' fiduciary duties and whether those claims are preempted by the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Because the issues raised are non-core, however, I cannot make that ruling. Instead, I offer the following to the United States District Court for the District of Massachusetts, pursuant to its order of January 25, 2005 (Tauro, J.) and 28 U.S.C. § 157(c)(1), as proposed findings of fact and conclusions of law.

---

[1] Defendant Peter Wood was dismissed voluntarily shortly after the commencement of this adversary proceeding.

2

I.    FACTS AND TRAVEL OF THE CASE

A.    Relevant Procedural History

In February of 2002, the Debtor, then known as Arthur D. Little, Inc.,[2] and certain of its subsidiaries filed for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code") in the Bankruptcy Court for the District of Delaware. In March of 2002, other subsidiaries of the Debtor filed for Chapter 11 relief in the District of Massachusetts. Soon thereafter, and for reasons not here relevant, the Delaware cases were transferred to the District of Massachusetts. Pursuant to the Debtor's plan of liquidation, confirmed by this Court in February of 2003, Stephen S. Gray was appointed Plan Administrator and was authorized to pursue all rights of action on behalf of the estate.

On February 4, 2004, the Plan Administrator commenced the present adversary proceeding against the Defendants. The complaint contains forty-five counts; Counts I through IV allege illegal distributions under MGL ch. 156B, § 61; Count V alleges breach of fiduciary duty by all defendants, and Counts VI through XLV seek recovery from various individual defendants.[3] On April 7, 2004, defendants Conway and Gray filed a "Motion to Withdraw Reference," and, shortly thereafter, defendants Berman, Brown, Grossman, McNamara, Penzias and Schulmeyer filed a similar motion (together, the "Motions to

_____

[2] The Debtor's name was changed from Arthur D. Little, Inc. to Dehon, Inc. following a court-approved sale of substantially all of the Debtor's assets in April of 2002.

[3] These Counts include claims for the avoidance and recovery of preferential and fraudulent transfers under the Bankruptcy Code and also seek to recover illegal distributions from the Defendants as shareholders of the Debtor under MGL ch. 156B, § 45.

3

Withdraw Reference").[4]  Simultaneous with those motions, the aforementioned groups of defendants filed, respectively, a "Motion for Determination that Proceedings are Non-Core" and a "Motion for Determination that Certain Claims are Non-Core Proceedings" (together, the "Motions for Core/Non-Core Determination"), both of which sought a determination that Counts I through V are non-core claims.[5]  Defendants Berman, *et al.* also filed the present Motion to Dismiss therewith.[6]

While the Motions to Withdraw Reference were pending before the District Court, I held a hearing on the Motions for Core/Non-Core Determination and the Motion to Dismiss. At that hearing, I preliminarily ruled that Counts I through V were non-core claims, and the remaining counts core matters.  I then stated that I would deny the Motions to Dismiss insofar as they refer to core matters[7] and stayed the adversary proceeding in its entirety pending the District Court's ruling on the Motions to Withdraw Reference.

---

[4] In accordance with 28 U.S.C. § 157(a) and pursuant to Massachusetts District Court Local Rule 201, bankruptcy cases and related proceedings in Massachusetts are "referred to the judges of the bankruptcy court for the District of Massachusetts." However, under 28 U.S.C. § 157(d):

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

[5] Core proceedings are, generally, matters that "arise under" or "arise in" a case under the Bankruptcy Code, and include matters involving the administration of the estate, property of the estate, and avoidance actions. See 28 U.S.C. § 157(b)(2); Ralls v. Docktor Pet Ctrs., Inc., 177 B.R. 420, 424-25 (D. Mass. 1995). Under § 157(c)(1), this Court must, without the consent of the parties (which has not been given in the present case), submit proposed findings of fact and conclusions of law to the district court for all non-core matters. 11 U.S.C. § 157(c)(1).

[6] All of the remaining Defendants, with the exceptions of defendants Kalelkar, LaMantia and Hawley, filed notices of their joinder in the Motion to Dismiss.

[7] In addition to Counts I-V, the Motion to Dismiss specifically sought dismissal of core claims in Counts VI-IX and XXXVI-XLIV.

