The Defendants view this language as a codification of the judicially-created "business judgment rule," which is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984); see also Harhen v. Brown, 431 Mass. 838, 845, 730 N.E.2d 859 (2000) ("The business judgment rule affords protection to the business decisions of directors, . . . because directors are presumed to act in the best interests of the corporation."). Indeed, some Massachusetts decisions support the Defendants' argument that Massachusetts law embodies a robust version of the business judgment rule. See, e.g., Seidman v. Cent. Bancorp., Inc., 16 Mass. L. Rptr. 383, 2003 WL 21528509, *8 (Mass. Super. 2003) (citing S. Solomont & Sons Trust, Inc. v. New Eng. Theatres Oper. Corp., 326 Mass. 99, 113-15 (Mass. 1950)); Harhen v. Brown, 431 Mass. at 842-45). The Massachusetts cases cited by the Defendants are, however, largely inapposite to the facts alleged here.

First, the Defendants rely primarily on language from Massachusetts decisions discussing the business judgment rule presumption in the context of shareholder derivative suits.[16] But those cases are governed by Massachusetts Rule of Civil Procedure

---

[16] In Harhen v. Brown, the SJC dismissed a challenge to a board of director's refusal to pursue litigation after the plaintiff shareholder's demand, finding that the complaint contained no facts sufficient to overcome the business judgment rule presumption. 730 N.E.2d 859. The Court held that, with respect to demand refusal cases in the shareholder derivative suit context, the "business judgment rule affords protection to the business decisions of directors, . . . because directors are presumed to act in the best interests of the corporation." Harhen, 730 N.E.2d at 866. Thus, in order to overcome the presumption, and show that the demand was wrongly refused, the plaintiff must allege facts demonstrating that the board was not disinterested, did not act in good faith or did not reasonably investigate the demand. Id. at 866-67; see also Bartlett v. N.Y., N.H. & H.R. Co., 109 N.E. 452, 453 (Mass. 1915) (in shareholder derivative suit, plaintiff must allege facts showing that directors have failed to act after a reasonable demand or that demand would be futile,

15

23.1, which requires claimants in such suits to allege certain facts with particularity. See Mass. R. Civ. P. 23.1; Fed. R. Civ. P. 23.1; see also Harhen, 730 N.E.2d 859; Aronson v. Lewis, 473 A.2d 805; Houle v. Low, 556 N.E.2d 51 (Mass. 1990). The claims made here are not derivative.

Second, although it is clear that the business judgment rule exists in some form under Massachusetts law and that "Massachusetts has always recognized the need for courts to abstain from interfering in business judgments," Houle v. Low, 556 N.E.2d at 59; see also Harhen, 739 N.E.2d 859, the application of business judgment principles to the whole of Massachusetts corporate law is far from certain. One need only look to the comments to the most recent version of § 65, now found at MGL ch. 156D, § 8.30, to reach this conclusion:

> Section 8.30 defines the general standard of conduct for directors as does its counterpart, BCL § 65. . . . Even before statutory formulations of directors' duty of care, courts sometimes invoked the business judgment rule in determining whether to impose liability in a particular case. In doing so, courts have sometimes used language similar to the standards set forth in § 8.30(a). The elements of the business judgment rule and the circumstances for its application are continuing to be developed by the courts. In view of that continuing judicial development, § 8.30 does not try to codify the business judgment rule or to delineate the differences, if any, between that rule and the standards of director conduct set forth in this section. That is a task left to the courts.

Finally, in many of the cases cited by the Defendants, as in most cases, the challenged business decisions involved corporate actions that were, objectively, legitimate and lawful. See, e.g., Harhen v. Brown, 730 N.E.2d 859 (board's decision not to pursue

---

since "[d]irectors and the majority of shareholders are presumed to be acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned, and with a consciousness of duty toward the corporation and all its stockholders.").

16

litigation following plaintiff shareholder's demand); Houle v. Low, 556 N.E.2d 51 (challenge to defendants' formation of a corporation); Spiegel v. Beacon Particip., Inc., 8 N.E.2d 895 (Mass. 1937) (purchase of a promissory note from bank). In those cases, absent any facts alleging or giving rise to a reasonable inference that the directors had abdicated their statutory or common-law duties, there was nothing inherently "wrong" with the chosen course of action.

Under the facts presented in the Plan Administrator's complaint, however, the challenged distributions were *not* legitimate business decisions, regardless of whether the Defendants believed that they were in the best interests of the Debtor, since the Debtor's insolvency renders such distributions unlawful under § 61. As the Massachusetts Supreme Judicial Court alluded to in Harhen, challenges to business decisions involving illegal actions do not implicate the business judgment rule. See Harhen, 790 N.E.2d at 866 (citing Miller v. Am. Tel. & Tel. Co., 507 F.2d 759, 762 (3d Cir. 1974)).

