UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| STEPHEN S. GRAY,<br>as Plan Administrator of<br>DEHON, INC.,<br><br>            Plaintiff,<br><br>        v.<br><br>BRIAN BARNETT, R. SCHORR<br>BERMAN, JOHN W. BROWN, JILL K.<br>CONWAY, PAUL E. GRAY, JEROME H.<br>GROSSMAN, M.D., MICHAEL<br>HAWLEY, THOMAS JOBSKY,<br>ASHOK S. KALELKAR, MARGARET G.<br>KERR, LORENZO LAMADRID,<br>CHARLES R. LAMANTIA, PAMELA W.<br>MCNAMARA, BERHARD METZGER,<br>ARNO A. PENZIAS, JAVIER<br>ROTLLANT, CLAIR RUSKIN, STUART<br>SAINT, GERHARD SCHULMEYER,<br>PETER WOOD, and<br>WOLFGANG ZILLESSEN,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-40056-JLT |

---

**DEFENDANTS R. SCHORR BERMAN, JOHN W. BROWN, JEROME H. GROSSMAN, M.D., MARGARET G. KERR, PAMELA W. MCNAMARA, ARNO A. PENZIAS, JAVIER ROTLLANT, AND GERHARD SCHULMEYER'S OBJECTION TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

        Pursuant to 28 U.S.C. § 157, R. Schorr Berman, John W. Brown, Jerome H. Grossman,

M.D., Margaret G. Kerr, Arno A. Penzias, Pamela W. McNamara, Javier Rotllant, and Gerhard

Schulmeyer (collectively, "Defendants") respectfully object to the Bankruptcy Court's

October 5, 2005 Proposed Findings of Fact and Conclusions of Law (attached hereto as

Exhibit A), in which Judge Boroff recommended that the District Court deny their motion to dismiss Counts I-V of the Consolidated Adversary Complaint dated February 4, 2004, filed in this proceeding pursuant to the voluntary bankruptcy petition of Dehon, Inc. (formerly known as Arthur D. Little, Inc.). The grounds for the Defendants' objection are fully set forth in the memorandum of law filed contemporaneously herewith.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE and DORR LLP

/s/ Mark D. Selwyn

Jeffrey B. Rudman (BBO #433380)
Mark D. Selwyn (BBO #565595)
Jonathan A. Shapiro (BBO #567838)
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Counsel for Defendants R. Schorr Berman,
John W. Brown, Jerome H. Grossman, M.D.,
Margaret G. Kerr, Arno A. Penzias, Pamela W.
McNamara, Javier Rotllant, and Gerhard
Schulmeyer*

Dated: November 28, 2005

2

# **<u>EXHIBIT A</u>**

# United States Bankruptcy Court
## District of Massachusetts

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 02-41045-HJB |
| DEHON, INC., | ) | (Substantively Consolidated) |
| | ) | |
| Debtor | ) | |
| | ) | |
| STEPHEN S. GRAY, | ) | Adversary Proceeding |
| AS PLAN ADMINISTRATOR OF | ) | No. 04-04287-HJB |
| DEHON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN BARNETT, R. SCHORR | ) | |
| BERMAN, JOHN W. BROWN, JILL K. | ) | |
| CONWAY, PAUL E. GRAY, | ) | |
| JEROME H. GROSSMAN, | ) | |
| MICHAEL HAWLEY, THOMAS | ) | |
| JOBSKY, ASHOK S. KALELKAR, | ) | |
| MARGARET G. KERR, LORENZO | ) | |
| LAMADRID, CHARLES R. LAMANTIA, | ) | |
| PAMELA W. MCNAMARA, | ) | |
| BERNHARD METZGER, ARNO A. | ) | |
| PENZIAS, JAVIER ROTLLANT, | ) | |
| CLAIRE RUSKIN, STUART SAINT, | ) | |
| GERHARD SCHULMEYER, PETER | ) | |
| WOOD, and WOLFGANG ZILLESSEN, | ) | |
| | ) | |
| Defendants | ) | |

1

115

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### MOTION TO DISMISS COUNTS I-V

Before me is "Defendants R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and Gerhard Schulmeyer's Motion to Dismiss" (the "Motion to Dismiss") the complaint filed against them and fifteen other defendants[1] (together, the "Defendants") by the Plan Administrator of Dehon, Inc. (the "Debtor"). In that complaint, the Plan Administrator alleges, *inter alia*, that the Defendants, all former directors of the Debtor, violated Massachusetts General Laws ("MGL") ch. 156B, § 61 ("section 61" or "§ 61") and breached their fiduciary duties by authorizing stock repurchases and dividend payments while the Debtor was insolvent. The issues raised in the Motion to Dismiss require a ruling as to whether the Plan Administrator has pled facts sufficient to state a claim under § 61 and for breach of the Defendants' fiduciary duties and whether those claims are preempted by the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Because the issues raised are non-core, however, I cannot make that ruling. Instead, I offer the following to the United States District Court for the District of Massachusetts, pursuant to its order of January 25, 2005 (Tauro, J.) and 28 U.S.C. § 157(c)(1), as proposed findings of fact and conclusions of law.

---

[1] Defendant Peter Wood was dismissed voluntarily shortly after the commencement of this adversary proceeding.

2

Case 4:04-cv-40056-JLT    Document 9    Filed 10/14/2005    Page 16 of 39

I.    **FACTS AND TRAVEL OF THE CASE**

A.    **Relevant Procedural History**

In February of 2002, the Debtor, then known as Arthur D. Little, Inc.,[2] and certain

of its subsidiaries filed for relief under Chapter 11 of the United States Bankruptcy Code

(the "Bankruptcy Code" or the "Code") in the Bankruptcy Court for the District of Delaware.

