UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| STEPHEN S. GRAY,<br>as Plan Administrator of<br>DEHON, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRIAN BARNETT, R. SCHORR<br>BERMAN, JOHN W. BROWN, JILL K.<br>CONWAY, PAUL E. GRAY, JEROME H.<br>GROSSMAN, M.D., MICHAEL<br>HAWLEY, THOMAS JOBSKY,<br>ASHOK S. KALELKAR, MARGARET G.<br>KERR, LORENZO LAMADRID,<br>CHARLES R. LAMANTIA, PAMELA W.<br>MCNAMARA, BERHARD METZGER,<br>ARNO A. PENZIAS, JAVIER<br>ROTLLANT, CLAIR RUSKIN, STUART<br>SAINT, GERHARD SCHULMEYER,<br>PETER WOOD, and<br>WOLFGANG ZILLESSEN,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 04-40056-JLT |

_____

**DEFENDANTS R. SCHORR BERMAN, JOHN W. BROWN, JEROME H. GROSSMAN, M.D., MARGARET G. KERR, PAMELA W. MCNAMARA, ARNO A. PENZIAS, JAVIER ROTLLANT, AND GERHARD SCHULMEYER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Jeffrey B. Rudman (BBO #433380)
Mark D. Selwyn (BBO #565595)
Jonathan A. Shapiro (BBO #567838)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

Dated:  November 28, 2005

# TABLE OF CONTENTS

ISSUES PRESENTED ............................................................................................................1

JURISDICTION AND STANDARD OF REVIEW ....................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT.........................................................................................................................3

I.  The Bankruptcy Court Erred By Not Applying the Massachusetts Business Judgment
    Rule As Required By State Statute And Court Precedent. ..................................................4

    A.  The Business Judgment Rule Applies To This Case. ..............................................4

    B.  The Bankruptcy Court Misconstrued The Massachusetts Business Judgment Rule
        As A Matter of Law. .............................................................................................6

        1.  The Bankruptcy Court Erroneously Disregarded Precedent By Drawing
            An Unsupportable Distinction Between "Direct" And "Derivative"
            Lawsuits. ....................................................................................................7

        2.  Massachusetts Law Does Not Recognize Any Exception To The Business
            Judgment Rule For Insolvency, And The Bankruptcy Court's Conclusion
            To The Contrary Was Erroneous. .................................................................9

    C.  Plaintiff Cannot Defeat the Business Judgment Rule By Alleging That
        Defendants' Decisions Were "Illegitimate" And/Or "Unlawful." ........................11

    D.  Plaintiff Has Failed To Plead Sufficient Facts To Overcome The Business
        Judgment Rule's Presumption Of Correctness. ....................................................13

        1.  The Bankruptcy Court Applied An Incorrect Pleading Standard. ..............14

        2.  Plaintiff's Allegations Fail To State A Claim............................................15

II. The Bankruptcy Court Erred In Ruling That ERISA Does Not Preempt
    Plaintiff's Claims.............................................................................................................17

CONCLUSION....................................................................................................................20

US1DOCS 5397289v4

# TABLE OF AUTHORITIES

Federal Cases

*Accion v. Hernandez,*
   367 F.3d 61 (1st Cir. 2004)..................................................................14, 15

*Arruda v. Sears, Roebuck & Co.,*
   310 F.3d 13 (1st Cir. 2002)..................................................................15

*Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr. N.A., Inc.,*
   519 U.S. 316 (1997)..........................................................................18

*Carpenters Local Union v. U.S. Fid. & Guar. Co.,*
   215 F.3d 136 (1st Cir. 2000)................................................................19

*Cepero-Rivera v. Fagundo,*
   414 F.3d 124 (1st Cir. 2005)................................................................15

*Chongris v. Bd. of Appeals,*
   811 F.2d 36 (1st Cir. 1987)..................................................................15

*Conley v. Gibson,*
   355 U.S. 41 (1957)............................................................................15

*Dura Pharmaceuticals, Inc. v. Broudo,*
   125 S. Ct. 1627 (2005).......................................................................15

*Great-West Life & Annuity Ins. Co. v. Knudson,*
   534 U.S. 204 (2002)..........................................................................19

*Harris v. Harvard Pilgrim Health Care, Inc.,*
   208 F.3d 274 (1st Cir. 2000)............................................................19, 20

*Landry v. D'Alessandro,*
   316 F. Supp. 2d 49 (D. Mass. 2004)...................................................13, 14

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973)..........................................................................15

*Miller v. American Tel. & Tel. Co.,*
   507 F.2d 759 (3d Cir. 1974).................................................................13

*Missouri v. Hunter,*
   459 U.S. 359 (1983)..........................................................................10

ii

*Salemme v. Ristaino*,
    587 F.2d 81 (1st Cir. 1978)..................................................................................................10

*Seidman v. Central Bancorp, Inc.*,
    No. 030547BLS, 2003 WL 21528509, at *8-9 (Mass. Super. Ct. June 30, 2003) ............ passim

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002).....................................................................................................15

*Tarrant v. Ponte*,
    751 F.2d 459 (1st Cir. 1985)..................................................................................................10

<u>State Cases</u>

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ...................................................................................................5

*Bartlett v. New York, New Haven & Hartford R.R.*,
    221 Mass. 530 (1915) ...................................................................................................5

*Commonwealth v. Clerk-Magistrate of the West Roxbury Div.*,
    439 Mass. 352 (2003) ...................................................................................................7

*Harhen v. Brown*,
    431 Mass. 838 (2000) ........................................................................................... passim

*Houle v. Low*,
    407 Mass. 810 (1990) ...................................................................................................4

*Mass. Broken Stone Co. v. Town of Weston*,
    430 Mass. 637 (2000) .............................................................................................7, 10

