UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEPHEN S. GRAY,
AS PLAN ADMINISTRATOR OF
DEHON, INC.,

        Plaintiff,

v.

BRIAN BARNETT, R. SCHORR
BERMAN, JOHN W. BROWN, JILL K.
CONWAY, PAUL E. GRAY, JEROME
H. GROSSMAN, M.D., MICHAEL
HAWLEY, THOMAS JOBSKY, ASHOK
S. KALELKAR, MARGARET G. KERR,
LORENZO LAMADRID, CHARLES R.
LAMANTIA, PAMELA W.
MCNAMARA, BERHARD METZGER,
ARNO A. PENZIAS, JAVIER
ROTTLANT, CLAIR RUSKIN, STUART
SAINT, GERHARD SCHULMEYER,
PETER WOOD, and WOLFGANG
ZILLESSEN,

        Defendants.

Civil Action No. 04-40056-JLT

**THE PLAN ADMINISTRATOR'S MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANTS R. SCHORR BERMAN, JOHN
W. BROWN, JEROME H. GROSSMAN, M.D., PAMELA W.
MCNAMARA, ARNO A. PENZIAS AND GERHARD SCHULMEYER'S
OBJECTION TO THE BANKRUPTCY COURT'S
<u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND FACTS .......................................................................................... 2

ARGUMENT ............................................................................................................ 4

    I.    THE BUSINESS JUDGMENT RULE DOES NOT INSULATE
        DEFENDANTS FROM LIABILITY FOR THEIR WRONGDOING .................... 4

        A.   The Business Judgment Rule Is Inapplicable Where, As Here, The
            Challenged Conduct Was Plainly Unlawful .................................................... 7

        B.   Even If Defendants Are Entitled To The Business Judgment Rule's
            Presumption, The Complaint's Allegations Rebut The Presumption ............ 11

    II.   ERISA DOES NOT PREEMPT PLAINTIFF'S CLAIMS ................................... 13

        A.   Counts I Through V Do Not Have An Impermissible "Connection
            With" Any ERISA Plan ................................................................................ 14

        B.   Counts I Through V Do Not Impermissibly "Refer To" Any ERISA
            Plan ............................................................................................................. 17

CONCLUSION ........................................................................................................ 18

## **TABLE OF AUTHORITIES**

### **Cases**

*Adamowicz v. Ipswich*, 395 Mass. 760 (1985) ……………………............................... 11

*Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995) …………………………...................... 16

*Bennett v. Holyoke*, 362 F.3d 1 (1st Cir. 2004) …………………………….................. 10

*Brandt v. Hicks, Muse & Co.*, 195 B.R. 971 (Bankr. D. Mass. 1996) …………………... 13

*Brigham v. M&J Corp.*, 352 Mass. 674 (1967) ……………………………………………. 9

*Burks v. Lasker*, 441 U.S. 471 (1979) ……………………………………………………. 16

*Bynes v. School Committee of Boston*, 411 Mass. 264 (1991) ……....……………......... 11

*California Div. of Labor Standards Enforcement v. Dillingham Constr.*,
519 U.S. 324 (1997) ……………………………………………………………………. 14, 17

*Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*,
215 F.3d 136 (1st Cir. 2000) ……………………………………………... 13, 14, 15, 16, 17

*Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998) ……………………………………. 16

*Harhen v. Brown*, 431 Mass. 838 (2000) ……………………………………….. 7, 10, 12

*Independent Bk. Corp. v. Spence*, 2003 WL 214784 (Mass. Super. Jan. 29, 2003) …... 8, 13

*In re Walt Disney*, 825 A.2d 275 (Del. Ch. 2003) ……………………………………. 11

*Ipswich Bituminous Concrete Prods., Inc. v. Robinson*, 79 B.R. 511 (D. Mass. 1987) …... 5

*Landy v. D'Alessandro*, 316 F. Supp.2d 49 (D. Mass. 2004) ……………….. 7, 8, 10, 11, 12

*Miller v. American Tel. & Tel. Co.*, 507 F.2d 759 (3rd Cir. 1974) ……………….. 7, 8, 9, 10

*Mi-Lor Corp. v. Gottsegen*, 233 B.R. 608 (D. Mass. 1999) ……………………………..... 5

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645, 654 (1995) ……………………………………………………………….... 14

*Pereira v. Cogan*, 2001 WL 243537 (Bankr. S.D.N.Y. Mar. 8, 2001) …………………. 11

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*,
793 F.2d 1456, 1468 (5th Cir. 1986) ............................................................... 16

*United States v. O'Neil*, 11 F.3d 292 (1st Cir. 1993) ............................................ 10

*Volin v. Board of Pub. Accountancy*, 422 Mass. 175 (1996) ................................... 11

*Ward v. Costello*, 2002 WL 31973253 (Mass. Super. Dec. 17, 2002) ......................... 5

## Statutes and Rules

28 U.S.C. § 157(c)(1) ...................................................................... 1

29 U.S.C. § 1144(a) ........................................................................ 14

Mass. Gen. Laws c. 156B, § 61 ........................................ 4, 5, 6, 9, 11

Mass. Gen. Laws c. 156B, § 65 ........................................... 6, 10, 11

Fed. R. Civ. P. 12(b)(6) .................................................................. 1

## Secondary Sources

R. Franklin Balotti, *The Delaware Law of Corporations and Business Organizations*,
at § 4.32 (2005) ............................................................................ 8

James E. Tucker, *Director and Shareholder Liability for Massachusetts Corporations'
Distributions to Shareholders: A Suggestion for Change in Standards of Director
Liability*, 28 New Eng. L. Rev. 1025 (1994) ........................................ 12

## INTRODUCTION

In this action, Plaintiff Stephen S. Gray, the Plan Administrator of Dehon, Inc.