4

In January of 2005, the District Court (Tauro, J.) allowed the Motions to Withdraw

Reference as to all counts against the Defendants. The District Court further ordered that

(1) all pretrial proceedings, including determinations as to whether claims are core or non-

core, would remain before me; (2) I had jurisdiction to enter final judgments with respect

to pretrial dispositive motions for all core claims; and (3) I should provide the District Court

with recommendations and proposed findings of fact and conclusions of law with respect

to pretrial dispositive motions affecting non-core claims. Pursuant to that order, I now offer

my recommendation and proposed findings of fact and conclusions of law on the Motion

to Dismiss with regard to Counts I through V of the Complaint.[8]

### B.    Facts

The Defendants have brought their Motion to Dismiss under Rule 12(b)(6) of the

Federal Rules of Civil Procedure (the "Federal Rules"), arguing that the Plan Administrator

has "fail[ed] to state a claim upon which relief may be granted . . . ."[9]  Therefore, I accept

the facts alleged in the complaint as true for the purposes of this motion. See Brandt v.

Hicks, Muse & Co. (In re Healthco Int'l, Inc.), 195 B.R. 971, 977 (Bankr. D. Mass. 1996).

---

[8] Apparently, notwithstanding my pronouncements from the bench, no order with respect to the distinction between core and non-core matters was ever entered. Furthermore, on a fresh examination of the various Counts, it appears that Counts XIV, XV, XXVII, XXVIII, XXXIII, XXXIV and XLV are also non-core matters. Accordingly, contemporaneous with this Memorandum, I will issue an order ruling that (1) Counts I-V, XIV, XXVII, XXVIII, XXXIII, XXXIV and XLV are non-core proceedings, (2) the balance of the Counts are core proceedings; and (3) the motion to dismiss the core issues is denied.

Furthermore, the Motion to Dismiss sought dismissal of Count XLV of the complaint which seeks judgment on a promissory note. Accordingly, also contemporaneous with this Memorandum, I will issue proposed findings of fact and conclusions of law regarding the Defendants' motion to dismiss Count XLV.

[9] Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes Federal Rules 12(b)-(h) applicable in adversary proceedings commenced before the bankruptcy courts.

Each of the Defendants served as a member of the Debtor's Board of Directors (the "Board") at various times from June 1, 1999 through the filing of the Debtor's Chapter 11 petition in February of 2002. According to the complaint, on July 20, 1999, the Board voted to suspend dividend payments on the Debtor's stock for the reason that, in the Board's view, the payments would not be in the Debtor's best interest. The complaint further alleges that, subsequent to the decision to suspend dividend payments, the Board authorized various distributions, described in more detail below, at a time when the Debtor:

> (i) was insolvent or was rendered insolvent [by the transaction]; (ii) was engaged or about to engage in a business or transaction for which the remaining assets of Dehon were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

The Plan Administrator states that none of the amounts distributed have been repaid to the Debtor, including by means of offset.

### 1.    The "Lamadrid Plan"

Lorenzo Lamadrid was a member of the Board and served as the Debtor's chief executive officer from July 1, 1999 through May 31, 2001. On June 3, 1999, prior to Lamadrid's employment by the Debtor, the Board authorized a stock-based deferred compensation plan for Lamadrid (the "Lamadrid Plan").[10] Under that plan, Lamadrid was to receive cash distributions in five installments based on semi-annual valuations of the Debtor's common stock ("Dehon Stock"). Following Lamadrid's termination of employment

---

[10] According to the complaint, defendants Brown, Conway, Gray, Grossman, Hawley, Kalelkar, Kerr, LaMantia, McNamara, Penzias and Rotllant voted to authorize and approve the Lamadrid Plan.

6

as the Debtor's chief executive officer on May 31, 2001, the Debtor repurchased all of Lamadrid's shares of Dehon Stock.