Furthermore, and apart from judicially-created notions of the business judgment rule presumption, I do not interpret § 65 to permit directors to escape liability by merely arguing that, regardless of the corporation's solvency, distributions were authorized in the directors' good faith belief that they were in the "best interests of the corporation." Instead, the more logical interpretation of § 65 is that it applies to directors' determinations that *the corporation is not insolvent* and the *dividends or repurchases would not render the corporation insolvent.* See, e.g., James E. Tucker, Director and Shareholder Liability for Massachusetts Corporations' Distributions to Shareholders: A Suggestion for Change in Standards of Director Liability, 28 New Eng. L. Rev. 1025, 1060 (1994) ("under section 65, directors not motivated by self-interest or intending to prefer shareholders over creditors

17

will escape section 61 liability for a distribution if, after satisfying their duty of care, directors determine that the corporation is not insolvent, and that the distribution will not leave the corporation insolvent.").[17]

Viewed in this light, the Plan Administrator's complaint is sufficient under Federal Rule 8(a). Accepting as true the Plan Administrator's allegations that (1) the Debtor was insolvent or near insolvency at the time of the challenged distributions and (2) the Board voted in July of 1999 to suspend distributions and then authorized various dividends and stock repurchases shortly thereafter, the complaint states a claim under § 61. Construed in the light most favorable to the Plan Administrator, these facts support an inference that the Defendants were aware of the Debtor's insolvency or near-insolvency in July of 1999, but proceeded to pay shareholders in contravention of Massachusetts law and in abdication of their duties as articulated in § 65. Thus, Counts I-IV sufficiently state a claim for illegal distributions under MGL ch. 156B, § 61.

For substantially the same reasons, Count V of the complaint also adequately states a claim against the Defendants for breach of their fiduciary duties. Under Massachusetts law, the directors of a corporation owe the corporation the fiduciary duty of care:

> "If the director does not exercise sufficient care and sound personal judgment in his duties, he will be subject to a personal liability for mismanagement or negligence." 13A Massachusetts Practice § 465 at 207 (1971) (footnote omitted). Liability may be found even in the absence of bad faith or dishonesty on the part of a director if he fails to recognize his fiduciary duty. Production Machine Co. v. Howe, 99 N.E.2d at 36. Moreover, affirmative malfeasance by a director is not necessary in order to constitute a breach of duty; mere passivity can rise to the level of negligence if the director does not "exercise the degree of care which a prudent person

---

[17] Indeed, were the Defendants' view of § 65 upheld, § 61 would be virtually negated.

ordinarily would use as a director." Hathaway v. Huntley, 188 N.E. 616, 618 (Mass 1933).

Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 736-37 (1st Cir. 1982); see also, Spiegel, 8 N.E.2d at 904. This duty of care is similarly embodied, at least in part, in § 65, which requires directors to perform their duties "with such care as an ordinarily prudent person in a like position would use under similar circumstances." M.G.L. ch. 156B, § 65.

The facts as alleged support an inference that the Defendants failed to act with the requisite care by authorizing distributions without adequately investigating the Debtor's financial affairs. Furthermore, if the Defendants were aware of the Debtor's insolvency when they authorized the distributions, it is questionable whether such conduct would satisfy their fiduciary duty of due care in light of § 61. Thus, Count V of the complaint sufficiently states a claim for breach of fiduciary duty.

### C. ERISA Preemption

In Carpenters Local Union No. 26 v. United States Fidelity & Guaranty Co., 215 F.3d 136 (1st Cir. 2000), the First Circuit Court of Appeals recently articulated the analytical framework used to determine whether a state law or a claim based on state law is preempted by ERISA. Under 29 U.S.C. § 1144(a), the ERISA provisions preempt "any and all State laws insofar as they . . . *relate to* any [covered] employee benefit plan." Carpenters Local, 215 F.3d at 139. In Carpenters Local, the First Circuit noted that although some earlier cases indicated that "relate to" was to be interpreted as "deliberately expansive," the Supreme Court's more recent ERISA preemption cases have reined-in overbroad interpretations of this language. Id. For example, in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., the Supreme Court held

that, when addressing a claim of preemption, "the starting presumption [is] that Congress does not intend to supplant state law," 514 U.S. 645, 654 (1995); "unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states." Carpenters Local, 215 F.3d at 139-40 (citing Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997); Travelers, 514 U.S. at 655).