In March of 2002, other subsidiaries of the Debtor filed for Chapter 11 relief in the District

of Massachusetts. Soon thereafter, and for reasons not here relevant, the Delaware cases

were transferred to the District of Massachusetts. Pursuant to the Debtor's plan of

liquidation, confirmed by this Court in February of 2003, Stephen S. Gray was appointed

Plan Administrator and was authorized to pursue all rights of action on behalf of the estate.

On February 4, 2004, the Plan Administrator commenced the present adversary

proceeding against the Defendants. The complaint contains forty-five counts; Counts I

through IV allege illegal distributions under MGL ch. 156B, § 61; Count V alleges breach

of fiduciary duty by all defendants, and Counts VI through XLV seek recovery from various

individual defendants.[3] On April 7, 2004, defendants Conway and Gray filed a "Motion to

Withdraw Reference," and, shortly thereafter, defendants Berman, Brown, Grossman,

McNamara, Penzias and Schulmeyer filed a similar motion (together, the "Motions to

---

[2] The Debtor's name was changed from Arthur D. Little, Inc. to Dehon, Inc. following a court-approved sale of substantially all of the Debtor's assets in April of 2002.

[3] These Counts include claims for the avoidance and recovery of preferential and fraudulent transfers under the Bankruptcy Code and also seek to recover illegal distributions from the Defendants as shareholders of the Debtor under MGL ch. 156B, § 45.

3

Withdraw Reference").[4]  Simultaneous with those motions, the aforementioned groups of

defendants filed, respectively, a "Motion for Determination that Proceedings are Non-Core"

and a "Motion for Determination that Certain Claims are Non-Core Proceedings" (together,

the "Motions for Core/Non-Core Determination"), both of which sought a determination that

Counts I through V are non-core claims.[5]  Defendants Berman, et al. also filed the present

Motion to Dismiss therewith.[6]

    While the Motions to Withdraw Reference were pending before the District Court,

I held a hearing on the Motions for Core/Non-Core Determination and the Motion to

Dismiss. At that hearing, I preliminarily ruled that Counts I through V were non-core claims,

and the remaining counts core matters.  I then stated that I would deny the Motions to

Dismiss insofar as they refer to core matters[7] and stayed the adversary proceeding in its

entirety pending the District Court's ruling on the Motions to Withdraw Reference.

---

[4] In accordance with 28 U.S.C. § 157(a) and pursuant to Massachusetts District Court Local Rule 201, bankruptcy cases and related proceedings in Massachusetts are "referred to the judges of the bankruptcy court for the District of Massachusetts." However, under 28 U.S.C. § 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

[5] Core proceedings are, generally, matters that "arise under" or "arise in" a case under the Bankruptcy Code, and include matters involving the administration of the estate, property of the estate, and avoidance actions. See 28 U.S.C. § 157(b)(2); Ralls v. Docktor Pet Ctrs., Inc., 177 B.R. 420, 424-25 (D. Mass. 1995). Under § 157(c)(1), this Court must, without the consent of the parties (which has not been given in the present case), submit proposed findings of fact and conclusions of law to the district court for all non-core matters. 11 U.S.C. § 157(c)(1).

[6] All of the remaining Defendants, with the exceptions of defendants Kalelkar, LaMantia and Hawley, filed notices of their joinder in the Motion to Dismiss.

[7] In addition to Counts I-V, the Motion to Dismiss specifically sought dismissal of core claims in Counts VI-IX and XXXVI-XLIV.

In January of 2005, the District Court (Tauro, J.) allowed the Motions to Withdraw Reference as to all counts against the Defendants. The District Court further ordered that (1) all pretrial proceedings, including determinations as to whether claims are core or non-core, would remain before me; (2) I had jurisdiction to enter final judgments with respect to pretrial dispositive motions for all core claims; and (3) I should provide the District Court with recommendations and proposed findings of fact and conclusions of law with respect to pretrial dispositive motions affecting non-core claims. Pursuant to that order, I now offer my recommendation and proposed findings of fact and conclusions of law on the Motion to Dismiss with regard to Counts I through V of the Complaint.[8]

## B.    Facts

The Defendants have brought their Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), arguing that the Plan Administrator has "fail[ed] to state a claim upon which relief may be granted . . . ."[9] Therefore, I accept the facts alleged in the complaint as true for the purposes of this motion. See Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.), 195 B.R. 971, 977 (Bankr. D. Mass. 1996).

---

[8] Apparently, notwithstanding my pronouncements from the bench, no order with respect to the distinction between core and non-core matters was ever entered. Furthermore, on a fresh examination of the various Counts, it appears that Counts XIV, XV, XXVII, XXVIII, XXXIII, XXXIV and XLV are also non-core matters. Accordingly, contemporaneous with this Memorandum, I will issue an order ruling that (1) Counts I-V, XIV, XXVII, XXVIII, XXXIII, XXXIV and XLV are non-core proceedings, (2) the balance of the Counts are core proceedings; and (3) the motion to dismiss the core issues is denied.

Furthermore, the Motion to Dismiss sought dismissal of Count XLV of the complaint which seeks judgment on a promissory note. Accordingly, also contemporaneous with this Memorandum, I will issue proposed findings of fact and conclusions of law regarding the Defendants' motion to dismiss Count XLV.

[9] Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes Federal Rules 12(b)-(h) applicable in adversary proceedings commenced before the bankruptcy courts.