*Solomon v. Armstrong*,
    747 A.2d 1098 (Del. Ch. 1999) ......................................................................................6, 14

*Spiegel v. Beacon Participations, Inc.*,
    297 Mass. 398 (1937) ...................................................................................................4

<u>Federal Statutes</u>

28 U.S.C. § 157...............................................................................................................1, 2

29 U.S.C. § 1001........................................................................................................1, 17, 18

29 U.S.C. § 1144(a) ...........................................................................................................18

<u>State Statutes</u>

Mass Gen. L. ch. 56 ..........................................................................................................17

US1DOCS 5397289v4

Mass. Gen. Laws ch. 156B ..................................................................................................... passim

Other Authorities

*Standards of Director Liability*,
  28 New Eng. L. Rev. 1025 (1994)............................................................................................11

iv

R. Schorr Berman, John W. Brown, Jerome H. Grossman, M.D., Margaret G. Kerr, Arno

A. Penzias, Pamela W. McNamara, Javier Rotllant, and Gerhard Schulmeyer (collectively,

"Defendants") respectfully submit this brief in support of their objection to the Bankruptcy

Court's October 5, 2005 Proposed Findings of Fact and Conclusions of Law (the "Proposed

Findings/Conclusions"), in which Judge Boroff recommended that the District Court deny their

motion to dismiss Counts I–V of the Consolidated Adversary Complaint dated February 4, 2004

(the "Complaint"), filed in this proceeding pursuant to the voluntary bankruptcy petition of

Dehon, Inc. (formerly known as Arthur D. Little, Inc.).

## ISSUES PRESENTED

This Objection to the Bankruptcy Court's Proposed Findings/Conclusions presents the

following issues:

1. Is the presumption of the Massachusetts Business Judgment Rule that officers and directors
   have a "complete defense to *any claim*," Mass. Gen. Laws ch. 156B, § 65 (emphasis added),
   applied differently to a claim alleging that directors breached their fiduciary duty and
   violated Mass. Gen. Laws ch. 156B, § 61?

2. Does the Complaint plead facts sufficient to overcome the presumption of the Massachusetts
   Business Judgment Rule?

3. Does the Employee Retirement Income Security Act of 1974, *codified as amended*, 29
   U.S.C. § 1001, *et seq.* ("ERISA"), preempt Plaintiff's claims?

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this objection to the Bankruptcy Court's Proposed

Findings/Conclusions pursuant to 28 U.S.C. § 157.  This objection challenges legal conclusions

proposed by the Bankruptcy Court; such conclusions are reviewed *de novo* by the District Court.

*Id.* at § 157(c)(1).[1]

---

[1]   Although the Bankruptcy Court, pursuant to 28 U.S.C. § 157, styled its recommendation as a "Proposed
Findings of Fact and Conclusions of Law," the Proposed Findings/Conclusions make no factual findings (which, of

1

## BACKGROUND

Defendants are former directors (all but one a former independent director) of the debtor, Dehon, which was formerly known as Arthur D. Little, Inc. (Compl. ¶¶ 3, 4, 7, 14, 16, 20.) Then-current or former employees (or their beneficiaries) held shares of Dehon common stock in various stock plans or trusts (the "Employee Plans"). (*Id.* at ¶ 32.) The Arthur D. Little, Inc. Memorial Drive Trust also held shares of Dehon stock. (*Id.*) As directors, Defendants were allegedly authorized to discontinue, change, or terminate the Employee Plans at any time. (*Id.* at ¶ 35.)

Plaintiff alleges that Defendants should have exercised their discretion to terminate or modify those Employee Plans, but instead authorized and approved: (*i*) a stock-based deferred compensation plan for Lorenzo Lamadrid, who was hired to be Dehon's CEO; (*ii*) amendments to the Employee Plans that allowed beneficiaries to receive payments in a lump sum or over five years; (*iii*) the exchange of common stock held by the Arthur D. Little, Inc. Memorial Drive Trust for shares of newly-issued preferred stock; and (*iv*) an amendment to an established share distribution program. (*Id.* at ¶¶ 36–37, 39–43.) Plaintiff acknowledges that Defendants had discretion to make these decisions and similarly does not suggest that any employees, retirees, or beneficiaries received anything more than that to which they were duly entitled under the terms of the Employee Plans. Instead, Plaintiff contends that Defendants should have made different decisions; in particular he believes that they should have terminated and/or modified the Employee Plans, such as by eliminating the "Over 55 Stock Repurchase Payments" program and

---

course, makes sense given that Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). Accordingly, only pure issues of law are presented here.

2

other benefits that for years had been available to and relied upon by long-time Dehon employees.

Plaintiff brought the present adversary action against Defendants (as well as others) on February 4, 2002. The Complaint alleged forty-five counts, but the present objections are only concerned with the first five. Counts I through IV all allege that Defendants transferred or distributed assets in violation of Massachusetts General Law, Chapter 156B, Section 61 ("MGL ch. 156B, § 61"). Count V is premised on the same underlying conduct, but alleges breach of fiduciary duty. The Complaint does not, however, allege that Defendants were not disinterested.

The challenged decisions with respect to the ERISA Plans primarily took place in the summer of 1999. (Compl. ¶¶ 39–42.) Some two years later, in February 2002, Dehon became insolvent and filed for bankruptcy. Defendants moved to dismiss Counts I-V in May 2004 on the basis that the Plaintiff had failed to plead the necessary elements to overcome the Massachusetts Business Judgment Rule's presumption of correctness for corporate directors' decision making, and on the basis that Plaintiff's breach of fiduciary duty claim was preempted by ERISA. On October 5, 2005, the Bankruptcy Court issued a decision recommending that the motion to dismiss these counts be denied.