("Dehon"), seeks, *inter alia*, to recover damages from Defendants R. Schorr Berman, John

W. Brown, Jerome H. Grossman, M.D., Pamela W. McNamara, Arno A. Penzias, and

Gerhard Schulmeyer ("Defendants"), all former directors of Dehon, for certain

distributions to Dehon's shareholders that Defendants authorized at a time when Dehon

was insolvent. These distributions not only contributed to Dehon's bankruptcy, but

violated state law, improperly favored Dehon's equity stakeholders over its creditors, and

left the company with substantially less money available to repay its debts than it

otherwise would have had.

Defendants have moved under Fed. R. Civ. P. 12(b)(6)[1] to dismiss all counts in

the Complaint ("the Motion"). Following a hearing on the Motion, the Bankruptcy Court

(Boroff, J.) denied the Motion with respect to the "core" claims.[2] Further, pursuant to 28

U.S.C. § 157(c)(1) and the District Court's order, dated January 25, 2005, the Bankruptcy

Court issued a "Proposed Findings of Fact and Conclusions of Law," dated October 5,

2005 (the "Recommendation"), recommending to the District Court that the Motion with

respect to the "non-core" claims ("Counts I though V") also be denied.

Defendants have now filed an objection to the Recommendation (the "Objection").

In their Objection, Defendants repeat the very same arguments they advanced in the

---

[1]    Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable to Bankruptcy Court proceedings by Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure.

[2]    On January 25, 2005, pursuant to 28 U.S.C. § 157(a), the District Court (Tauro, J.) withdrew the reference to the Bankruptcy Court as to all counts in the Complaint, and further ordered that: (a) all pretrial proceedings, including determinations as to whether claims are "core" or "non-core," would remain before the Bankruptcy Court; (b) the Bankruptcy Court retained jurisdiction to enter final judgments with respect to pretrial dispositive motions for all "core" claims; and (c) the Bankruptcy Court should provide the District Court with recommendations and proposed findings of fact and conclusions of law with respect to pretrial dispositive motions affecting "non-core" claims.

Bankruptcy Court. Specifically, Defendants contend that Counts I through V should be dismissed for failure to state a claim upon which relief can be granted because the business judgment rule insulates them from liability as a matter of law, *see* Dfs. Obj. Memo, at 4-17, and, in any event, ERISA preempts the claims, *see* Dfs. Obj. Memo, at 17-20. In rejecting both of these arguments, the Bankruptcy Court found that: (a) the business judgment rule is inapplicable where, as here, Defendants' alleged wrongdoing was plainly unlawful, *see* Recommendation, at 13-17; (b) even if the business judgment rule were applicable, the Complaint alleges facts sufficient to overcome the presumption, *see id.*, at 17-19; and (c) Plaintiff's claims have nothing to do with ERISA, *see id.*, at 19-26.

For the reasons set forth in the Bankruptcy Court's Recommendation, as well as the reasons detailed below, this Court should reject Defendants' arguments, adopt the Recommendation, and accordingly deny Defendants' Motion to dismiss with respect to Counts I through V.

## BACKGROUND FACTS

On February 5, 2002, Dehon, f/k/a Arthur D. Little, Inc., and certain of its subsidiaries filed voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Cmpt., at ¶ 26. Prior to that event, from June 1, 1999 to the Petition Date (the "Relevant Period"), each of the Defendants served as a member of Dehon's Board of Directors (the "Board"). Cmpt., at ¶ 31. Throughout the Relevant Period, current and former employees of Dehon held shares of Dehon's common stock in various stock plans and trusts (the "Stock Plans"). Cmpt., at ¶ 32. Also, for part of the Relevant Period, additional shares of Dehon's common stock were held by the Arthur D. Little, Inc. Memorial Drive Trust (the "MDT Trust"). Cmpt., at ¶ 32.

On July 20, 1999, recognizing Dehon's precarious financial state, the Board determined that payment of future dividends to Dehon's common stockholders would not be in the best interests of the company, and voted to suspend all such dividends, effective beginning in the second quarter of the 1999 calendar year (the "July 20, 1999 Decision"). Cmpt., at ¶ 38. Only days beforehand, the Board had adopted a stock-based compensation plan for a fellow director, Defendant Lorenzo Lamadrid. Cmpt., at ¶¶ 36-37. Mr. Lamadrid's compensation plan provided for cash distributions in five installments based upon semi-annual valuations of Dehon's common stock. Cmpt., at ¶¶ 36-37.