      2.    Stock Plan Amendments and Stock Repurchase Payments

During the relevant time period, the Debtor's current and former employees held shares of Dehon Stock through various stock plans or trusts (the "Stock Plans"). The Stock Plans either required or gave the option to departing employees to "put" their shares of Dehon Stock to the Debtor for repurchase. In addition, employees aged fifty-five and older who owned three times their base compensation in Dehon Stock were given the option of putting, for repurchase, some shares of Dehon Stock to the Debtor during the course of their employment. Cash distributions on Dehon Stock to departing employees were made twice yearly in amounts based on semi-annual valuations of Dehon Stock.

Each Stock Plan authorized the Board to discontinue, change or terminate the Stock Plans at any time. On September 17, 1999, the Board voted to amend the Stock Plans.[11] The amendments allowed shareholders putting their stock to the Debtor to receive the repurchase payment either in a lump sum or over five years, which payments would be based on the then-applicable valuation of Dehon Stock.

In May, 2000, the Debtor made stock repurchase payments in a total amount of $4,026,987.52. In October, 2000, the Debtor paid $185,639.09 in stock repurchase payments. In 2001, the Debtor paid a total of $884,854.94 to repurchase stock.

---

[11] According to the complaint, defendants Brown, Conway, Gray, Grossman, Kalelkar, Kerr, Lamadrid, McNamara, Penzias, Saint, Schulmeyer and Zillesen voted to authorize and approve the amendments to the Stock Plans.

### 3. Dividend Payments on MDT Preferred Stock

The Arthur D. Little, Inc. Memorial Drive Trust (the "MDT") also held shares of common stock in the Debtor. On October 15, 1999, the Board voted to exchange 749,276 shares of this common stock for an equal number of shares of newly-issued preferred stock providing for an annual preferred dividend of 7.125 percent.[12] On May 1, 2000, the Debtor paid a cash dividend of $1,580,410.40 to MDT on its preferred stock.

### 4. Share Distribution and Enhanced Ownership Programs

On December 10, 1999, the Board approved a share distribution program that had been presented to the Board on October 15, 1999, as amended by an enhanced ownership program.[13] These programs expanded the number of persons eligible to hold Dehon Stock and to receive repurchase payments for that stock.

## II. POSITIONS OF THE PARTIES

### A. Sufficiency of the Complaint under Federal Rule 8(a)

In Counts I-IV of the complaint, the Plan Administrator alleges that each of the transactions described above constituted illegal distributions under MGL ch. 156B, § 61, which prohibits stock repurchase and dividend payments at a time when a company is

---

[12] According to the complaint, defendants Brown, Conway, Gray, Grossman, Kalelkar, Kerr, Lamadrid, McNamara, Penzias, Saint, Schulmeyer and Zillessen voted to authorize and approve the exchange of MDT's shares of common stock for the shares of preferred stock and the issuance of the preferred stock.

[13] According to the complaint, defendants Berman, Brown, Conway, Grossman, Kalelkar, Kerr, Lamadrid, McNamara, Penzias, Saint, Schulmeyer and Zillessen voted to authorize and approve the share distribution and enhanced ownership programs.

insolvent. Pursuant to § 61, the Plan Administrator seeks to hold the Defendants jointly and severally liable for distributions which they authorized.

In Count V, the Plan Administrator alleges that the Defendants breached their fiduciary duties of good faith, due care and loyalty, which they "owed, from the time that Dehon entered the zone of insolvency onward, [to] Dehon, its stockholders, its creditors, and the entirety of the Dehon enterprise . . . ." Asserting that the Defendants had the ability to terminate, modify or amend the Stock Plans in order to cease making stock repurchase and dividend payments, the Plan Administrator alleges that their failure to do so constituted a breach of their fiduciary duties in light of the Debtor's financial condition.