The phrase "relate to" is therefore not to be construed literally. Id. Instead, the Supreme Court has interpreted ERISA's preemption provision to encompass those instances where the law either has "[1] a *connection with* or [2] a *reference to* such a plan." Id. at 140 (emphasis added) (quoting Dillingham, 519 U.S. at 324). If the Plan Administrator's claims under Counts I-V have a "connection with" or "reference to" the ERISA Plans, they are preempted by the federal ERISA statute and must be dismissed for failure to state a claim under Massachusetts law.

    1.    <u>Connection</u>

To determine whether a state law or claim has a "connection with" an ERISA plan, courts look to (1) "the objectives of the ERISA statute as a guide to the scope of state law that Congress understood would survive," Dillingham, 519 U.S. at 325 (quoting Travelers, 514 U.S. at 656), and (2) "the nature of the effect of the state law on ERISA plans." Id. Consideration of § 61 and Massachusetts law of corporate fiduciary duties in light of these principles compels the conclusion that the Plan Administrator's claims in Counts I-V are not preempted under ERISA on grounds that they have a connection with the ERISA Plans.

Congressional objectives in enacting ERISA are fairly clear: "Congress' primary concern was with the management of funds accumulated to finance employee benefits and

the failure to pay employees from accumulated funds." Massachusetts v. Morash, 490 U.S. 107, 115 (1989). Congress' intent was to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for *fiduciaries of employee benefit plans*, and by providing for appropriate remedies." Carpenters Local, 215 F.3d at 140 (emphasis added) (quoting 29 U.S.C. § 1001(b)). Preemption under ERISA is designed to achieve those congressional goals by allowing for the "uniform administration of employee benefit plans." Travelers, 514 U.S. at 657.

Consequently, ERISA focuses on the management and administration of ERISA plans, imposes fiduciary duties on plan administrators and creates standards to protect plan beneficiaries from mismanagement. See, e.g., Stein v. Smith, 270 F.Supp.2d 157, 170 (D. Mass. 2003). But under ERISA, employers have no obligation to create an ERISA plan for their employees, and corporate management decisions regarding the creation, design, amendment or termination of ERISA plans do not fall within ERISA's reach. See Akers v. Palmer, 71 F.3d 226, 229 (6th Cir. 1995); Belade v. ITT Corp., 909 F.2d 736 (2d Cir. 1990); Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456 (5th Cir. 1986), cert. denied, 479 U.S. 1034 (1987); Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276 (3d Cir. 1984); Sutton v. Weirton Steel Div. of Nat'l Steel Corp., 724 F.2d 406 (4th Cir. 1983), cert. denied, 467 U.S. 1205 (1984). "Simply put, 'ERISA's concern is with the elements of a plan and its administration *after* it has been established.'" Akers, 71 F.3d at 230 (quoting Musto v. Am. Gen. Corp., 861 F.2d 897, 911 (6th Cir. 1988)).

In the present case, the administration and management of the ERISA Plans do not form the basis for the Plan Administrator's claims. None of the parties are "principal ERISA entities," <u>Richmond v. Am. Sys. Corp.</u>, 792 F.Supp. 449, 458 (E.D. Va. 1992). Instead, the claims are brought by a third party to enforce rights held by the corporation against directors of that corporation for their acts as corporate directors. The claims for illegal distributions under § 61 and the claim for breach of fiduciary duty under Massachusetts state law relate solely to corporate management decisions wholly removed from the ERISA Plan beneficiaries, administrators and managers.

In <u>Sommers Drug Stores</u>, the Fifth Circuit Court of Appeals addressed a similar issue and concluded that a state-law breach of fiduciary duty claim brought by shareholders against a corporate director did not implicate ERISA concerns:

> The state common law of fiduciary duty that the Trust seeks to invoke in this case centers upon the relation between corporate director and shareholder. The director's duty arises from this status as director; the law imposes the duty upon him in that capacity only. Similarly the shareholder's rights against the corporate director arise solely from his status as shareholder. . . . The state law and ERISA duties are parallel but independent: as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries. Thus, the state law does not affect relations between the ERISA fiduciary and the plan or plan beneficiaries as such; it affects them in their separate capacities as corporate director and shareholder.

793 F.2d at 1468.

Similarly, Counts I-V of the Plan Administrator's complaint are based on Massachusetts laws designed to regulate the actions of corporate directors in that capacity alone. Section 61 and Massachusetts corporate law directly govern the corporate director's duties with regard to the corporation and shareholders, but do not have any real

22

bearing on the "intricate web of relationships among the principal players in the ERISA scenario." Carpenters Local, 215 F.3d at 141. As such, they do not threaten the uniform regulation of ERISA plans, administrators, managers or beneficiaries.