5

Each of the Defendants served as a member of the Debtor's Board of Directors (the "Board") at various times from June 1, 1999 through the filing of the Debtor's Chapter 11 petition in February of 2002. According to the complaint, on July 20, 1999, the Board voted to suspend dividend payments on the Debtor's stock for the reason that, in the Board's view, the payments would not be in the Debtor's best interest. The complaint further alleges that, subsequent to the decision to suspend dividend payments, the Board authorized various distributions, described in more detail below, at a time when the Debtor:

> (i) was insolvent or was rendered insolvent [by the transaction]; (ii) was engaged or about to engage in a business or transaction for which the remaining assets of Dehon were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

The Plan Administrator states that none of the amounts distributed have been repaid to the Debtor, including by means of offset.

## 1.    The "Lamadrid Plan"

Lorenzo Lamadrid was a member of the Board and served as the Debtor's chief executive officer from July 1, 1999 through May 31, 2001. On June 3, 1999, prior to Lamadrid's employment by the Debtor, the Board authorized a stock-based deferred compensation plan for Lamadrid (the "Lamadrid Plan").[10] Under that plan, Lamadrid was to receive cash distributions in five installments based on semi-annual valuations of the Debtor's common stock ("Dehon Stock"). Following Lamadrid's termination of employment

---

[10] According to the complaint, defendants Brown, Conway, Gray, Grossman, Hawley, Kalelkar, Kerr, LaMantia, McNamara, Penzias and Rotllant voted to authorize and approve the Lamadrid Plan.

as the Debtor's chief executive officer on May 31, 2001, the Debtor repurchased all of Lamadrid's shares of Dehon Stock.

### 2.    Stock Plan Amendments and Stock Repurchase Payments

During the relevant time period, the Debtor's current and former employees held shares of Dehon Stock through various stock plans or trusts (the "Stock Plans"). The Stock Plans either required or gave the option to departing employees to "put" their shares of Dehon Stock to the Debtor for repurchase. In addition, employees aged fifty-five and older who owned three times their base compensation in Dehon Stock were given the option of putting, for repurchase, some shares of Dehon Stock to the Debtor during the course of their employment. Cash distributions on Dehon Stock to departing employees were made twice yearly in amounts based on semi-annual valuations of Dehon Stock.

Each Stock Plan authorized the Board to discontinue, change or terminate the Stock Plans at any time. On September 17, 1999, the Board voted to amend the Stock Plans.[11] The amendments allowed shareholders putting their stock to the Debtor to receive the repurchase payment either in a lump sum or over five years, which payments would be based on the then-applicable valuation of Dehon Stock.

In May, 2000, the Debtor made stock repurchase payments in a total amount of $4,026,987.52. In October, 2000, the Debtor paid $185,639.09 in stock repurchase payments. In 2001, the Debtor paid a total of $884,854.94 to repurchase stock.

---

[11] According to the complaint, defendants Brown, Conway, Gray, Grossman, Kalelkar, Kerr, Lamadrid, McNamara, Penzias, Saint, Schulmeyer and Zillesen voted to authorize and approve the amendments to the Stock Plans.

### 3. Dividend Payments on MDT Preferred Stock

The Arthur D. Little, Inc. Memorial Drive Trust (the "MDT") also held shares of common stock in the Debtor. On October 15, 1999, the Board voted to exchange 749,276 shares of this common stock for an equal number of shares of newly issued preferred stock providing for an annual preferred dividend of 7.125 percent.[12] On May 1, 2000, the Debtor paid a cash dividend of $1,580,410.40 to MDT on its preferred stock.

### 4. Share Distribution and Enhanced Ownership Programs

On December 10, 1999, the Board approved a share distribution program that had been presented to the Board on October 15, 1999, as amended by an enhanced ownership program.[13] These programs expanded the number of persons eligible to hold Dehon Stock and to receive repurchase payments for that stock.

## II. POSITIONS OF THE PARTIES

### A. Sufficiency of the Complaint under Federal Rule 8(a)

In Counts I-IV of the complaint, the Plan Administrator alleges that each of the transactions described above constituted illegal distributions under MGL ch. 156B, § 61, which prohibits stock repurchase and dividend payments at a time when a company is

---

[12] According to the complaint, defendants Brown, Conway, Gray, Grossman, Kalelkar, Kerr, Lamadrid, McNamara, Penzias, Saint, Schulmeyer and Zillessen voted to authorize and approve the exchange of MDT's shares of common stock for the shares of preferred stock and the issuance of the preferred stock.

[13] According to the complaint, defendants Berman, Brown, Conway, Grossman, Kalelkar, Kerr, Lamadrid, McNamara, Penzias, Saint, Schulmeyer and Zillessen voted to authorize and approve the share distribution and enhanced ownership programs.

8

insolvent. Pursuant to § 61, the Plan Administrator seeks to hold the Defendants jointly and severally liable for distributions which they authorized.

In Count V, the Plan Administrator alleges that the Defendants breached their fiduciary duties of good faith, due care and loyalty, which they "owed, from the time that Dehon entered the zone of insolvency onward, [to] Dehon, its stockholders, its creditors, and the entirety of the Dehon enterprise . . . ." Asserting that the Defendants had the ability to terminate, modify or amend the Stock Plans in order to cease making stock repurchase and dividend payments, the Plan Administrator alleges that their failure to do so constituted a breach of their fiduciary duties in light of the Debtor's financial condition.