## ARGUMENT

The Bankruptcy Court's Proposed Findings/Conclusions should not be accepted for two reasons. *First*, the Bankruptcy Court misconstrued the applicable legal standard for pleading a complaint in a case under the Business Judgment Rule, and then further erred by sustaining the Complaint on the basis of allegations not actually found in the Complaint. Although acknowledging, properly, that the Massachusetts Business Judgment Rule applies in this case, the Bankruptcy Court erroneously misconstrued the rule by finding a distinction between

3

derivative and direct suits when there is none, by imposing an exception to the rule's usual

protections for the case of insolvency, and by failing to hold Plaintiff to his pleading burdens.  In

the absence of any allegation that the Defendant Directors were interested, or that they acted in

bad faith, the Business Judgment Rule provides a complete defense to Plaintiff's claims, which

should be dismissed.  *Second*, the Bankruptcy Court rejected Defendants' demonstration that

Plaintiff's breach of fiduciary duty claims is preempted by ERISA under First Circuit precedent

and recommended sustaining that claim as well.

## I.   THE BANKRUPTCY COURT ERRED BY NOT APPLYING THE MASSACHUSETTS BUSINESS JUDGMENT RULE AS REQUIRED BY STATE STATUTE AND COURT PRECEDENT.

### A.   The Business Judgment Rule Applies To This Case.

There is no question that the Massachusetts Business Judgment Rule applies to this case,

as both the Plaintiff and the Bankruptcy Court acknowledged.[2]

Specifically, "Massachusetts has always recognized the need for courts to abstain from

interfering in business judgments." *Houle v. Low*, 407 Mass. 810, 824 (1990); *see Spiegel v.*

*Beacon Participations, Inc.*, 297 Mass. 398, 433 (1937) ("It is no part of the judicial function to

substitute its business view for that of those vested by law with the control of corporate affairs").

For this reason, the Business Judgment Rule presumes that in making business decisions,

corporate directors, like Defendants here, acted in good faith and in what they believed to have

been the best interest of the corporation. *See Harhen v. Brown*, 431 Mass. 838, 845 (2000)

("business judgment rule affords protection to the business decisions of directors . . . because

directors are presumed to act in the best interests of the corporation"); *Bartlett v. New York, New*

---

[2]    The record is clear that the Bankruptcy Court and the Plaintiff both agree with Defendants that this is a
Business Judgment Rule case. *See* Proposed Findings/Conclusions at 15–16; Transcript of the Hearing Before the
Hon. Henry J. Boroff (Apr. 5, 2005) ("Trans."), at 13–14 (Plaintiff stating that "We are not arguing that it does not
apply, that the Business Judgment Rule or the Defense in Section 65 does not apply.").

4

*Haven & Hartford R.R.*, 221 Mass. 530, 532 (1915) ("Directors . . . are presumed to be acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned, and with a consciousness of duty toward the corporation and all its stockholders."); *accord Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

The Business Judgment Rule has been codified in Mass. Gen. L. ch. 156B, § 65, and "affords complete protection to the business decisions of the directors because they are presumed to act in the best interests of the corporation." *Seidman v. Central Bancorp, Inc.*, No. 030547BLS, 2003 WL 21528509, at *8–9 (Mass. Super. Ct. June 30, 2003) ("Section 65 can be seen as setting forth in Legislative words what is generally referred to as the business judgment rule."). The statute provides:

> A director, officer or incorporator of a corporation shall perform his duties . . . in good faith and in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In determining what he reasonably believes to be in the best interests of the corporation, a *director may consider the interests of the corporation's employees, suppliers, creditors and customers, the economy of the state, region and nation, community and societal considerations, and the long-term and short-term interests of the corporation and its stockholders*
> . . . .

Mass. Gen. L. ch. 156B, § 65 (emphasis added).[3] Significantly, § 65 *"shall be a complete defense to any claim"* against Massachusetts directors challenging the wisdom of their decisions. *Id.* (emphasis added).[4]

---

[3]     Plaintiff's attempt to subject Defendants' business judgment to second-guessing litigation is particularly improper because Massachusetts is even more protective of, and deferential to, directors' judgment than other jurisdictions. For example, Section 65 expressly empowers directors to consider an unusually wide range of constituencies in making decisions — including the *"interests of the corporation's employees,"* who in this case spent their careers at Dehon and whom plaintiff now claims should have been denied benefits under the Employee Plans. *See* Mass. Gen. L. ch. 156B, § 65 (emphasis added). Indeed, unlike in Delaware and most states, the public

5

There is no question that the Business Judgment Rule provides a "complete defense" to Plaintiff's challenge to Defendants' business decisions, regardless of whether cast as a violation of § 61 (Counts I–IV) or labeled a breach of fiduciary duty (Count V). *See id.* (statute covers "*any claim*" against directors, "whether under sections sixty to sixty-four, inclusive, or otherwise") (emphasis added). Plaintiff bears the burden to plead *facts* to overcome the presumption under the Business Judgment Rule. *See Harhen*, 431 Mass. at 845. Thus, to survive a motion to dismiss, Plaintiff must plead facts that challenge the disinterestedness, good faith, or reasonableness of the directors' investigation into the challenged business decision. *See id.; Solomon v. Armstrong*, 747 A.2d 1098, 1111–12 (Del. Ch. 1999) ("[u]nder the business judgment rule, the burden of pleading and proof is on the party challenging the decision to allege facts to rebut the presumption").

In other words, a court will not inquire into a director's business decision, nor may a director be liable in a suit over a decision, unless a plaintiff can demonstrate either that the director was (i) not disinterested or (ii) acted in bad faith. Even if the decision in hindsight appears to be misguided, or if the corporation is harmed by the results, courts will not second-guess decision-making absent a showing of bad faith or interest in the decision.