Notwithstanding its July 20, 1999 Decision, subsequent to that date, the Board continued to authorize and/or permit a series of distributions to Dehon's common stockholders, even though the company had become insolvent. First, under the terms of the Stock Plans, employees departing Dehon were entitled (or, under some plans, required) to "put" their shares of Dehon common stock to Dehon for repurchase. Cmpt., at ¶ 33. Also, employees of Dehon aged fifty-five and older who owned three times their base compensation in Dehon common stock were given the additional option of "putting" some of their stock to Dehon during the course of their employment. Cmpt., at ¶ 34. The Stock Plans empowered the Board to discontinue, change, or terminate the Stock Plans at any time. Cmpt., at ¶ 35. Yet, rather than discontinue or terminate the Stock Plans in the face of Dehon's insolvency, on September 17, 1999, the Board instead voted to amend the plans to *expand* the options of common stockholders to receive repurchase payments, authorizing stockholders to receive repurchase payments in either a lump sum or over five years. Cmpt., at ¶ 39. From September 1999 through 2001, Dehon made stock repurchase payments under the Stock Plans totaling $6,823,515.88. Cmpt., at ¶¶ 44-48.

Second, on October 15, 1999, the Board approved an exchange of 749,276 shares of Dehon's common stock held by the MDT Trust for an equivalent number of Dehon's newly issued Series A Non-voting Participating Preferred Stock (the "Series A Preferred"). Cmpt., at ¶¶ 40-41.  Under the terms of the Series A Preferred stock, Dehon was required to pay the MDT Trust, as the holder of the preferred stock, an annual dividend of 7.125%. Cmpt., at ¶ 40.  On May 1, 2000, even though Dehon was insolvent, Dehon paid to the MDT Trust a Series A Preferred stock dividend of $1,580,410.40.  Cmpt., at ¶ 46.

Finally, in May 2001, following Mr. Lamadrid's termination as Dehon's Chief Executive Officer, Dehon repurchased all of Mr. Lamadrid's shares of Dehon common stock received pursuant to his compensation plan.  Cmpt., at ¶¶ 56-57.  Approximately eight months later, Dehon filed for bankruptcy.  Cmpt., at ¶ 26.

## ARGUMENT

## I.  THE BUSINESS JUDGMENT RULE DOES NOT INSULATE DEFENDANTS FROM LIABILITY FOR THEIR WRONGDOING

As the Bankruptcy Court correctly concluded, *see* Recommendation, at 18-19, Plaintiff has stated viable Mass. Gen. Laws c. 156B, § 61 and breach of fiduciary duty claims against Defendants by alleging, *inter alia*, that Defendants authorized unlawful distributions at a time when Dehon was insolvent, *see* Cmpt., at ¶¶ 71-95.  Section 61 states in relevant part:

> If the corporation is insolvent or is rendered insolvent by the making of any [distribution . . . to one or more of its stockholders, whether by way of a dividend, repurchase or redemption of stock] . . . the directors who voted to authorize such distribution shall be jointly and severally liable to the corporation for the amount of such distribution made when the corporation is insolvent . . . .

Mass. Gen. Laws c. 156B, § 61.  Thus, to set forth a Section 61 claim, a plaintiff must allege only two elements: (a) the defendant directors authorized a distribution; and (b) the

company was insolvent or rendered insolvent as a result of the distribution. *See id.*; *Mi-Lor Corp. v. Gottsegen*, 233 B.R. 608, 619 (D. Mass. 1999) ("[Section 61] imposes liability, in favor of the corporation, upon directors who vote to authorize a stockholder distribution by the corporation if the corporation is, or is thereby rendered, insolvent or bankrupt."); *Ipswich Bituminous Concrete Prods., Inc. v. Robinson*, 79 B.R. 511, 518 (D. Mass. 1987) ("Since the Court has found that the Debtor was insolvent (or at least rendered insolvent by the distribution), the Court has no difficulty finding that [the defendant directors] are jointly and severally liable . . . pursuant to section 61.").

Here, the Complaint plainly satisfies these requirements. First, the Complaint alleges in detail a series of distributions to Dehon's equity stakeholders totaling $8,403,926.28 authorized by Defendants and effected during the period from September 1999 into 2001. *See* Cmpt., at ¶¶ 35-48. Second, the Complaint alleges that, when these distributions were made, the Company was either insolvent or rendered insolvent as a result of the distributions. *See* Cmpt., at ¶¶ 72, 77, 82, 87, 94.

In addition, the Complaint charges Defendants with breaching their fiduciary duties be engaging in this same conduct, *see* Cmpt., at ¶¶ 91-95, and alleges all of the elements of a breach of fiduciary duty claim, including that: (a) defendants owed fiduciary duties to Dehon, including its creditors, *see* Cmpt., at ¶¶ 92-93; (b) defendants breached those duties by authorizing the aforementioned distributions when they knew or should have known that the company was insolvent, *see* Cmpt., at ¶ 94; and (c) Dehon was harmed as a result, *see* Cmpt., at ¶ 95. *See Ward v. Costello*, 2002 WL 31973253, at *97 (Mass. Super. Dec. 17, 2002) ("A claim for breach of fiduciary duty has four elements: 1) existence of a fiduciary duty arising from a relationship between the parties, 2) breach of

that duty, 3) damages and 4) a causal relationship between the breach and the damages.").