The Defendants' arguments in support of the Motion to Dismiss are largely based on their characterization of MGL ch. 156B, § 65 ("section 65" or "§ 65") as a codification of the judicially-created "business judgment rule." In their view, § 65 gives rise to a presumption that the Defendants acted in good faith and with the requisite standard of care. According to the Defendants, the facts as alleged fail to overcome that presumption because the Plan Administrator does not challenge: (1) the Defendants' disinterestedness; (2) the Defendants' good faith; or (3) the reasonableness of the Defendants' investigations regarding the challenged decisions. Furthermore, the Defendants argue that § 65 is a complete defense and applies without exception; thus, the business judgment rule presumption attaches even if the Debtor were insolvent at the time the decisions and distributions were made. The Defendants contend that the absence of factual allegations

9

sufficient to rebut that presumption requires the dismissal of Counts I-V under Federal Rule 12(b)(6).[14]

In response, the Plan Administrator questions whether it is appropriate to consider § 65 or the protections afforded by the business judgment rule at this stage of the pleadings. Asserting that § 65 speaks of a *defense* to claims and does not provide the Defendants with "immunity" from legal challenges to their decisions made as directors, the Plan Administrator argues that it is not properly considered on a motion to dismiss. Furthermore, the Plan Administrator, relying on cases from other jurisdictions, argues that the business judgment rule does not give rise to a presumption that the Defendants acted in good faith and with the requisite care with regard to decisions made while the Debtor was insolvent or within the "zone of insolvency."

Assuming the applicability of the business judgment rule, the Plan Administrator argues that the complaint is sufficient to overcome a presumption of good faith and due care. According to the Plan Administrator, the Board's decision to suspend dividend payments on Dehon Stock in July of 1999 calls into question the Defendants' good faith and/or due care with regard to the subsequent decisions to repurchase Dehon Stock and pay dividends on the MDT preferred stock. The Plan Administrator characterizes the Defendants' argument as an attempt to impute a "heightened pleading standard" into the

---

[14] The Defendants also argue that the complaint fails to provide sufficient notice of the claim against them under Count V, given that the Debtor had established over thirty stock plans. I find that argument wholly unpersuasive. First, if the Defendants were truly concerned with the vagueness of the pleading, they could have moved for a more definite statement under Federal Rule 12(e). Second, the Defendants cannot seriously argue confusion about actions taken by them as directors and with respect to plans, a list of which they attached to the memorandum in support of their motion.

10

claims brought under § 61 and argues that the complaint is sufficient under Federal Rule 8(a), because it contains a "short and plain statement of the claim showing that the pleader is entitled to relief" and alleges facts sufficient to provide notice of the claims against the Defendants.

## B.    ERISA Preemption

The Defendants maintain that the Plan Administrator's § 61 and breach of fiduciary duty claims are preempted by ERISA with regard to the Arthur D. Little, Inc. Employee Stock Ownership Plan and the Arthur D. Little Employees' MDT Retirement Plan (the "ERISA Plans"), both of which qualify as "plans" within the meaning of ERISA.

First, the Defendants argue that the Plan Administrator's claims have an impermissible "connection with" the ERISA-qualified plans, because the challenges to distributions made to the ERISA Plans conflict with "ERISA's focus on beneficiary interests." Second, the Defendants argue that the Plan Administrator's claims will require the Court to refer to the ERISA Plans in order to determine whether the Defendants had authority to cease making the challenged distributions. Under First Circuit and Supreme Court precedent, they contend, this required reference to the ERISA Plans to resolve the § 61 and breach of fiduciary duty claims compels a finding that those claims are preempted.

The Plan Administrator, however, posits that recent Supreme Court precedent is "more guarded" toward finding that ERISA preempts state law. The Plan Administrator says that the Defendants have failed to overcome the "starting presumption against preemption" that now dominates ERISA preemption jurisprudence. The Plan Administrator argues that the § 61 and breach of fiduciary duty claims do not have a "connection with"

11

the ERISA plans, because the claims are not directed toward any of the ERISA Plan

administrators or beneficiaries and do not challenge the ERISA fiduciaries' management,

administration, conduct or governance of the plans.  Furthermore, the Plan Administrator

directs my attention toward cases in which the courts held that ERISA's objectives of

protecting participants and beneficiaries from mismanagement by plan fiduciaries are not

implicated by purely corporate management decisions that indirectly affect ERISA plans.

Thus, the claims do not have a "connection with" ERISA-qualified plans.