Furthermore, Massachusetts corporate law "regulates an area of the law traditionally thought to be the states' preserve," id.; see Richmond, 792 F.Supp. at 458 (citing Burks v. Lasker, 441 U.S. 471 (1979) (corporations are created and governed by state law); Sante Fe Indus., Inc. v. Green, 430 U.S. 462 (1977) (same)). This fact weighs heavily against a finding of preemption; "where 'federal law is said to bar state action in fields of traditional state regulation . . . [the Supreme Court] ha[s] worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."'" Dillingham, 516 U.S. at 800 (citations omitted). In sum, "ERISA is designed to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one of them. . . . [I]t is neither the purpose nor the domain of ERISA to regulate purely corporate behavior that is adequately covered elsewhere." Akers, 71 F.3d at 229.

Thus, the Plan Administrator's claims for violation of § 61 and breach of fiduciary duty are not preempted by ERISA as having a connection with the ERISA Plans.

2.  Reference

In arguing that the Plan Administrator's claims are preempted by ERISA because they "refer to" the ERISA Plans, the Defendants rely heavily on language from Harris v. Harvard Pilgrim Health Care, Inc., where the First Circuit stated that "ERISA will be found to preempt state-law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims." 208 F.3d 274, 281 (1st Cir. 2000). The

23

Defendants maintain that Harris consequently compels a finding of preemption in this case, since the Court will have to consult the ERISA Plans to discern the degree of authority the Defendants had in making amendment or termination decisions.

But the Harris language must be viewed in context. In Harris, the plaintiff, an ERISA plan beneficiary, brought suit against the plan administrator, alleging breach of contract and violations of MGL ch. 93A, the Massachusetts consumer protection act. The Court held that the plaintiff's claims were preempted, because the claims were predicated upon rights and duties created by the ERISA plan. In order to resolve the claims, a court would need to "consult" the ERISA plan; that is, it would have to analyze and interpret the provisions of the ERISA plan to determine the rights and obligations of the parties in their roles as plan beneficiary and plan administrator. See Harris, 208 F.3d at 281.

Furthermore, relevant case law compels a more thorough analysis than that advanced by the Defendants. In Carpenters Local, the First Circuit explained that whether a claim based on state law "refers to" ERISA plans is not determined merely by a literal interpretation of the phrase. Rather, "the 'reference to' inquiry will result in preemption 'where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'" Carpenters Local, 215 F.3d at 143 (quoting Dillingham, 519 U.S. at 325). Carpenters Local is also more factually on-point. In that case, the parties disputed whether ERISA preempted the plaintiffs' claims to enforce a surety's obligations under a bond posted by the general contractor on a public works contract, required under MGL ch. 149, § 29. Because the bond covered payments for, *inter alia*, contributions to ERISA-qualified plans and the plaintiffs brought their claim

24

to recover such contributions left unpaid by a subcontractor, the defendants argued that the claims were preempted.

The First Circuit, however, disagreed. The Court held that the bond statute did not act "immediately and exclusively upon ERISA plans." Instead, the Court held that the bond statute was

> "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute."

Carpenters Local, 215 F.3d at 145 (citations omitted). Similarly, § 61 and Massachusetts law on corporate fiduciary duties are "law[s] of general application for ERISA preemption purposes because [they] appl[y] to a sufficiently broad, sufficiently generalized universe of situations . . . without mentioning ERISA and without regard to whether any affected person is (or is not) involved with a covered plan." Id.

Although it is conceivable that § 61 and breach of corporate fiduciary duty claims may have an ancillary effect on ERISA plans, just as the prosecution of claims under the bond statute had an impact on ERISA-qualified plans, this type of incidental and tenuous relationship cannot itself be the basis for a finding of preemption. See id.; accord, Dillingham, 516 U.S. at 840 ("if ERISA were concerned with any state action . . . that increased costs of providing certain benefits, and thereby potentially affected the choices made by ERISA plans, we could scarcely see the end of ERISA's pre-emptive reach, and the words 'relate to' would limit nothing.") (citing Travelers, 514 U.S. at 660-61)).

The Plan Administrator's claims against the Defendants do not require the determination of plan administrators' and plan beneficiaries' rights or duties that attend to the ERISA Plans. Unlike the plaintiff's claims in Harris, the viability of Counts I-V of the

25

Plan Administrator's complaint is not predicated upon the existence of an ERISA-qualified plan. The First Circuit's analysis in <u>Carpenters Local</u> is, accordingly, far more apposite to the present case. Consideration of Counts I-V under that analysis leads to the conclusion that there is no "reference to" the ERISA Plans for the purposes of ERISA preemption. Therefore, the Plan Administrator's claims in Counts I-V do not "relate to," and are not preempted by ERISA.

IV.  **CONCLUSION**

For the all the foregoing reasons, I respectfully recommend that the Defendants' Motion to Dismiss Counts I-V of the complaint be DENIED.

DATED: October 5, 2005

By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

26