The Defendants' arguments in support of the Motion to Dismiss are largely based on their characterization of MGL ch. 156B, § 65 ("section 65" or "§ 65") as a codification of the judicially-created "business judgment rule." In their view, § 65 gives rise to a presumption that the Defendants acted in good faith and with the requisite standard of care. According to the Defendants, the facts as alleged fail to overcome that presumption because the Plan Administrator does not challenge: (1) the Defendants' disinterestedness; (2) the Defendants' good faith; or (3) the reasonableness of the Defendants' investigations regarding the challenged decisions. Furthermore, the Defendants argue that § 65 is a complete defense and applies without exception; thus, the business judgment rule presumption attaches even if the Debtor were insolvent at the time the decisions and distributions were made. The Defendants contend that the absence of factual allegations

9

sufficient to rebut that presumption requires the dismissal of Counts I-V under Federal Rule 12(b)(6).[14]

In response, the Plan Administrator questions whether it is appropriate to consider § 65 or the protections afforded by the business judgment rule at this stage of the pleadings. Asserting that § 65 speaks of a *defense* to claims and does not provide the Defendants with "immunity" from legal challenges to their decisions made as directors, the Plan Administrator argues that it is not properly considered on a motion to dismiss. Furthermore, the Plan Administrator, relying on cases from other jurisdictions, argues that the business judgment rule does not give rise to a presumption that the Defendants acted in good faith and with the requisite care with regard to decisions made while the Debtor was insolvent or within the "zone of insolvency."

Assuming the applicability of the business judgment rule, the Plan Administrator argues that the complaint is sufficient to overcome a presumption of good faith and due care. According to the Plan Administrator, the Board's decision to suspend dividend payments on Dehon Stock in July of 1999 calls into question the Defendants' good faith and/or due care with regard to the subsequent decisions to repurchase Dehon Stock and pay dividends on the MDT preferred stock. The Plan Administrator characterizes the Defendants' argument as an attempt to impute a "heightened pleading standard" into the

---

[14] The Defendants also argue that the complaint fails to provide sufficient notice of the claim against them under Count V, given that the Debtor had established over thirty stock plans. I find that argument wholly unpersuasive. First, if the Defendants were truly concerned with the vagueness of the pleading, they could have moved for a more definite statement under Federal Rule 12(e). Second, the Defendants cannot seriously argue confusion about actions taken by them as directors and with respect to plans, a list of which they attached to the memorandum in support of their motion.

Case 4:04-cv-40056-JLT   Document 9   Filed 10/14/2005   Page 24 of 39

claims brought under § 61 and argues that the complaint is sufficient under Federal Rule 8(a), because it contains a "short and plain statement of the claim showing that the pleader is entitled to relief" and alleges facts sufficient to provide notice of the claims against the Defendants.

**B.    ERISA Preemption**

The Defendants maintain that the Plan Administrator's § 61 and breach of fiduciary duty claims are preempted by ERISA with regard to the Arthur D. Little, Inc. Employee Stock Ownership Plan and the Arthur D. Little Employees' MDT Retirement Plan (the "ERISA Plans"), both of which qualify as "plans" within the meaning of ERISA.

First, the Defendants argue that the Plan Administrator's claims have an impermissible "connection with" the ERISA-qualified plans, because the challenges to distributions made to the ERISA Plans conflict with "ERISA's focus on beneficiary interests." Second, the Defendants argue that the Plan Administrator's claims will require the Court to refer to the ERISA Plans in order to determine whether the Defendants had authority to cease making the challenged distributions. Under First Circuit and Supreme Court precedent, they contend, this required reference to the ERISA Plans to resolve the § 61 and breach of fiduciary duty claims compels a finding that those claims are preempted.

The Plan Administrator, however, posits that recent Supreme Court precedent is "more guarded" toward finding that ERISA preempts state law. The Plan Administrator says that the Defendants have failed to overcome the "starting presumption against preemption" that now dominates ERISA preemption jurisprudence. The Plan Administrator argues that the § 61 and breach of fiduciary duty claims do not have a "connection with"

11

the ERISA plans, because the claims are not directed toward any of the ERISA Plan

administrators or beneficiaries and do not challenge the ERISA fiduciaries' management,

administration, conduct or governance of the plans.  Furthermore, the Plan Administrator

directs my attention toward cases in which the courts held that ERISA's objectives of

protecting participants and beneficiaries from mismanagement by plan fiduciaries are not

implicated by purely corporate management decisions that indirectly affect ERISA plans.

Thus, the claims do not have a "connection with" ERISA-qualified plans.

Finally, arguing that the claims are independent of the ERISA Plans – i.e., they "can

and do[ ] exist without the ESOP or MDT plans" – the Plan Administrator says that the

possibility that the Court may be required to undertake a minimal reading of the ERISA

Plans does not qualify as a "reference to" the ERISA Plans under ERISA preemption law.


III.    <u>DISCUSSION</u>

    A.    **Standard for Dismissal under Federal Rule 12(b)(6)**

    As the First Circuit has explicitly stated:

    a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to
    state a claim upon which relief can be granted "only if it is clear that no relief
    could be granted under any set of facts that could be proved consistent with
    the allegations."

<u>Gorski v. N.H. Dep't of Corr.</u>, 290 F.3d 466, 473 (1st Cir. 2002) (quoting <u>Hishon v. King &</u>

<u>Spalding</u>, 467 U.S. 69, 73 (1984)). Any doubt as to whether, under the Federal Rules, a

heightened pleading standard may apply to claims otherwise governed by Rule 8(a) has

been concretely resolved by the Supreme Court: " A requirement of greater specificity for

particular claims is a result that 'must be obtained by the process of amending the Federal

12

Rules, and not by judicial interpretation.'" <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002). The purpose of the "notice pleading" standard of Federal Rule 8(a) is to focus resolution of claims on the merits, a task made easier by liberal discovery rules and made more manageable by summary judgment. <u>See id.</u>

Therefore, when considering the sufficiency of the Plan Administrator's complaint in light of the Defendants' Motion to Dismiss for failure to state a claim, I must "take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." <u>Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992); <u>see also</u>, <u>Swierkiewicz</u>, 534 U.S. at 510 n.1. This review of the plaintiff's complaint, "before the reception of any evidence either by affidavit or admissions, . . . is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," <u>Swierkiewicz</u>, 534 U.S. at 511, and there is no "obligation on the pleader to identify in the complaint all the evidence that would later be offered in support of the claim pleaded." <u>Gorski</u>, 290 F.3d at 474.