**B.    The Bankruptcy Court Misconstrued The Massachusetts Business Judgment Rule As A Matter of Law.**

The Bankruptcy Court correctly acknowledged that the Business Judgment Rule applies to this case. However, the Bankruptcy Court applied the Business Judgment Rule incorrectly by

---

policy underpinning the Massachusetts Business Judgment Rule is so strong that it is not relaxed even in corporate control contests where plaintiffs allege that the directors are improperly deploying "poison pills" to defend their status as directors of independent corporations. *See Seidman*, 2003 WL 21528509, at *9–10 (refusing to import Delaware's heightened standard of review).

[4]    Recently § 65 was recodified as part of a comprehensive overhaul of the Massachusetts Corporations Act, but there is no question that the conduct at issue took place when § 65 was in effect, and that the prior version controls here. *See* Trans. at 4.

6

disregarding controlling authority based on a supposed distinction between direct and derivative litigation that finds no support in Massachusetts law, and by inventing an exception to the Rule's presumption for the case of insolvency that likewise runs counter to established state law authority.

### 1. The Bankruptcy Court Erroneously Disregarded Precedent By Drawing An Unsupportable Distinction Between "Direct" And "Derivative" Lawsuits.

The Bankruptcy Court committed reversible error by disregarding Massachusetts precedent that requires dismissal of challenges to the conduct of officers and directors where, as here, Plaintiff has not alleged facts to defeat the Business Judgment Rule presumption. *See* Mem. in Support of Def. Motion to Dismiss (Feb. 6, 2003), at 3–6 ("Mov. Br.") (citing *Harhen*, 431 Mass. at 845, and *Seidman*, 2003 WL 21528509, at *8–9). The Bankruptcy Court incorrectly held that those decisions were "largely inapposite" because they were decided in the context of derivative complaints under Rule 23.1. *See* Proposed Findings/Conclusions at 15–16.

There is, however, no basis in Massachusetts law upon which the Bankruptcy Court could have found that the Business Judgment Rule does not apply in direct actions, or that the presumption is any respect less robust in direct actions than in derivative actions. *See* Proposed Findings/Conclusions at 15–16. Such a distinction contradicts the plain language of the statute, which on its face is explicit that the Business Judgment Rule provides a "complete defense to *any claim* asserted against" the director. *See* Mass. Gen. L. ch. 156B, § 65. Simply put, "any claim" means "*any* claim." *Commonwealth v. Clerk-Magistrate of the West Roxbury Div.*, 439 Mass. 352, 255–56 (2003) ("A court may not add words to a statute that the Legislature did not put there."); *Mass. Broken Stone Co. v. Town of Weston*, 430 Mass. 637, 639 (2000) ("Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning and the courts need not look beyond the words of the statute itself.").

7

*Seidman v. Central Bancorp, Inc.* also forecloses the Bankruptcy Court's conclusion that the Massachusetts Business Judgment Rule is applied differently depending on whether the suit at issue is a direct action or a shareholder derivative action. *See* 2003 WL 21528509. In *Seidman*, Judge Van Gestel ruled that a *direct* lawsuit challenging "poison pill" anti-takeover measures was subject to the Business Judgment Rule presumption set forth in § 65. *Id.* at \*8–9. Indeed, in *Seidman*, the court expressly refused to depart from the plain meaning of § 65, and did so in order to adhere to the Supreme Judicial Court precedent in *Harhen* that the Bankruptcy Court found "inapposite" in this case. *Compare Seidman*, 2003 WL 21528509 at \*8–9 (applying § 65 as written), *with* Proposed Findings/Conclusions at 15–16 (departing from statutory text). The *Seidman* court's dismissal of the case indicates that Massachusetts courts draw no distinction between direct and derivative actions when it comes to a motion to dismiss premised on the Business Judgment Rule.

By contrast, there is no authority whatsoever in the Bankruptcy Court's Proposed Findings/Conclusions to support its recommended distinction between direct and derivative lawsuits. Defendants are not aware of any Massachusetts cases that draw such a distinction, Plaintiff has never offered any, and as demonstrated above, the statute itself (on its face and as judicially applied) is to the contrary.[5]

---

[5]    It may be that the Bankruptcy Court confused the application of the Business Judgment Rule presumption (a substantive, legal presumption that defendants are entitled to a "complete defense") with the level of particularity with which plaintiffs must plead themselves over that presumption (a pleading standard that defendants here never argued as a basis for the motion to dismiss). That is, in *all cases* challenging the corporate decisions of director or officer (*i.e.*, "any claim"), to state a claim the plaintiff must plead either that the director was not disinterested, or that he or she acted in bad faith — this is a substantive element of the action that has nothing to do with a heightened pleading requirement. *See* Part I.C, *infra*. Plaintiff's failure to do so here requires dismissal.

In derivative cases only — and therefore, not in this case — a plaintiff also must plead with particularity that he made demand (or plead that demand should be excused) before a claim can be maintained as a derivative action. *See* Mass. R. Civ. P. 23.1.