As the Bankruptcy Court found:

> The facts as alleged [in the Complaint] support an inference that the Defendants failed to act with the requisite care by authorizing distributions without adequately investigating [Dehon's] financial affairs. Furthermore, if the Defendants were aware of [Dehon's] insolvency when they authorized the distributions, it is questionable whether such conduct would satisfy their fiduciary duty of due care in light of [Mass. Gen. Laws c. 156B, § 61].").

Recommendation, at 19.

Defendants cannot -- and do not -- contest that Plaintiff has met these basic pleading requirements. Instead, Defendants attempt to avoid the merits of this case through the side door. They contend that Counts I through V should be dismissed because, under the "business judgment rule," which they assert is embodied in Mass. Gen. Laws c. 156B, § 65, Plaintiff must do more to set forth viable Section 61 and breach of fiduciary duty claims.[3] Specifically, Defendants contend that Plaintiff bears the burden of alleging not only the elements of his claims, but also facts to rebut the business judgment rule's presumption that, in authorizing the distributions, Defendants acted in good faith, reasonably, and in the best interests of the Corporation, *even if the distributions were in fact unlawful. See* Dfs. Obj. Memo, at 6, 13-17. According to Defendants, because Plaintiff has not met this burden, his Section 61 and breach of fiduciary duty claims must be dismissed. *See id.* at 15-17.

For two independent reasons, Defendants' argument is meritless.

---

[3]     Section 65 states in relevant part: "A director, officer or incorporator of a corporation shall perform his duties as such . . . in good faith and in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. . . . The fact that a director, officer or incorporator so performed his duties shall be a complete defense to any claim asserted against him, whether under sections sixty to sixty-four, inclusive, or otherwise, except as expressly provided by statute, by reason of his being or having been a director, officer or incorporator of the corporation." Mass. Gen. Laws c. 156, § 65.

### A.    The Business Judgment Rule Is Inapplicable Where, As Here, The Challenged Conduct Was Plainly Unlawful

First, as the Bankruptcy Court correctly determined, *see* Recommendation, at 17-18, Defendants' contention that they are entitled to the benefit of the business judgment rule in this context is simply wrong. The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Landy v. D'Alessandro*, 316 F. Supp.2d 49, 64 (D. Mass. 2004); *accord Harhen v. Brown*, 431 Mass. 838, 845 (2000) ("The business judgment rule affords protection to the business decisions of directors . . . because directors are presumed to act in the best interests of the corporation."). The rule applies to directors' discretionary decision-making. *See Landy*, 316 F. Supp.2d at 64; *Harhen*, 431 Mass. at 845. So long as the director is disinterested and reasonably informs himself concerning the subject matter of his decision, a court generally will not second-guess his "business judgment." *See id.*

By definition, the business judgment rule has no application to decision-making about which a director has *no* discretion because, in that context, there is no "business judgment" for the director to make. Said differently, if a business decision is patently unlawful, a director will not be allowed to avoid liability for it by relying upon a business judgment rule defense. *See Harhen*, 431 Mass. 838, 845 n.6 (2000) ("Of course, where the failure [of a board of directors] to pursue a claim in itself is an illegal act or results in the continuation of an illegal act, the business judgment rule does not apply."), *citing to Miller v. American Tel. & Tel. Co.*, 507 F.2d 759, 762 (3rd Cir. 1974) (reversing dismissal of breach of fiduciary duty claim, stating: "Where . . . the decision not to collect a debt owed the corporation is itself alleged to have been an illegal act . . . the business judgment rule

cannot insulate the defendant directors from liability.""); *accord Landy*, 316 F. Supp.2d at

65-66; *see also* R. Franklin Balotti, *The Delaware Law of Corporations and Business*

*Organizations*, at § 4.32 (2005) ("[A]n act that is patently frivolous or capricious or one

which no person of ordinary sound business judgment would believe to be rational would

be an abuse of discretion not protected by the business judgment rule." (internal

references omitted)).

For example, in *Miller v. American Tel. & Tel. Co.*, the stockholders of AT&T

brought a derivative action against the company's directors, alleging that the directors

breached their fiduciary duties by failing to recover a debt that the Democratic National

Committee owed AT&T for communication services that AT&T had provided to the

committee. 507 F.2d at 761. The District Court dismissed the action on grounds that the

business judgment rule insulated the directors from liability, ruling that the decision

whether to collect on the debt was properly within the directors' business discretion. *See*

*id.* The Third Circuit Court of Appeals reversed. *See id.* at 763. The Court of Appeals

held that 18 U.S.C. § 610, which prohibits corporations from making political

contributions, removed in this particular context any business discretion that the directors

otherwise had, concluding: "[W]e are convinced that the business judgment rule cannot

insulate the defendant directors from liability if they did in fact breach 18 U.S.C. § 610, as

plaintiffs have charged." *Id.* at 762; *see also Independent Bk. Corp. v. Spence*, 2003 WL

214784, at *5-6 (Mass. Super. Jan. 29, 2003) (rejecting defendants' business judgment rule

defense at motion to dismiss stage where defendant allegedly breached his fiduciary duties

by refusing to retire in violation of company's *mandatory* retirement policy).