Finally, arguing that the claims are independent of the ERISA Plans – i.e., they "can

and do[ ] exist without the ESOP or MDT plans" – the Plan Administrator says that the

possibility that the Court may be required to undertake a minimal reading of the ERISA

Plans does not qualify as a "reference to" the ERISA Plans under ERISA preemption law.

## III.    DISCUSSION

### A.    Standard for Dismissal under Federal Rule 12(b)(6)

As the First Circuit has explicitly stated:

a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to
state a claim upon which relief can be granted "only if it is clear that no relief
could be granted under any set of facts that could be proved consistent with
the allegations."

Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 473 (1st Cir. 2002) (quoting Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984)).  Any doubt as to whether, under the Federal Rules, a

heightened pleading standard may apply to claims otherwise governed by Rule 8(a) has

been concretely resolved by the Supreme Court: " A requirement of greater specificity for

particular claims is a result that 'must be obtained by the process of amending the Federal

12

Rules, and not by judicial interpretation.'" <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002). The purpose of the "notice pleading" standard of Federal Rule 8(a) is to focus resolution of claims on the merits, a task made easier by liberal discovery rules and made more manageable by summary judgment. <u>See id.</u>

Therefore, when considering the sufficiency of the Plan Administrator's complaint in light of the Defendants' Motion to Dismiss for failure to state a claim, I must "take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." <u>Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992); <u>see also, Swierkiewicz</u>, 534 U.S. at 510 n.1. This review of the plaintiff's complaint, "before the reception of any evidence either by affidavit or admissions, . . . is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," <u>Swierkiewicz</u>, 534 U.S. at 511, and there is no "obligation on the pleader to identify in the complaint all the evidence that would later be offered in support of the claim pleaded." <u>Gorski</u>, 290 F.3d at 474.

## B.    The Business Judgment Rule and Pleading Standards

The Plan Administrator's complaint is sufficient under Federal Rule 8(a) to state a claim under MGL ch. 156B, § 61. Section 61 provides, in relevant part,

> If the corporation is insolvent or is rendered insolvent by the making of any [distribution . . . to one or more of its stockholders, whether by way of a dividend, repurchase or redemption of stock] . . . the directors who voted to authorize such distribution shall be jointly and severally liable to the corporation for the amount of such distribution made when the corporation is insolvent . . . .

13

Since the Plan Administrator has alleged that the Debtor was insolvent or near-insolvent at the time the Defendants authorized the challenged stock repurchases and dividend payments, the facts as alleged would appear to sufficiently state a claim under § 61.

The Defendants, however, maintain that the complaint is insufficient in light of MGL ch. 156B, § 65, which details the types of information on which corporate directors are entitled to rely. See M.G.L. ch. 156B, § 65. That section also provides that a director who acts according to § 65's standards has "a complete defense to any claim asserted against him [or her], whether under sections sixty to sixty-four . . . except as expressly provided by statute, by reason of his [or her] being or having been a director . . . ." Id.[15]

---

[15] More fully, § 65 provides:

A director, officer or incorporator of a corporation shall perform his duties as such . . . in good faith and in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In determining what he reasonably believes to be in the best interests of the corporation, a director may consider the interests of the corporation's employees, suppliers, creditors and customers, the economy of the state, region and nation, community and societal considerations, and the long-term and short-term interests of the corporation and its stockholders . . . . In performing his duties, a director, officer or incorporator shall be entitled to rely on information, opinions, reports or records, including financial statements, books of account and other financial records, in each case presented by or prepared by or under the supervision of (1) one or more officers or employees of the corporation whom the director, officer or incorporator reasonably believes to be reliable and competent in the matters presented, or (2) counsel, public accountants or other persons as to matters which the director, officer or incorporator reasonably believes to be within such person's professional or expert competence, or (3) in the case of a director, a duly constituted committee of the board upon which he does not serve, as to matters within its delegated authority, which committee the director reasonably believes to merit confidence, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. The fact that a director, officer or incorporator so performed his duties shall be a complete defense to any claim asserted against him, whether under sections sixty to sixty-four, inclusive, or otherwise, except as expressly provided by statute, by reason of his being or having been a director, officer or incorporator of the corporation.

14