## B.    The Business Judgment Rule and Pleading Standards

The Plan Administrator's complaint is sufficient under Federal Rule 8(a) to state a claim under MGL ch. 156B, § 61. Section 61 provides, in relevant part,

> If the corporation is insolvent or is rendered insolvent by the making of any [distribution . . . to one or more of its stockholders, whether by way of a dividend, repurchase or redemption of stock] . . . the directors who voted to authorize such distribution shall be jointly and severally liable to the corporation for the amount of such distribution made when the corporation is insolvent . . . .

Since the Plan Administrator has alleged that the Debtor was insolvent or near-insolvent at the time the Defendants authorized the challenged stock repurchases and dividend payments, the facts as alleged would appear to sufficiently state a claim under § 61.

The Defendants, however, maintain that the complaint is insufficient in light of MGL ch. 156B, § 65, which details the types of information on which corporate directors are entitled to rely. _See_ M.G.L. ch. 156B, § 65. That section also provides that a director who acts according to § 65's standards has "a complete defense to any claim asserted against him [or her], whether under sections sixty to sixty-four . . . except as expressly provided by statute, by reason of his [or her] being or having been a director . . . ." _Id._[15]

---

[15] More fully, § 65 provides:

A director, officer or incorporator of a corporation shall perform his duties as such . . . in good faith and in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In determining what he reasonably believes to be in the best interests of the corporation, a director may consider the interests of the corporation's employees, suppliers, creditors and customers, the economy of the state, region and nation, community and societal considerations, and the long-term and short-term interests of the corporation and its stockholders . . . . In performing his duties, a director, officer or incorporator shall be entitled to rely on information, opinions, reports or records, including financial statements, books of account and other financial records, in each case presented by or prepared by or under the supervision of (1) one or more officers or employees of the corporation whom the director, officer or incorporator reasonably believes to be reliable and competent in the matters presented, or (2) counsel, public accountants or other persons as to matters which the director, officer or incorporator reasonably believes to be within such person's professional or expert competence, or (3) in the case of a director, a duly constituted committee of the board upon which he does not serve, as to matters within its delegated authority, which committee the director reasonably believes to merit confidence, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. The fact that a director, officer or incorporator so performed his duties shall be a complete defense to any claim asserted against him, whether under sections sixty to sixty-four, inclusive, or otherwise, except as expressly provided by statute, by reason of his being or having been a director, officer or incorporator of the corporation.

14

The Defendants view this language as a codification of the judicially-created "business judgment rule," which is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984); see also Harhen v. Brown, 431 Mass. 838, 845, 730 N.E.2d 859 (2000) ("The business judgment rule affords protection to the business decisions of directors, . . . because directors are presumed to act in the best interests of the corporation."). Indeed, some Massachusetts decisions support the Defendants' argument that Massachusetts law embodies a robust version of the business judgment rule. See, e.g., Seidman v. Cent. Bancorp., Inc., 16 Mass. L. Rptr. 383, 2003 WL 21528509, *8 (Mass. Super. 2003) (citing S. Solomont & Sons Trust, Inc. v. New Eng. Theatres Oper. Corp., 326 Mass. 99, 113-15 (Mass. 1950)); Harhen v. Brown, 431 Mass. at 842-45). The Massachusetts cases cited by the Defendants are, however, largely inapposite to the facts alleged here.

First, the Defendants rely primarily on language from Massachusetts decisions discussing the business judgment rule presumption in the context of shareholder derivative suits.[16] But those cases are governed by Massachusetts Rule of Civil Procedure

---

[16]In Harhen v. Brown, the SJC dismissed a challenge to a board of director's refusal to pursue litigation after the plaintiff shareholder's demand, finding that the complaint contained no facts sufficient to overcome the business judgment rule presumption. 730 N.E.2d 859. The Court held that, with respect to demand refusal cases in the shareholder derivative suit context, the "business judgment rule affords protection to the business decisions of directors, . . . because directors are presumed to act in the best interests of the corporation." Harhen, 730 N.E.2d at 866. Thus, in order to overcome the presumption, and show that the demand was wrongly refused, the plaintiff must allege facts demonstrating that the board was not disinterested, did not act in good faith or did not reasonably investigate the demand. Id. at 866-67; see also Bartlett v. N.Y., N.H. & H.R. Co., 109 N.E. 452, 453 (Mass. 1915) (in shareholder derivative suit, plaintiff must allege facts showing that directors have failed to act after a reasonable demand or that demand would be futile,

15

23.1, which requires claimants in such suits to allege certain facts with particularity. See Mass. R. Civ. P. 23.1; Fed. R. Civ. P. 23.1; see also Harhen, 730 N.E.2d 859; Aronson v. Lewis, 473 A.2d 805; Houle v. Low, 556 N.E.2d 51 (Mass. 1990). The claims made here are not derivative.