2.    **Massachusetts Law Does Not Recognize Any Exception To The Business Judgment Rule For Insolvency, And The Bankruptcy Court's Conclusion To The Contrary Was Erroneous.**

The Bankruptcy Court also committed reversible error by proposing a narrow construction of the Business Judgment Rule, apparently because this case arises in the context of insolvency. *See* Proposed Findings/Conclusions at 17–18. Specifically, the Bankruptcy Court incorrectly concluded that in the context of an allegedly insolvent corporation, § 65 does not protect directors who "merely" authorized distributions in "good faith belief" that they were serving the "best interests of the corporation." Proposed Findings/Conclusions at 17. Instead, the Bankruptcy Court narrowly circumscribed the Section 65 defense by holding the "more logical interpretation of § 65 is that it applies to directors' determinations that the corporation is not insolvent and the dividends or repurchases would not render the corporation insolvent." *Id.*

The Bankruptcy Court provided no precedent or other authority whatsoever to displace the plain meaning of § 65 with a more narrow construction. First, as set forth above and in Defendants' briefs in the Bankruptcy Court, the relevant statute plainly and pointedly says "*any claim.*" Mass. Gen. L. ch. 156B, § 65; *see also* Part I.B *supra*, Mov. Br. at 5. There is nothing in the statute to suggest that it applies any differently in the insolvency context, and certainly nothing to support the Bankruptcy Court's interpretation that it only protects certain "determinations" in that context. *Compare* § 65 ("shall be a complete defense to any claim asserted against him"), *with* Proposed Findings/Conclusions at 17. Indeed, the notion that Section 65 operates any differently in this case is explicitly *contradicted* by the fact that the Legislature was explicit — *in the statute* — that "any claim" includes claims under Section 61.

---

Ultimately, the fact that many Business Judgment Rule cases arose in the derivative context is neither surprising nor relevant, and the fact that such cases address both the Rule 23.1 pleading requirements and the Section 65 Business Judgment Rule requirements as well does nothing to undermine the importance of the latter.

9

Mass. Gen. L. ch. 156B, § 65 ("The fact that a director . . . so performed his duties shall be a complete defense to any claim asserted against him . . . *under sections sixty to sixty-four, inclusive*") (emphasis added).

The Bankruptcy Court's substitution of its own "interpretation" for the plain meaning of § 65 runs counter to the rule that unambiguous statutes are to be interpreted according to their terms. *See Clerk-Magistrate of the West Roxbury Div.*, 439 Mass. at 255–56; *Mass. Broken Stone Co.*, 430 Mass. at 639 (2000). For this reason, in *Seidman*, Judge Van Gestel considered and rejected the general principle (urged here) that certain types of corporate decisions are worthy of less protection than others, depending on the context. In *Seidman*, plaintiffs had argued that a decision to deploy a "poison pill" to thwart a takeover should be treated as an exception to the Business Judgment Rule that exists under Delaware law doctrine. *See* 2003 WL 21528509, at *9. The court rejected that argument, stating that "[n]or should this Court cause the Legislative language chosen to be modified or altered by imposing thereon . . . the law of other jurisdictions." *Id.*; *see also id.* at *9–10. The same is the case here; even assuming *arguendo* that the Bankruptcy Court's re-interpretation of the Section 65 was "logical," this purported logic does not entitle it to substitute its judgment for that of the Legislature.

The Bankruptcy Court's application of a different Business Judgment Rule standard in bankruptcy context was particularly unwarranted because it is bedrock principle of our federalism that federal courts applying state laws should apply them consistent with state precedent and authority. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (a federal court is "bound to accept [a state] court's construction of that State's statutes"); *Tarrant v. Ponte*, 751 F.2d 459, 463 (1st Cir. 1985) (federal court will defer to state court interpretation of state statute except in extreme and rare circumstances); *Salemme v. Ristaino*, 587 F.2d 81, 87 (1st Cir. 1978) ("It is

10

well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts."). Nor did the Bankruptcy Court provide any supporting case or statutory authority, but instead relied exclusively on an eleven-year-old law review article. Proposed Findings/Conclusions at 17. [6]

Finally, to the extent this Court is concerned with potential policy rationale, there are none that would warrant special exceptions or differential analysis of Section 65 in the absence of any legislative indication in the statute itself. If anything, the public policy underlying the business judgment rule arguably attaches with even greater weight in this context. *See* Trans. at 37–38 (Bankruptcy Court observing during oral argument that "To say that the Business Judgment Rule doesn't apply in this circumstance where it is most needed . . . and that is where insolvency . . . might result from a decision made that was prudent at the time seems to strike at the heart of the statute.").

## C.   Plaintiff Cannot Defeat the Business Judgment Rule By Alleging That Defendants' Decisions Were "Illegitimate" And/Or "Unlawful."

The Bankruptcy Court also committed legal error with the recommended ruling that Defendants' business decisions "do not implicate the business judgment rule" simply because Plaintiff claimed that those decisions were somehow "not legitimate" and/or were "illegal."

---

[6]      The Bankruptcy Court relied upon James E. Tucker, *Director and Shareholder Liability for Massachusetts Corporations' Distributions to Shareholders: A Suggestion for Change in Standards of Director Liability*, 28 New Eng. L. Rev. 1025 (1994). Even if a not-recent law review article could prevail over more recent Supreme Judicial Court and Superior Court authority, this article does not support the Bankruptcy Court's interpretation; at most it argues (correctly) that directors who authorized a distribution may escape liability if they are not interested, if they acted in good faith, and if they exercised their duty of care. *Id.* at 1060–61. That is the Business Judgment Rule, and it is presumed to be satisfied in this case. *See* Part I, *supra*. The reverse is also true: Absent factual allegations that defendants were interested or acted in bad faith, the presumption has not been overcome and the case must be dismissed.

Plaintiff could only muster a string of out of state cases. Opp. Br. at 6–7 & n.7. None of these citations provides any support for an "insolvency exception" under Massachusetts law. Even were there no Massachusetts cases, however, the authority on which plaintiff relies is inapposite, as we demonstrate in our reply brief. *See* Reply Mem. in Further Support of Mtn. to Dismiss (Oct. 19, 2004), at 5–6 & n.6.

11

Proposed Findings/Conclusions at 16–17. Specifically, the Court held that the very fact that Plaintiff sued Defendants for violating section 61 (*i.e.*, for authorizing distributions when Dehon allegedly was nearing insolvency) strips Defendants of their Business Judgment Rule presumption, and would even allow Plaintiff to proceed "regardless of whether Defendants believed that they were in the best interests" of the corporation. Proposed Findings/Conclusions at 17. That proposed conclusion finds no support in Massachusetts law.