Here, like the statute at issue in *Miller*, Section 61's proscription is mandatory: directors are prohibited from authorizing distributions when the corporation is insolvent or would be rendered insolvent as a result of the distribution. *See* Mass. Gen. Laws c. 156B, § 61 (stating that directors "*shall* be jointly and severally liable" (emphasis supplied)); *see generally Brigham v. M&J Corp.*, 352 Mass. 674, 681 (1967) ("The purpose of [Section 61] is to prevent distributions to stockholders . . . which would be prejudicial to creditors of a corporation."). Consequently, as the Bankruptcy Court correctly concluded, because Defendants' decision to authorize distributions in violation of that proscription would be plainly unlawful, Defendants are not entitled to a business judgment rule defense. *See* Recommendation, at 17 ("Under the facts presented in the [Complaint], however, the challenged distributions were *not* legitimate business decisions . . . since [Dehon's] insolvency renders such distributions unlawful under § 61. As the Massachusetts Supreme Judicial Court alluded to in *Harhen*, challenges to business decisions involving illegal actions do not implicate the business judgment rule.").

In their Objection, Defendants challenge the Bankruptcy Court's conclusion that Counts I through V do not implicate the business judgment rule by asserting that there actually was "nothing inherently wrong" with their authorization of distributions because "Plaintiff acknowledges that Defendants had the authority to continue to pay benefits [under the Stock Plans]." *See* Dfs. Obj. Memo, at 12. But this argument misses the mark. The question is *not* whether the terms of the Stock Plans afforded Defendants the discretion to make (or terminate) distributions. There is no dispute that the Stock Plans granted Defendants that authority. *See* Cmpt., at ¶ 35 ("The Stock Plans expressly authorized the Board of Directors of Dehon to discontinue, change or terminate the Stock

Plans at any time."). Instead, Defendants' liability in this case stems from the fact that, as of Dehon's insolvency, those distributions became *per se* unlawful under Mass. Gen. Laws c. 156B, § 61 and, accordingly, should have been immediately terminated. *See* Recommendation, at 17-19. Indeed, Defendants' failure to exercise their clear authority under the Stock Plans to terminate the distributions upon Dehon's insolvency is one of the bases of Plaintiff's claims.

Defendants also argue that the Bankruptcy Court got it wrong with respect to the business judgment rule's inapplicability to them because Mass. Gen. Laws c. 156B, § 65 'means what it says.' *See* Dfs. Obj. Memo, at 12. According to Defendants, because Section 65 expressly states that it encompasses "any claims," Defendants should be entitled to the benefit of the business judgment rule *even if* those claims allege that their conduct was plainly unlawful. *See* Dfs. Obj. Memo, at 12. This interpretation of Section 65, however, not only ignores established precedent that delineates the contours of the business judgment rule, *see, e.g., Harhen*, 431 Mass. at 845 n.6; *Miller*, 507 F.2d at 762; *Landy*, 316 F. Supp.2d at 65-66, it makes no sense. Taken to its extreme, under Defendants' view of Section 65, if a board of directors decided it was in the best interests of the corporation to kidnap its competitor's CEO, the directors would enjoy the business judgment rule's protections from liability for that decision even though such conduct is patently illegal. Suffice it to say, that is not law. [4]

---

[4]    Defendants go so far as to suggest that the District Court should adopt their interpretation of Section 65 even if it may be illogical. *See* Dfs. Obj. Memo, at 10 ("[E]ven assuming *arguendo* that the Bankruptcy Court's re-interpretation of the [sic] Section 65 was 'logical,' this purported logic does not entitle it to substitute its judgment for that of the Legislature."). Plainly, that suggestion should be rejected. *See United States v. O'Neil*, 11 F.3d 292, 296 (1st Cir. 1993) ("[S]tatutes should not be read to produce illogical results."); *accord Bennett v. Holyoke*, 362 F.3d 1, 11 (1st Cir. 2004).