Second, although it is clear that the business judgment rule exists in some form under Massachusetts law and that "Massachusetts has always recognized the need for courts to abstain from interfering in business judgments," Houle v. Low, 556 N.E.2d at 59; see also Harhen, 739 N.E.2d 859, the application of business judgment principles to the whole of Massachusetts corporate law is far from certain. One need only look to the comments to the most recent version of § 65, now found at MGL ch. 156D, § 8.30, to reach this conclusion:

> Section 8.30 defines the general standard of conduct for directors as does its counterpart, BCL § 65. . . . Even before statutory formulations of directors' duty of care, courts sometimes invoked the business judgment rule in determining whether to impose liability in a particular case. In doing so, courts have sometimes used language similar to the standards set forth in § 8.30(a). The elements of the business judgment rule and the circumstances for its application are continuing to be developed by the courts. In view of that continuing judicial development, § 8.30 does not try to codify the business judgment rule or to delineate the differences, if any, between that rule and the standards of director conduct set forth in this section. That is a task left to the courts.

Finally, in many of the cases cited by the Defendants, as in most cases, the challenged business decisions involved corporate actions that were, objectively, legitimate and lawful. See, e.g., Harhen v. Brown, 730 N.E.2d 859 (board's decision not to pursue

---

since "[d]irectors and the majority of shareholders are presumed to be acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned, and with a consciousness of duty toward the corporation and all its stockholders.").

litigation following plaintiff shareholder's demand); <u>Houle v. Low</u>, 556 N.E.2d 51 (challenge to defendants' formation of a corporation); <u>Spiegel v. Beacon Particip., Inc.</u>, 8 N.E.2d 895 (Mass. 1937) (purchase of a promissory note from bank). In those cases, absent any facts alleging or giving rise to a reasonable inference that the directors had abdicated their statutory or common-law duties, there was nothing inherently "wrong" with the chosen course of action.

Under the facts presented in the Plan Administrator's complaint, however, the challenged distributions were *not* legitimate business decisions, regardless of whether the Defendants believed that they were in the best interests of the Debtor, since the Debtor's insolvency renders such distributions unlawful under § 61. As the Massachusetts Supreme Judicial Court alluded to in <u>Harhen</u>, challenges to business decisions involving illegal actions do not implicate the business judgment rule. <u>See</u> <u>Harhen</u>, 790 N.E.2d at 866 (citing <u>Miller v. Am. Tel. & Tel. Co.</u>, 507 F.2d 759, 762 (3d Cir. 1974)).

Furthermore, and apart from judicially-created notions of the business judgment rule presumption, I do not interpret § 65 to permit directors to escape liability by merely arguing that, regardless of the corporation's solvency, distributions were authorized in the directors' good faith belief that they were in the "best interests of the corporation." Instead, the more logical interpretation of § 65 is that it applies to directors' determinations that *the corporation is not insolvent* and the *dividends or repurchases would not render the corporation insolvent*. <u>See, e.g.</u>, James E. Tucker, <u>Director and Shareholder Liability for Massachusetts Corporations' Distributions to Shareholders: A Suggestion for Change in Standards of Director Liability</u>, 28 New Eng. L. Rev. 1025, 1060 (1994) ("under section 65, directors not motivated by self-interest or intending to prefer shareholders over creditors

will escape section 61 liability for a distribution if, after satisfying their duty of care, directors determine that the corporation is not insolvent, and that the distribution will not leave the corporation insolvent.").[17]

Viewed in this light, the Plan Administrator's complaint is sufficient under Federal Rule 8(a). Accepting as true the Plan Administrator's allegations that (1) the Debtor was insolvent or near insolvency at the time of the challenged distributions and (2) the Board voted in July of 1999 to suspend distributions and then authorized various dividends and stock repurchases shortly thereafter, the complaint states a claim under § 61. Construed in the light most favorable to the Plan Administrator, these facts support an inference that the Defendants were aware of the Debtor's insolvency or near-insolvency in July of 1999, but proceeded to pay shareholders in contravention of Massachusetts law and in abdication of their duties as articulated in § 65. Thus, Counts I-IV sufficiently state a claim for illegal distributions under MGL ch. 156B, § 61.

For substantially the same reasons, Count V of the complaint also adequately states a claim against the Defendants for breach of their fiduciary duties. Under Massachusetts law, the directors of a corporation owe the corporation the fiduciary duty of care:

> "If the director does not exercise sufficient care and sound personal judgment in his duties, he will be subject to a personal liability for mismanagement or negligence." 13A Massachusetts Practice § 465 at 207 (1971) (footnote omitted). Liability may be found even in the absence of bad faith or dishonesty on the part of a director if he fails to recognize his fiduciary duty. Production Machine Co. v. Howe, 99 N.E.2d at 36. Moreover, affirmative malfeasance by a director is not necessary in order to constitute a breach of duty; mere passivity can rise to the level of negligence if the director does not "exercise the degree of care which a prudent person

---

[17]Indeed, were the Defendants' view of § 65 upheld, § 61 would be virtually negated.

ordinarily would use as a director." <u>Hathaway v. Huntley</u>, 188 N.E. 616, 618 (Mass 1933).

<u>Robinson v. Watts Detective Agency, Inc.</u>, 685 F.2d 729, 736-37 (1st Cir. 1982); <u>see also</u>, <u>Spiegel</u>, 8 N.E.2d at 904. This duty of care is similarly embodied, at least in part, in § 65, which requires directors to perform their duties "with such care as an ordinarily prudent person in a like position would use under similar circumstances." M.G.L. ch. 156B, § 65.

The facts as alleged support an inference that the Defendants failed to act with the requisite care by authorizing distributions without adequately investigating the Debtor's financial affairs. Furthermore, if the Defendants were aware of the Debtor's insolvency when they authorized the distributions, it is questionable whether such conduct would satisfy their fiduciary duty of due care in light of § 61. Thus, Count V of the complaint sufficiently states a claim for breach of fiduciary duty.