First, the Bankruptcy Court's reasoning rests on the false premise that the Business Judgment Rule only applies to corporate decisions that were "objectively, legitimate and lawful" but does not apply to "illegal actions" or conduct that is "inherently wrong." Proposed Findings/Conclusions at 17. That distinction, however, would not possibly provide a basis to deny *this* motion to dismiss — because there was nothing inherently "wrong" — and certainly nothing "illegal" — about the challenged distributions. To the contrary, Plaintiff acknowledges that Defendants had the authority to continue to pay benefits to retirees under these stock plans, and there certainly is nothing *per se* "illegal" or "wrong" about doing so. Op. Br. at 2; Compl. ¶ 38. (To be clear, this is emphatically not a lawsuit about the alleged misuse of corporate authority to money launder, traffic narcotics, or engage in some form of conduct that could never be lawful.)

Moreover, the Court's ruling that the Business Judgment Rule protection of Section 65 is suspended in cases challenging distributions as "unlawful under section 61" again ignores the statute, which expressly identifies claims under § 61 as being among the "any claims" that trigger the presumption. Mass. Gen. L. ch. 156B, § 65 ("The fact that a director . . . so

12

performed his duties shall be a complete defense to any claim asserted against him . . . *under sections sixty to sixty-four, inclusive.*") (emphasis added).[7]

Finally, the Court's reliance on an illegality exception to the Business Judgment Rule is not at all supported by citation to *Harhen v. Brown*, 431 Mass. 838 (2000). *Harhen* only refers to such an exception in *dicta*, relying on *Miller v. American Tel. & Tel. Co.*, 507 F.2d 759, 762 (3d Cir. 1974). *See Harhen*, 431 Mass. at 845 n.7.[8]  The argument also was rejected by Judge Keeton last year in the context of the analogous Delaware Business Judgment Rule:

> Plaintiff's argument relies, however, on a false premise. The business judgment rule can insulate unlawful conduct. . . . . One can reasonably conceive of numerous situations in which directors might act on an informed basis, in good faith and in the honest belief that an action taken is in the best interests of the company and yet approve a transaction that, in the end, proves to be unlawful.

*Landry v. D'Alessandro*, 316 F. Supp. 2d 49, 64 (D. Mass. 2004).

### D.   Plaintiff Has Failed To Plead Sufficient Facts To Overcome The Business Judgment Rule's Presumption Of Correctness.

The Bankruptcy Court also erred in the application of its incorrect "interpretation" of the Business Judgment Rule standard to the allegations of the Complaint. Not only should this Court reject the Proposed Conclusions of Law, but it should further dismiss the lawsuit because as a matter of law the Complaint cannot be sustained if scrutinized under the correct standard.

---

[7]     In any event, the Bankruptcy Court's legitimate/illegitimate distinction also does not make sense because virtually every case protected by the Business Judgment Rule alleges that the directors or officers did something unlawful. *Cf. Harhen v. Brown*, 431 Mass. 838, 840–41 (2000) (alleging director liability for improper lobbying conduct); *Landy v. D'Alessandro*, 316 F. Supp.2d 49, 53–54 (D. Mass. 2004) (alleging misconduct with respect to director compensation); *Seidman*, 2003 WL 21528509, at *4 (alleging Board misused poison pill to entrench themselves and violate plaintiffs' rights).

[8]     *Miller* also does not support the Bankruptcy Court's proposed ruling or in any way help Plaintiff. It construed *Delaware* law (not *Massachusetts* law) and in any event itself makes clear that its discussion only applies to *illegality*, not *tort*-based liability. 507 F.2d at 762.

### 1.    The Bankruptcy Court Applied An Incorrect Pleading Standard.

As noted *supra*, the Business Judgment Rule presumption is a *substantive* rule of law,

created by statute. Thus, unlike in most civil lawsuits, to state a claim Plaintiff must come

forward with factual allegations to overcome the presumption that Defendants acted

appropriately and in the best interests of the company; without such allegations, Defendants are

entitled to a "complete defense" on a motion to dismiss. Mov. Br. at 5–6; *see also Hahern v.*

*Brown*, 431 Mass. 838, 845 (2000); *cf. Solomon v. Armstrong*, 747 A.2d 1098, 1111–12 (Del.

Ch. 1999); *see also Solomon v. Armstrong*, 747 A.2d 1098, 1111–12 (Del. Ch. 1999) ("[u]nder

the business judgment rule, the burden of pleading and proof is on the party challenging the

decision to allege facts to rebut the presumption").

Thus, there is no question that to survive a motion to dismiss Plaintiff must plead *some*

facts to defeat the presumption that Defendants acted in bad faith or were not disinterested.

*Harhen v. Brown*, 431 Mass. 838, 847–48 (2000). Otherwise, the presumption operates as a

"complete defense" and requires dismissal as a matter of law. *Harhen*, 431 Mass. at 845;

*Seidman*, 2003 WL 21528509, at *10; *see also Landry*, 316 F. Supp. 2d at 64*; cf. Solomon*, 747

A.2d at 1111–12.[9] The Bankruptcy Court further erred by not scrutinizing the Complaint under

Rule 8(a), which, as the First Circuit recently reaffirmed, requires Plaintiff to plead "facts as to

who did what to whom, when, where, and why . . . . [T]he requirements of Rule 8(a)(2) are

minimal — but 'minimal requirements are not tantamount to nonexistent requirements.'"

*Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). A mere conclusory allegation of

---

[9]    Critically, Defendants have *never argued* that Plaintiff must allege facts with the degree of particularity required for fraud claims under Rule 9(b) —in fact, Defendants expressly disclaimed this proposition at the oral argument. *See* Trans. at 28.

14

wrongdoing is insufficient. *Id.* ("[I]n considering motions to dismiss courts should continue to 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'") (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)). This principle is as true in the bankruptcy context as in any other civil action. *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18 (1st Cir. 2002) (applying standard in bankruptcy action).[10]

As the Supreme Court has recently explained in *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005), even under the liberal pleading standards of Rule 8, to state a claim a Plaintiff must allege the facts he will need to prove to recover.[11] The Supreme Court in *Dura* made clear that in order to give the defendant "'fair notice of what the plaintiffs' claim is and the grounds upon which it rests,'" *id.* at 1634 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), a plaintiff must "allege" the facts he will "need to prove" to be entitled to relief. *Id.* at 1627; *see also Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005) (affirming dismissal of complaint pursuant to Rule 12(b)(6) where plaintiff failed to allege elements of claim).

### 2.   Plaintiff's Allegations Fail To State A Claim

The Bankruptcy Court set forth its analysis of the Complaint (application of its erroneous Business Judgment Rule standard to the allegations) on page 18:

---

[10]   The Bankruptcy Court's reliance on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), is misplaced. *See* Proposed Findings/Conclusions at 13 (citing *Swierkiewicz*). In *Swierkiewicz*, the Supreme Court rejected the Second Circuit's rule requiring employment discrimination plaintiffs to allege facts that would establish a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Court held that the *McDonnell Douglas* burden-shifting scheme was an evidentiary standard, not a pleading standard, since the prongs of the *prima facie* case were not even necessary elements of the claim. 534 U.S. at 510–11. The Court further concluded that the judicial importation of pleading requirements that went beyond the elements of the claim would violate Rule 8(a). *Id.* at 512–13. Both the *Dura* case and the First Circuit's *Educadores* decision came after *Swierkiewicz*, of course, and inform how courts should interpret it. The Bankruptcy Court failed to cite or consider either of these cases.

[11]   *Dura* is the Supreme Court's most recent decision on Rule 8. Although *Dura* is a securities fraud action, the Supreme Court was explicit that the issues at stake in the decision did not fall under the heightened pleading standard of Rule 9(b) or the Private Securities Litigation Reform Act, but rather, as non-fraud elements, were analyzed under Rule 8(a). *See* 125 S. Ct. at 1634 (assuming for the purposes of decision that Rule 8 was the relevant standard for purpose of pleading causation).

15

> Viewed in this light, the Plan Administrator's complaint is
> sufficient under Federal Rule 8(a).  Accepting as true the Plan
> Administrator's allegations that (1) the Debtor was insolvent or
> near insolvency at the time of the challenged distributions and (2)
> the Board voted in July of 1999 to suspend distributions and then
> authorized various dividends and stock repurchases shortly
> thereafter, the complaint states a claim under § 61.  Construed in
> the light most favorable tot the Plan Administrator, these facts
> support an inference that the Defendants were aware of the
> Debtor's insolvency or near-insolvency in July of 1999, but
> proceeded to pay shareholders in contravention of Massachusetts
> law and in abdication of their duties as articulated in § 65.  Thus,
> Counts I–IV sufficiently state a claim for illegal distributions under
> MGL ch. 156B, § 61.

Proposed Findings/Conclusions at 18.  That conclusion is not, however, supported by the

Complaint itself.  In sustaining the Complaint, the Bankruptcy Court relied *exclusively* on

paragraph 38 of the Complaint, which also is the *only* paragraph of the Complaint that Plaintiff

identified at oral argument as containing the allegations that Plaintiff contends are sufficient.

Paragraph 38 states, in its entirety:

> On July 20, 1999, the Board of Directors of Dehon voted that
> beginning with the second quarter of calendar 1999, the payment
> of dividends on Dehon stock would not be in the best interests of
> Dehon and that the dividend payments would thereafter be
> suspended.

Compl. ¶ 38.

This paragraph is the entirety of what the Bankruptcy Court relied upon to recommend

sustaining the Complaint.  The paragraph is inadequate to state a claim, for four reasons.

*First*, ¶ 38 says nothing to support the Bankruptcy Court's inference that Defendants

"abdicated their duties."  To the contrary, the paragraph states that on the day in question the

directors involved in the decision acted in Dehon's best interest.

*Second,* ¶ 38 says nothing to support the Bankruptcy Court's inference that any

Defendant was "aware" of Dehon's alleged insolvency or near-insolvency on that day.  In fact,

16

the paragraph says nothing about *any* defendant at all. Under any circumstances, the failure to make individualized allegations would deprive Defendants of fair notice. All the more so where, as here, at least one Defendant was not even on the board on July 20, 1999.[12]

*Third*, the Complaint explicitly alleges that Defendants considered a valuation of the company in making decisions. This allegation not only fails to support an inference of "abdication," it makes such an inference impossible. If anything, the allegations about valuation support an inference that Defendants acted reasonably. *See* Mass Gen. L. ch. 56, § 65 (listing such reports as among the sources directors may consult).

*Fourth*, Plaintiff's theory seems to be that once he has alleged that, on a certain date, a director made one decision, any other future actions by any and all future directors that are inconsistent with the first day's decision must be in bad faith. This theory should be rejected. Even if on a certain specific day, a certain specific set of directors makes a decision, based on the information they have before them, future directors are permitted to reassess and make new decisions about what is best for the company, whether based on new information, or simply because of a new idea about the information it already has.

## II.    THE BANKRUPTCY COURT ERRED IN RULING THAT ERISA DOES NOT PREEMPT PLAINTIFF'S CLAIMS.

The Bankruptcy Court also incorrectly sustained Plaintiff's claims with respect to the Arthur D. Little, Inc. Employee Stock Ownership Plan and the Arthur D. Little, Inc. Employees' MDT Retirement Plan (collectively, "the ERISA Plans") because those claims are preempted by the Employee Retirement Income Security Act of 1974, *codified as amended*, 29 U.S.C. § 1001, *et seq.* ("ERISA"). *See* Proposed Findings/Conclusions at 19–26; *see also* Mov. Br. at 7–9. The

---

[12]    Defendant Berman is alleged to have joined the board in December 1999. Compl. ¶ 3.

17

Bankruptcy Court ruled that Plaintiff's claims regarding the ERISA Plans were not preempted for two reasons. First, because the "claims . . . relate solely to corporate management decisions wholly removed from the ERISA Plan beneficiaries, administrators, and managers." Proposed Findings/Conclusions at 22. Second, because the potential impact of the claims on the ERISA Plans was too "incidental and tenuous." *Id.* at 25. Both conclusions are in error.

There is no dispute that the Plans are qualified under ERSIA. *Id.* at 11. As the United States Supreme Court has observed, ERISA has a "deliberately expansive" preemption effect, covering an "expansive sweep" in the scope of what legislation it preempts. *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 324 (1997). The statue itself expressly preempts any state law or claim that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). As the Supreme Court has stated, a state law claim will be deemed to "relate to" an ERISA plan when it falls into one of two categories: (1) It "has a connection with" an ERISA plan, or (2) it has "reference to" an ERISA plan. *Dillingham*, 519 U.S. at 324. The claims in this case are preempted under both of these prongs.

*First*, Plaintiff's claims "[have] a connection with" an ERISA plan. The Bankruptcy Court's recommended ruling to the contrary rests on the unsustainable notion that "the administration and management of the ERISA Plans do not form the basis" for this case. *See* Proposed Findings/Conclusions at 22. To the contrary, the entire lawsuit rests on Plaintiff's theory that Defendants engaged in misconduct by continuing to distribute benefits to retirees under the ERISA Plans that were established in the 1950s for those employees/beneficiaries. *See* Compl. at ¶¶ 38–48. Plaintiff contends that Defendants instead should have "terminated" those Plans so Dehon could use the money to pay non-employee creditors. *See* Op. Mem. at 8–9.

18

Thus, the lawsuit not only is *based on* (not merely "connected" to) ERISA Plans, but seeks to impose liability on Directors premised on an alleged state-law duty to creditors that, if enforced, would undermine ERISA's mandate that Directors' decisions (such as to "terminate" or "modify" the Plans) be made in the interests of plan beneficiaries pursuant to the "comprehensive and reticulate statute." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002). [13] Indeed, as the First Circuit has recognized, the objective of ERISA is the protection of participants in, and beneficiaries of, employee benefit plans. *Carpenters Local Union v. U.S. Fid. & Guar. Co.*, 215 F.3d 136, 140 (1st Cir. 2000).

*Second*, the Bankruptcy Court did not adhere to the First Circuit precedent that a state law claim is preempted by ERISA when the fact-finder "*necessarily* would be required to consult the ERISA plan to resolve the plaintiff's claims." *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 281 (1st Cir. 2000) (emphasis added). The Bankruptcy Court distinguished *Harris* on the incorrect premise that Plaintiff's claims "do not require the determination of plan administrators' and plan beneficiaries' rights of duties that attend to the ERSIA Plans." Proposed Findings/Conclusions at 25. That characterization of the Complaint is unsustainable because Plaintiff expressly alleged the contrary:

> The Stock Plans expressly authorized the Board of Directors of Dehon to discontinue, change or terminate the Stock Plans at any time. Accordingly, at all relevant times, the Defendants, as members of the Board of Directors of Dehon, had the right to cease making Stock Repurchase Payments and dividend payments.

Compl. ¶ 35.

---

[13] The Supreme Court has "observed repeatedly that ERISA is a '*comprehensive and reticulated statute*,' the product of a decade of congressional study of the Nation's private employee benefit system," and has "therefore been *especially reluctant to tamper with [the] enforcement scheme embodied in the statute* . . . ." *Knudson*, 534 U.S. at 209 (emphasis added, internal quotation marks and citations omitted).

US1DOCS 5397289v4

Simply put, because the central premise of the lawsuit is that Defendants had, but did not exercise, a purported discretionary right to "terminate" or "modify" an ERISA Plan, there is no way the case could be resolved without "consult[ing] the ERISA plan." *Harris*, 208 F.3d at 281.[14]

## **CONCLUSION**

For the foregoing reasons, this Court should reject the proposed findings of fact and conclusions of law, and order the dismissal of Counts I–V of the Complaint.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP


/s/ Mark D. Selwyn
Jeffrey B. Rudman (BBO #433380)
Mark D. Selwyn (BBO #565595)
Jonathan A. Shapiro (BBO #567838)
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Counsel for Defendants R. Schorr Berman,*
*John W. Brown, Jerome H. Grossman, M.D.,*
*Margaret G. Kerr, Arno A. Penzias, Pamela W.*
*McNamara, Javier Rotllant, and Gerhard*
*Schulmeyer*

Dated: November 28, 2005

---

[14]     The Bankruptcy Court purports to distinguish *Harris* on the basis of the "context" that the claim in that case was brought under a consumer protection statute that required the court to "analyze and interpret" the plan to "determine the rights and obligations of the parties in their roles as plan beneficiary and plan administrator." Proposed Findings/Conclusions at 24. What the Bankruptcy Court fails to acknowledge is that this case is no different: Plaintiff's claims here will require the court to "analyze and interpret" these Plans and determine Defendants obligations and authority under the Plans.

US1DOCS 5397289v4