Further, as the Bankruptcy Court recognized, Defendants' interpretation of Section 65 is not only illogical; worse, it would render Section 61's proscription against distributions at times of insolvency meaningless. *See* Recommendation, at 18 n.17. If a board of directors could authorize distributions knowing that the corporation is insolvent yet avoid liability merely by asserting that they believed the distributions were in the corporation's "best interests," Section 61 would have no practical force. *See id.* ("Indeed, were the Defendants' view of § 65 upheld, § 61 would be virtually negated."). That is not an outcome the Legislature could have intended.[5]

### B.    Even If Defendants Are Entitled To The Business Judgment Rule's Presumption, The Complaint's Allegations Rebut The Presumption

Second, the Bankruptcy Court correctly concluded that, even if Defendants' wrongful conduct were entitled to the benefit of the business judgment rule (which it is not), the Complaint includes allegations sufficient to overcome the presumption. *See* Recommendation, at 18-19. It is well-established that a plaintiff can rebut the business judgment rule's presumption that a board of directors has acted in good faith, reasonably, and in the best interests of the corporation by alleging facts: (a) showing that the directors "abdicated their functions, or absent conscious decision, failed to act," *Pereira v. Cogan*, 2001 WL 243537, at *14 (Bankr. S.D.N.Y. Mar. 8, 2001); (b) showing that the directors failed to inform themselves of all reasonably available material information prior to making the decision, *see In re Walt Disney*, 825 A.2d 275, 289-90 (Del. Ch. 2003); or (c)

---

[5]    *See Volin v. Board of Pub. Accountancy*, 422 Mass. 175, 179 (1996), *quoting Adamowicz v. Ipswich*, 395 Mass. 757, 760 (1985) ("We [will] not 'interpret a statute so as to render it or any portion of it meaningless or superfluous.'"); *Bynes v. School Committee of Boston*, 411 Mass. 264 (1991) ("It is [an] elementary rule of statutory construction that a statute should not be read in such a way as to render its terms meaningless or superfluous.")

"that create reasonable doubt that [the directors] acted without knowledge that the

transaction violated the law," *Landry*, 316 F. Supp.2d at 65.

Here, the Complaint's allegations plainly meet this test. As the Bankruptcy Court

aptly reasoned:

> Accepting as true [Plaintiff's] allegations that (1) [Dehon] was
> insolvent or near insolvency at the time of the challenged distributions
> and (2) the Board voted in July of 1999 to suspend distributions and
> then authorized various dividends and stock repurchases shortly
> thereafter, the complaint states a claim under § 61. Construed in the
> light more favorable to [Plaintiffs], these facts support an inference that
> the Defendants were aware of [Dehon's] insolvency or near-insolvency
> in July of 1999, but proceeded to pay shareholders in contravention of
> Massachusetts law and in abdication of their duties as articulated in §
> 65. Thus, Counts I-IV sufficiently state a claim for illegal distributions
> under [Section 61]. . . . For substantially the same reasons, Count V of
> the complaint also adequately states a claim against the Defendants for
> breach of their fiduciary duties.

Recommendation, at 18. In other words, such an inference of *knowing* malfeasance

reasonably inferred from the Complaint's allegations, including those allegations detailing

the more than $8 million in distributions to Dehon's equity stakeholders authorized by

Defendants (a) when the company was insolvent, *see* Cmpt., at ¶¶ 72, 77, 82, 87, 94, and

(b) *soon after* Defendants had voted to terminate dividends because they were aware of the

company's precarious financial state, *see* Cmpt., at ¶ 38, is more than sufficient to rebut the

business judgment rule presumption that Defendants were acting in good faith, reasonably,

and in the company's best interests. *See Landry*, 316 F. Supp.2d at 65; *Harhen*, 431 Mass.

at 847; *see also* James E. Tucker, *Director and Shareholder Liability for Massachusetts*

*Corporations' Distributions to Shareholders: A Suggestion for Change in Standards of*

*Director Liability*, 28 New Eng. L. Rev. 1025, 1062 (1994) ("A distribution creates liability

[under Section 61] if the directors know or should know that the corporation is insolvent.").

Having alleged facts sufficient to overcome the business judgment rule's presumption (assuming it applies, which it does not), and taking those allegations and the other allegations in the Complaint of Defendants' misconduct as true for purposes of this motion to dismiss, *see Brandt v. Hicks, Muse & Co.*, 195 B.R. 971, 977 (Bankr. D. Mass. 1996), Plaintiff has satisfied his obligation under Fed. R. Civ. P. 8(a) to set forth "a short and plain statement of the claim showing that [he] is entitled to relief." *Id.* Accordingly, Defendants' Motion to dismiss Counts I through V as insufficiently pled should be denied, and any remaining argument that Defendants may have that they are insulated from liability for their wrongdoing by the business judgment rule must await fact-finding. *See, e.g., Independent Bank Corp.*, 2003 WL 214784, at *6 (denying defendant's motion to dismiss on business judgment rule grounds, stating: "Whether [defendant] acted in good faith and in a manner reasonably believed to be in the best interest of the corporation are questions of fact which require discovery and cannot be decided on a Rule 12(b)(6) motion.").

## II.    ERISA DOES NOT PREEMPT PLAINTIFF'S CLAIMS

Defendants next argue that Counts I through V should be dismissed because they are preempted by ERISA. *See* Dfs. Obj. Memo, at 17-20. Defendants advanced this same argument in the Bankruptcy Court, and the Bankruptcy Court correctly rejected it. *See* Recommendation, at 19-26. Plaintiff's claims have nothing to do with ERISA.