## C.    ERISA Preemption

In <u>Carpenters Local Union No. 26 v. United States Fidelity & Guaranty Co.</u>, 215 F.3d 136 (1st Cir. 2000), the First Circuit Court of Appeals recently articulated the analytical framework used to determine whether a state law or a claim based on state law is preempted by ERISA. Under 29 U.S.C. § 1144(a), the ERISA provisions preempt "any and all State laws insofar as they . . . <u>relate to</u> any [covered] employee benefit plan." <u>Carpenters Local</u>, 215 F.3d at 139. In <u>Carpenters Local</u>, the First Circuit noted that although some earlier cases indicated that "relate to" was to be interpreted as "deliberately expansive," the Supreme Court's more recent ERISA preemption cases have reined-in overbroad interpretations of this language. <u>Id.</u> For example, in <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.</u>, the Supreme Court held

that, when addressing a claim of preemption, "the starting presumption [is] that Congress does not intend to supplant state law," 514 U.S. 645, 654 (1995); "unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states." Carpenters Local, 215 F.3d at 139-40 (citing Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997); Travelers, 514 U.S. at 655).

The phrase "relate to" is therefore not to be construed literally. Id. Instead, the Supreme Court has interpreted ERISA's preemption provision to encompass those instances where the law either has "[1] a *connection with* or [2] a *reference to* such a plan." Id. at 140 (emphasis added) (quoting Dillingham, 519 U.S. at 324). If the Plan Administrator's claims under Counts I-V have a "connection with" or "reference to" the ERISA Plans, they are preempted by the federal ERISA statute and must be dismissed for failure to state a claim under Massachusetts law.

       1.    Connection

To determine whether a state law or claim has a "connection with" an ERISA plan, courts look to (1) "the objectives of the ERISA statute as a guide to the scope of state law that Congress understood would survive," Dillingham, 519 U.S. at 325 (quoting Travelers, 514 U.S. at 656), and (2) "the nature of the effect of the state law on ERISA plans." Id. Consideration of § 61 and Massachusetts law of corporate fiduciary duties in light of these principles compels the conclusion that the Plan Administrator's claims in Counts I-V are not preempted under ERISA on grounds that they have a connection with the ERISA Plans.

Congressional objectives in enacting ERISA are fairly clear: "Congress' primary concern was with the management of funds accumulated to finance employee benefits and

20

the failure to pay employees from accumulated funds." <u>Massachusetts v. Morash</u>, 490 U.S. 107, 115 (1989). Congress' intent was to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for *fiduciaries of employee benefit plans*, and by providing for appropriate remedies." <u>Carpenters Local</u>, 215 F.3d at 140 (emphasis added) (quoting 29 U.S.C. § 1001(b)). Preemption under ERISA is designed to achieve those congressional goals by allowing for the "uniform administration of employee benefit plans." <u>Travelers</u>, 514 U.S. at 657.

Consequently, ERISA focuses on the management and administration of ERISA plans, imposes fiduciary duties on plan administrators and creates standards to protect plan beneficiaries from mismanagement. <u>See, e.g.</u>, <u>Stein v. Smith</u>, 270 F.Supp.2d 157, 170 (D. Mass. 2003). But under ERISA, employers have no obligation to create an ERISA plan for their employees, and corporate management decisions regarding the creation, design, amendment or termination of ERISA plans do not fall within ERISA's reach. <u>See</u> <u>Akers v. Palmer</u>, 71 F.3d 226, 229 (6th Cir. 1995); <u>Belade v. ITT Corp.</u>, 909 F.2d 736 (2d Cir. 1990); <u>Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.</u>, 793 F.2d 1456 (5th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1034 (1987); <u>Vigglano v. Shenango China Div. of Anchor Hocking Corp.</u>, 750 F.2d 276 (3d Cir. 1984); <u>Sutton v. Weirton Steel Div. of Nat'l Steel Corp.</u>, 724 F.2d 406 (4th Cir. 1983), <u>cert. denied</u>, 467 U.S. 1205 (1984). "Simply put, 'ERISA's concern is with the elements of a plan and its administration *after* it has been established.'" <u>Akers</u>, 71 F.3d at 230 (quoting <u>Musto v. Am. Gen. Corp.</u>, 861 F.2d 897, 911 (6th Cir. 1988)).

21

In the present case, the administration and management of the ERISA Plans do not form the basis for the Plan Administrator's claims. None of the parties are "principal ERISA entities," Richmond v. Am. Sys. Corp., 792 F.Supp. 449, 458 (E.D. Va. 1992). Instead, the claims are brought by a third party to enforce rights held by the corporation against directors of that corporation for their acts as corporate directors. The claims for illegal distributions under § 61 and the claim for breach of fiduciary duty under Massachusetts state law relate solely to corporate management decisions wholly removed from the ERISA Plan beneficiaries, administrators and managers.

In Sommers Drug Stores, the Fifth Circuit Court of Appeals addressed a similar issue and concluded that a state-law breach of fiduciary duty claim brought by shareholders against a corporate director did not implicate ERISA concerns:

> The state common law of fiduciary duty that the Trust seeks to invoke in this case centers upon the relation between corporate director and shareholder. The director's duty arises from this status as director; the law imposes the duty upon him in that capacity only. Similarly the shareholder's rights against the corporate director arise solely from his status as shareholder. . . . The state law and ERISA duties are parallel but independent: as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries. Thus, the state law does not affect relations between the ERISA fiduciary and the plan or plan beneficiaries as such; it affects them in their separate capacities as corporate director and shareholder.