Applying the analytical framework articulated in *Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136 (1st Cir. 2000), the Bankruptcy Court concluded that ERISA does not preempt Counts I through V because those counts neither

have an impermissible "connection with" an ERISA plan nor impermissibly "refer to" such a plan. *See* Recommendation, at 20-26. That conclusion was correct and should be adopted. Indeed, Defendants' groundless assertion that ERISA somehow preempts Plaintiff's claims is nothing but a red herring.

As the First Circuit explained in *Carpenters Local Union No. 26*, the "starting presumption [in resolving questions of ERISA preemption is] that Congress does not intend to supplant state law," *Carpenters Local Union No. 26.*, 215 F.3d at 139, *quoting New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995), and that, "unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states," *Carpenters Local Union No. 26*, 215 F.3d at 139-40. To overcome this presumption, the defendant must show that the state law "relate[s] to" an ERISA qualified plan. 29 U.S.C. § 1144(a); *Carpenters Local Union No. 26*, 215 F.3d at 140. The Supreme Court has held that "[a] law relate[s] to a covered employee benefit plan for purposes of [ERISA preemption] if it (1) has a connection with or (2) a reference to such a plan." *California Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324 (1997).

### A.   Counts I Through V Do Not Have An Impermissible "Connection With" Any ERISA Plan

To determine whether a state law has an impermissible "connection with" an ERISA Plan, a court must "abandon[] strict textualism in favor of a more nuanced approach," *Carpenters Local Union No. 26*, 215 F.3d at 140, and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive [ERISA's enactment]," *New York State Conf. of Blue Cross & Blue Shield Plans*, 514 U.S. at 656.

In *Carpenters Local Union No. 26*, the First Circuit identified those objectives as follows:

> When Congress conceived the ERISA scheme, it made manifest its intention to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies.' Achieving this end requires the avoidance of a 'multiplicity of regulation' and, concomitantly, the creation of a climate that 'permit[s] the nationally uniform administration of employee benefit plans.'

215 F.3d at 140 (internal citations omitted). Applying that "template," the First Circuit concluded that the Massachusetts bond statute, Mass. Gen. Laws c. 149, § 29, which requires, *inter alia*, the general contractor on a public works project to post a bond covering employee benefits, did not have an impermissible "connection with" any ERISA plan because enforcement of the bond statute's provisions would not inhibit the accomplishment of ERISA's overall goals. *See Carpenters Local Union No. 26*, 215 F.3d at 140-41. In reaching that conclusion, the Court noted that the statute did not "interfere with the administration of [qualified ERISA plans], purport to regulate plan benefits, or impose additional reporting requirements" on such plans. *See id.* at 141. Further, the Court observed that the bond statute regulates an area of the law traditionally thought to be "in the state's preserve," namely, the enforcement of contracts. *See id.*

Here, as the Bankruptcy Court found, *see* Recommendation, at 20-23, a similar rationale leads to the conclusion that Counts I through V likewise are not preempted. For one, Defendants contention notwithstanding, *see* Dfs. Obj. Memo, at 18 ("There is no dispute that the Plans are qualified under ERISA"), only *two* of the thirty-two Stock Plans identified in the Complaint are ERISA qualified plans, namely, the Arthur D. Little Inc. Employees' MDT Retirement Plan (the "MDT Plan") and the Arthur D. Little, Inc.

Employee Stock Ownership Plan (the "ESOP").  Consequently, ERISA preemption is

irrelevant with respect to the majority of Stock Plans at issue.

Further, even with respect to the MDT Plan and the ESOP, Counts I through V

implicate none of the impermissible effects identified in *Carpenters Local Union No. 26*.

The claims challenge neither the administration of the MDT Plan or the ESOP, nor purport

to regulate those plans in any way.  *See id.* at 141.  Instead, Counts I through V implicate

Defendants' decision-making in their capacity as *directors* to make certain distributions to

the Stock Plans, not as *fiduciaries* of those plans to administer and manage the plans.  As

such, the claims "relate solely to *corporate* management decisions wholly removed from

the ERISA Plan beneficiaries, administrators and managers."  *See* Recommendation, at 22

(emphasis supplied); *see also Sommers Drug Stores Co. Employee Profit Sharing Trust v.

Corrigan Enters., Inc.*, 793 F.2d 1456, 1468 (5th Cir. 1986) (finding that breach of fiduciary

duty claim not preempted by ERISA, stating: "[T]he state law [of fiduciary obligations]

does not affect relations between the ERISA fiduciary and the plan or plan beneficiaries as

such; it affects them in their separate capacities as corporate director and shareholder.").

In addition, the claims derive from an area of law traditionally regulated by the

states, namely, internal corporate management.  *See Burks v. Lasker*, 441 U.S. 471 (1979)

(stating that corporations are created and governed by state law); *see also Akers v. Palmer*,

71 F.3d 226, 229 (6th Cir. 1995) ("ERISA is designed to accomplish many worthwhile

objectives, but the regulation of purely corporate behavior is not one of them."); *Grindstaff

v. Green*, 133 F.3d 416, 423-24 (6th Cir. 1998) ("ERISA does not prohibit an employer

from acting in accordance with his interests as an employer when not administering the

plan or investing the assets.").

For all these reasons, the Bankruptcy Court correctly concluded that Counts I through V do not run afoul of the "connection with" prong of the preemption test.

**B.    Counts I Through V Do Not Impermissibly "Refer To" Any ERISA Plan**

A state law impermissibly "refer[s] to" an ERISA Plan when it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." *Carpenters Local Union No. 26*, 215 F.3d at 143, *quoting California Div. of Labor Standards Enforcement*, 519 U.S. at 325.

As the Bankruptcy Court correctly concluded, Plaintiff's breach of fiduciary duty and Mass. Gen. Laws c. 156B, § 61 claims plainly do not run afoul of this test.  In *Carpenters Local Union No. 26*, the defendant surety argued that ERISA preempted the plaintiff's claims to recover under a bond for, among other payments, contributions to certain ERISA qualified plans, arguing, *inter alia*, that the claims impermissibly "refere[d] to" the ERISA plans.  215 F.3d at 139-40.  The First Circuit disagreed, stating that "state laws of general application are safe from ERISA preemption even if they impose some incidental burdens on the administration of covered plans." *Id.* at 144.

Likewise, Massachusetts fiduciary duty laws and Mass. Gen Laws c. 156B, § 61 neither act "immediately and exclusively upon ERISA Plans" nor is the existence of ERISA plans "essential" to their operation.  Instead, as the Bankruptcy Court found, *see* Recommendation, at 25, these laws constitute laws of "general application" that do not impermissibly "refer to" any ERISA plans. *Carpenters Local Union No. 26*, 215 F.3d at 144.  Accordingly, Counts I through V, which are asserted under these laws, are not preempted by ERISA as a result of any impermissible "reference to" an ERISA plan. *See* Recommendation, at 26 ("Consideration of Counts I-V under [the *Carpenters Local*

*Union No. 26*] analysis leads to the conclusion that there is no 'reference to' the ERISA

Plans for the purposes of ERISA preemption.").[6]

## CONCLUSION

For the foregoing reasons, this Court should adopt the "Proposed Findings of Fact

and Conclusions of Law," dated October 5, 2005, of the Bankruptcy Court (Boroff, J.),

reject Defendants' Objection, and accordingly deny Defendants' Motion to Dismiss Counts

I through V of the Complaint.

/s/ Douglas B. Rosner
Julie A. Frohlich (BBO # 554707)
Douglas B. Rosner (BBO # 559963)
L. Jason Law (BBO # 645942)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110
Tel  617/ 482-1776
Fax  617/ 574-4112

Date:  December 28, 2005

---

[6]     Notably, contrary to Defendants' assertion, *see* Dfs. Obj. Memo, at 19, this conclusion would not "undermine ERISA's mandate that directors' decisions . . . be made in the interests of plan beneficiaries," *id.*, or in any other way conflict with ERISA's framework. As the Bankruptcy Court stated: "ERISA focuses upon the management and administration of ERISA plans, imposes fiduciary duties on plan administrators and creates standards to protect plan beneficiaries from mismanagement. But under ERISA, employers have no obligation to create an ERISA plan for their employees, and corporate management decisions regarding the creation, design, *amendment or termination of ERISA plans do not fall within ERISA's reach*." Recommendation, at 21 (emphasis supplied and internal references omitted). Nothing in ERISA compelled Defendants to continue to authorize distributions to the plans. Conversely, upon Dehon's insolvency, Mass. Gen. Laws c. 156, § 61 *mandated* that those distributions be terminated.

## SERVICE LIST

*Stephen S. Gray, As Plan Administrator of Dehon, Inc. v. Barnett, et al.,*
Adversary Proceeding No. 04-04287

Charles Bennett, Esq.
Hanify & King, PC
One Beacon Street
Boston, MA  02108
**Attorney for Brian Barnett and Berhard Metzger**

Jeffrey B. Rudman, Esq.
Mark D. Selwyn, Esq.
60 State Street
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
Boston, MA  02109
**Attorney for R. Schorr Berman, John W. Brown,**
**Jerome H. Grossman, M.D., Pamela W. McNamara,**
**Arno A. Penzias and Gerhard Schulmeyer**

Robert E. Sullivan, Esq.
Sandra Sue McQuay, Esq.
Sullivan, Weinstein & McQuay
Two Park Plaza
Boston, MA  02116
**Attorney for Jill K. Conway and Paul E. Gray**

Russell Conn, Esq.
Conn, Kavanaugh, Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, MA  02109
**Attorney for Michael Hawley**

Pamela Holleman, Esq.
Pat Dinardo, Esq.
Sullivan & Worcester
One Post Office Square
Boston, MA  02109
**Attorneys for Ashok S. Kalelkar and Charles R. LaMantia**

Judith Karp, Esq.
Kirkpatrick & Lockhart, LLP
1800 Massachusetts Avenue NW
Washington, D.C.  20036
**Attorney for Lorenzo Lamadrid**

Richard J. Granh, Esq.
Melvin S. Hoffman, Esq.
Adam J. Ruttenberg, Esq.
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110
**Attorney for Ashok S. Kalelkar**