793 F.2d at 1468.

Similarly, Counts I-V of the Plan Administrator's complaint are based on Massachusetts laws designed to regulate the actions of corporate directors in that capacity alone. Section 61 and Massachusetts corporate law directly govern the corporate director's duties with regard to the corporation and shareholders, but do not have any real

22

bearing on the "intricate web of relationships among the principal players in the ERISA scenario." Carpenters Local, 215 F.3d at 141. As such, they do not threaten the uniform regulation of ERISA plans, administrators, managers or beneficiaries.

Furthermore, Massachusetts corporate law "regulates an area of the law traditionally thought to be the states' preserve," id.; see Richmond, 792 F.Supp. at 458 (citing Burks v. Lasker, 441 U.S. 471 (1979) (corporations are created and governed by state law); Sante Fe Indus., Inc. v. Green, 430 U.S. 462 (1977) (same)). This fact weighs heavily against a finding of preemption; "where 'federal law is said to bar state action in fields of traditional state regulation . . . [the Supreme Court] ha[s] worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.""" Dillingham, 516 U.S. at 800 (citations omitted). In sum, "ERISA is designed to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one of them. . . . [I]t is neither the purpose nor the domain of ERISA to regulate purely corporate behavior that is adequately covered elsewhere." Akers, 71 F.3d at 229.

Thus, the Plan Administrator's claims for violation of § 61 and breach of fiduciary duty are not preempted by ERISA as having a connection with the ERISA Plans.

2.      Reference

In arguing that the Plan Administrator's claims are preempted by ERISA because they "refer to" the ERISA Plans, the Defendants rely heavily on language from Harris v. Harvard Pilgrim Health Care, Inc., where the First Circuit stated that "ERISA will be found to preempt state-law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims." 208 F.3d 274, 281 (1st Cir. 2000). The

23

Defendants maintain that Harris consequently compels a finding of preemption in this case, since the Court will have to consult the ERISA Plans to discern the degree of authority the Defendants had in making amendment or termination decisions.

But the Harris language must be viewed in context. In Harris, the plaintiff, an ERISA plan beneficiary, brought suit against the plan administrator, alleging breach of contract and violations of MGL ch. 93A, the Massachusetts consumer protection act. The Court held that the plaintiff's claims were preempted, because the claims were predicated upon rights and duties created by the ERISA plan. In order to resolve the claims, a court would need to "consult" the ERISA plan; that is, it would have to analyze and interpret the provisions of the ERISA plan to determine the rights and obligations of the parties in their roles as plan beneficiary and plan administrator. See Harris, 208 F.3d at 281.

Furthermore, relevant case law compels a more thorough analysis than that advanced by the Defendants. In Carpenters Local, the First Circuit explained that whether a claim based on state law "refers to" ERISA plans is not determined merely by a literal interpretation of the phrase. Rather, "the 'reference to' inquiry will result in preemption 'where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'" Carpenters Local, 215 F.3d at 143 (quoting Dillingham, 519 U.S. at 325). Carpenters Local is also more factually on-point. In that case, the parties disputed whether ERISA preempted the plaintiffs' claims to enforce a surety's obligations under a bond posted by the general contractor on a public works contract, required under MGL ch. 149, § 29. Because the bond covered payments for, inter alia, contributions to ERISA-qualified plans and the plaintiffs brought their claim

24

to recover such contributions left unpaid by a subcontractor, the defendants argued that the claims were preempted.

The First Circuit, however, disagreed. The Court held that the bond statute did not act "immediately and exclusively upon ERISA plans." Instead, the Court held that the bond statute was

> "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute."

Carpenters Local, 215 F.3d at 145 (citations omitted). Similarly, § 61 and Massachusetts law on corporate fiduciary duties are "law[s] of general application for ERISA preemption purposes because [they] appl[y] to a sufficiently broad, sufficiently generalized universe of situations . . . without mentioning ERISA and without regard to whether any affected person is (or is not) involved with a covered plan." Id.

Although it is conceivable that § 61 and breach of corporate fiduciary duty claims may have an ancillary effect on ERISA plans, just as the prosecution of claims under the bond statute had an impact on ERISA-qualified plans, this type of incidental and tenuous relationship cannot itself be the basis for a finding of preemption. See id.; accord, Dillingham, 516 U.S. at 840 ("if ERISA were concerned with any state action . . . that increased costs of providing certain benefits, and thereby potentially affected the choices made by ERISA plans, we could scarcely see the end of ERISA's pre-emptive reach, and the words 'relate to' would limit nothing.") (citing Travelers, 514 U.S. at 660-61)).

The Plan Administrator's claims against the Defendants do not require the determination of plan administrators' and plan beneficiaries' rights or duties that attend to the ERISA Plans. Unlike the plaintiff's claims in Harris, the viability of Counts I-V of the

25

Case 4:04-cv-40056-JLT    Document 12    Filed 11/28/2005    Page 29 of 29

Plan Administrator's complaint is not predicated upon the existence of an ERISA-qualified plan. The First Circuit's analysis in <u>Carpenters Local</u> is, accordingly, far more apposite to the present case. Consideration of Counts I-V under that analysis leads to the conclusion that there is no "reference to" the ERISA Plans for the purposes of ERISA preemption. Therefore, the Plan Administrator's claims in Counts I-V do not "relate to," and are not preempted by ERISA.

## IV. <u>CONCLUSION</u>

For the all the foregoing reasons, I respectfully recommend that the Defendants' Motion to Dismiss Counts I-V of the complaint be DENIED.

DATED: October 5, 2005                          By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge