UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| STEPHEN S. GRAY, | ) | |
| as Plan Administrator of | ) | |
| DEHON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-40056-JLT |
| | ) | |
| BRIAN BARNETT, R. SCHORR | ) | ORAL ARGUMENT REQUESTED |
| BERMAN, JOHN W. BROWN, JILL K. | ) | |
| CONWAY, PAUL E. GRAY, JEROME H. | ) | |
| GROSSMAN, M.D., MICHAEL | ) | |
| HAWLEY, THOMAS JOBSKY, | ) | |
| ASHOK S. KALELKAR, MARGARET G. | ) | |
| KERR, LORENZO LAMADRID, | ) | |
| CHARLES R. LAMANTIA, PAMELA W. | ) | |
| MCNAMARA, BERHARD METZGER, | ) | |
| ARNO A. PENZIAS, JAVIER | ) | |
| ROTLLANT, CLAIR RUSKIN, STUART | ) | |
| SAINT, GERHARD SCHULMEYER, | ) | |
| PETER WOOD, and | ) | |
| WOLFGANG ZILLESSEN, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**DEFENDANTS R. SCHORR BERMAN, JOHN W. BROWN, JEROME H. GROSSMAN, M.D., MARGARET G. KERR, PAMELA W. MCNAMARA, ARNO A. PENZIAS, JAVIER ROTLLANT, AND GERHARD SCHULMEYER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR OBJECTION TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Jeffrey B. Rudman (BBO #433380)
Mark D. Selwyn (BBO #565595)
Jonathan A. Shapiro (BBO #567838)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: January 17, 2006

## <u>TABLE OF CONTENTS</u>

ARGUMENT .................................................................................................................. 1

I.    The Massachusetts Business Judgment Rule Requires Dismissal. ..................................... 1

    A.    The Bankruptcy Court's Purported Distinction Between "Direct" And
         "Derivative" Lawsuits Has No Basis In Massachusetts Law.      1

    B.    Plaintiff Cannot Avoid The Business Judgment Rule And The "Complete Defense
         Under § 65 With An "Illegality" Theory (And An Old New York Case) That
         Lacks Foundation In Massachusetts Law.      3

        1.    There Is No "Established Precedent" In Massachusetts To Ignore § 65
            Under An "Illegality" Exception. ............................................................... 4

        2.    The Court Cannot Sustain The Complaint Based On The *Miller* Decision
            Under New York Law. ............................................................................... 8

    C.    The Plain And Unambiguous Terms Of § 65 Cannot Be Replaced By Plaintiff's
         Policy Arguments About What Would Be More "Logical" Or His Speculation
         About What Was "Intended" By The Legislature.      11

    D.    This Federal  Court Should Not Re-Interpret a State Statute, But Has The Option
         To Certify Such Questions To The Supreme Judicial Court.      14

    E.    Plaintiffs' Protestation That The Complaint Is Adequate Is Belied By The Plainly
         Inadequate Text Of The Complaint Itself.      16

        1.    Plaintiff Does Not Address The Pleading Requirements. ......................... 16

        2.    Paragraph 38 Does Not Rebut The Presumption. ..................................... 16

        3.    The Cases Plaintiff Cites Undermine His Position ................................... 17

II.   Nothing In Plaintiff's Brief Saves The Complaint From Preclusion By ERISA. ............. 18

Defendants[1] respectfully submit this Reply Brief in further support of their Motion to Dismiss Counts I–V of the Complaint and their objection to the Bankruptcy Court's Recommendation ("Rec.") that the motion be denied.

## ARGUMENT

A Motion to Dismiss under the Business Judgment Rule, Mass. Gen. L. ch. 156B, § 65, is not, as Plaintiff contends, a "meritless" exercise, nor an improper attempt to "avoid the merits" by sliding out the "side door."  Pl. Op. at 6.  The Business Judgment Rule presumption is a substantive rule of law -- it is a *statutory presumption that entitles Defendants to a "complete defense"* to the claims pending against them.  Mass. Gen. L. ch. 156B, § 65.  That means the Complaint must be dismissed *unless* it contains a pleaded basis to overcome the "complete defense" presumption.  *Id.*; Def. Obj. at 13–15.  The Motion before the Court for *de novo* review is, therefore, absolutely on the "merits." As a matter of law Plaintiff cannot go forward with this case unless he can survive the threshold "front door" scrutiny under the Business Judgment Rule.

## I.    THE MASSACHUSETTS BUSINESS JUDGMENT RULE REQUIRES DISMISSAL.

### A.    The Bankruptcy Court's Purported Distinction Between "Direct" And "Derivative" Lawsuits Has No Basis In Massachusetts Law.

The Bankruptcy Court's recommendation that the Complaint be sustained rests on the clearly erroneous legal conclusion that relevant Massachusetts precedents construing the Business Judgment Rule somehow do not apply (are "largely inapposite") to *this* Business Judgment Rule case.  Rec. at 15–16.  Specifically, the Bankruptcy Court rejected Defendants'

---

[1]      The defined terms and abbreviations herein are the same as those in Defendants' opening brief.  *See* Memorandum of Defendants R. Schorr Berman, *et al.* In Support Of Their Objection To The Bankruptcy Court's Proposed Findings Of Fact And Conclusions Of Law (Nov. 28, 2005) ("Opening Brief" or "Def. Obj.").  *See also* The Plan Administrator's Memorandum Of Law In Response To Defendants' Objection To The Bankruptcy Court's Proposed Findings Of Fact And Conclusions Of Law (Dec. 28, 2005) ("Pl. Op.")

arguments based on the Supreme Judicial Court's decisions in *Harhen* and *Houle*, the Superior

Court in *Seidman*, and other authority, on the unsustainable ground that decisions dismissing

"derivative" complaints carry little and/or no weight on a Motion to Dismiss this "direct"

Complaint. *Id.*[2]  For the reasons stated in Defendant's opening brief, however, there is no basis

whatsoever in Massachusetts law -- neither in the statute nor in any reported state court decision

-- to conclude that the Business Judgment Rule presumption is a "complete defense" is in any

way less robust in a "direct" case.  Def. Obj. at 7–8; *see also* Mov. Br. at 3–7.

    Significantly, Plaintiff does not even attempt to justify the direct/derivative distinction

that was the threshold legal conclusion upon which Judge Boroff recommended that the Motion

to Dismiss be denied.[3]  Instead, Plaintiff now refers to the SJC's decision in *Harhen* and other

authority -- the very cases upon which Defendants rely but that the Bankruptcy Court incorrectly

found "largely inapposite" -- as the "established precedent" for this Motion.  Pl. Op. at 10.

Those cases dismissed complaints and require dismissal of this one.  *See* Def. Obj. at 4–6.

    The Bankruptcy Court's legally incorrect direct/derivative distinction *alone* requires

rejection of the Recommendation.  By brushing aside key precedent as "largely inapposite," the

Bankruptcy Court did not scrutinize the Complaint under the correct legal standard set forth in

those precedents, which dismissed complaints for the same reasons Defendants argue here.  *See*

---

[2]    Defendants also rely on the *Seidman* case, which was *not* a derivative action, *Seidman v. Central Bancorp, Inc.*, 2003 WL 21528509, at *8–9 (Mass. Super. Ct. June 30, 2003), and also requires dismissal.  Defendants cited other authority including *Harhen v. Brown*, 431 Mass. 838, 845 (2000); *Houle v. Low*, 407 Mass. 810 (1990); *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 433 (1937); *Bartlett v. New York, New Haven & Hartford R.R.*, 221 Mass. 530 (1915).

[3]    Plaintiff's failure even to address the purported "direct/derivative" distinction is conspicuous because *(i)* it was one of his leading arguments before the Bankruptcy Court, *see* Pl. Op. at 6–7; and *(ii)* in some sense his striking silence on a legal question so central to the Motion to Dismiss is a concession of the error below.  *See, e.g., United States v. DiBiase Salem Realty Trust*, 1993 WL 729662, at *5 n.6 (D. Mass. Nov 19, 1993) ("[Plaintiff] has argued th[e] point extensively, while [defendant] does not respond to it in his opposition brief.   The Court therefore considers the point conceded . . . .").

Def. Obj. at 4–6.  The reversible nature of the error is confirmed by the Bankruptcy Court's own observation that the precedents it found "inapposite" in fact do "support Defendants' argument." *See* Rec. at 15.

Defendants submit that this Court on its *de novo* review should apply the correct legal standard and dismiss the Complaint.  *See, e.g.*, *Mangual v. Rotger-Sabat*, 317 F.3d 45, 68 (1st Cir. 2003) (remand not useful to resolve issues where no discovery is required); *see also* Part I.E, *infra*.  At a minimum, this Court should remand the matter to the Bankruptcy Court to be considered under the correct standard.  *See, e.g.*, *In re PolyMedica Corp. Sec.*, – F.3d –, No. 05-1220, 2005 WL 3384083, at *15 (1st Cir. Dec. 13, 2005) (vacating court decision where court below applied incorrect legal standard and remanding to apply the correct standard); *Air Line Pilots Ass'n, Intern. v. Guilford Transp. Industries, Inc.*, 399 F.3d 89, 92 (1st Cir. 2005) (same).

### B. Plaintiff Cannot Avoid The Business Judgment Rule And The "Complete Defense Under § 65 With An "Illegality" Theory (And An Old New York Case) That Lacks Foundation In Massachusetts Law.

Plaintiff contends that the Business Judgment Rule presumption "by definition" is "inapplicable" in this case because Plaintiff alleges that Defendants' decisions were "patently unlawful" under § 61.  *See* Pl. Op. at 7.  This "illegality" theory is nonsense because "by definition" -- *i.e.*, by statute -- the Business Judgment Rule *does apply*.  Section 65 states explicitly that the Business Judgment Rule presumption ***"shall be a complete defense"*** to Plaintiff's § 61 claim and "any other" claim against Defendants for "unlawful" business decisions.  Mass. Gen. L. ch. 156B, § 65; Def. Obj. at 9–11.

The analysis should end right there.  Section 65 is clear and unambiguous, and because Massachusetts Courts refuse to carve out categorical exceptions to § 65 -- for "illegality" or any other reasons -- in the absence of statutory language upon which to do so.  *See* Part I.C *infra*; Def. Obj. at 7–8*; see also* Mass. Gen. L. ch. 156B, § 65.  Plaintiff, however, never addresses the

3

controlling statute (burying most of it in a footnote), nor the other reasons and cases why it was legal error for the Bankruptcy Court to recommend denial of the Motion to Dismiss on this basis. *Compare* Def. Obj. at 11–13, *with* Pl. Op. at 7–11.  Instead, Plaintiff's argument is superficial, resting on citations to a few Massachusetts cases that actually go *against* Plaintiff, a misconstruction of a 30-year-old New York case, and out-of-context sound bite from a Delaware law hornbook.[4]

### 1.     There Is No "Established Precedent" In Massachusetts To Ignore § 65 Under An "Illegality" Exception.

Plaintiff says that "established precedent" removes the Business Judgment Rule presumption from this case, but *does not cite a single decision* of any Massachusetts court that actually invoked such an "illegality" exception to § 65.  *See* Pl. Op. at 10.  Nor has Plaintiff cited any Massachusetts decision that in any respect diluted or changed Business Judgment Rule scrutiny of his claim under § 61 -- or of any other claim in his Complaint.[5]  *See id.*  To Defendants' knowledge, adoption of the Bankruptcy Court recommended ruling on this point would make this Court the <u>first</u> to do so.  (As argued in Part I.D *infra*, this federal Court may wish to abstain from novel interpretation of a state statute that heretofore the state courts have applied according to its plain terms, and to allow such state law questions to be addressed by state courts.)

In reality, what Plaintiff calls "established precedent" on this point is a two-sentence, *dicta* footnote in *Harhen* that he claims "allude[s]," Pl. Op. at 9, to the illegality exception he

---

[4]     Although the illegality doctrine is the main point Plaintiff advocates to this Court, he never raised this argument in any of his papers before the Bankruptcy Court.  He relied there on other arguments (including that the Court is not even permitted to consider § 65 on this Motion), now seemingly abandoned.  *See* note 3, *supra*.

[5]     In fact, most of the Massachusetts cases that Plaintiff cites in opposition to this Motion under the Business Judgment Rule have nothing whatsoever to do with the Business Judgment Rule.  *See* Pl. Op. at 5–6 (citing *MiLor Corp. v. Gottsegen*, 233 B.R. 608, 610 (D. Mass. 1999; *Ipswitch Bituminous Concrete Prods., Inc. v. Robinson*, 79 B.R. 511, 518 (D. Mass. 1987); *Ward v. Costello*, 2002 WL 31973253 (Mass. Super. Dec. 17, 2002)).

asks this Court to adopt. *Harhen*, 431 Mass. at 845 n.7.[6]  Plaintiff wretches the footnote out of

context of the *Harhen* holding -- that case, of course, goes against Plaintiff's argument that the

Business Judgment Rule presumption does not apply because in *Harhen* the SJC dismissed a

complaint where, as here, it did not plead a basis to overcome the presumption. *Id.* at 839.[7]

Plaintiff also omits to mention that in *Harhen*, the SJC *reversed* the Appeals Court's decision

that apparently relied to at least some extent on the same "illegality" theory (supported by the

same Third Circuit decision in *Miller*) that Plaintiff urges here. *See Harhen v. Brown*, 710 N.E.

2d 224, 236–37 (Mass. App. 1999), *reversed by* 431 Mass. 838 (2000).  Reversing that decision,

the SJC ruled that the Business Judgment Rule presumption applied and required that the

complaint must be dismissed despite plaintiffs' allegations of "illegality" that, *inter alia*,

included John Hancock's public acknowledgment that it violated a Massachusetts Statute when

officials authorized illegal gratuities to politicians. *Harhen*, 431 Mass. at 840–41 (describing

admitted violations of Mass. Gen. L. ch. 26A, § 3).[8]  So all the SJC did in the *Harhen* footnote

was contrast the alleged misconduct that it concluded was covered by the Business Judgment

Rule presumption in *Harhen* from a fundamentally different kind of case where the Business

Judgment Rule would not apply because the challenged conduct was intrinsically "illegal" in the

sense that it could never be lawful. *Harhen*, 431 Mass. at 845 n.7.

       Simply put, the dictum in the *Harhen* footnote cannot support Plaintiff's proposition that

---

[6]     The footnote reads in its entirety: "Of course, where the failure to pursue a claim in itself is an illegal act or results in the continuation of an illegal act, the business judgment rule does not apply. *See Miller v. American Tel. & Tel. Co.*, 507 F.2d 759, 762 (3d Cir.1974).  There is no such allegation in this case." *Harhen v. Brown*, 431 Mass. 838, 845 n.7 (2000).

[7]     *See generally Wood v. General Motors Corp.*, 865 F.2d 395, 411 n.19 (1st Cir. 1988) (court cannot base holing on "partial sentence in a footnote" taken out of context).

[8]     The intermediate Appeals Court decision sustaining the Complaint -- incorrectly, according to the Supreme Judicial Court -- relied heavily on illegality, and cited *Miller*. *Harhen v. Brown*, 46 Mass. App. Ct. 793, 710 N.E.2d 224 (1999)**.** The irrelevance of *Miller* is discusses in Part I.B.2, *infra*.

the Business Judgment Rule presumption under § 65 does not operate in any case alleging "unlawful conduct." Pl. Op. at 7–8. The "illegality" allegations were no barrier to the normal application of the Business Judgment Rule in *Harhen*, and if anything were more substantial than those here, insofar as at least some involved an admitted statutory violation for which defendant paid more than a million dollar fine to resolve. *See Harhen*, 431 Mass. at 798–99. The legal question as to the application of the Business Judgment Rule statute arguably is more straightforward in this case, because here Plaintiff alleges that the business decisions were "unlawful" under § 61 -- which is one of the five sections expressly identified in § 65 as subject to Business Judgment Rule. Mass. Gen. L. ch. 156B, § 65.

Plaintiff also should never have cited the Court's decision in *Landy v. D'Alessandro*, 316 F. Supp. 2d 49 (D. Mass. 2004). Just like *Harhen, Landy* dismissed a claim under the Business Judgment Rule because plaintiffs never pleaded any basis to rebut the presumption. *Landy,* 316 F. Supp. 2d at 70. *Landy* certainly does not support Plaintiff's argument because Judge Keeton ***rejected the same "illegality" theory as a "false premise.*" *Compare* Pl. Op. at 7, *with Landy,* 316 F. Supp. 2d at 64–65. Specifically, the *Landy* plaintiffs also argued that the Business Judgment Rule presumption "cannot insulate" defendants who allegedly "violated Massachusetts law" by authorizing distributions of cash and stock options contrary to statute (which is roughly analogous to the "unlawful" dividends and distributions alleged here), and also allegedly misrepresented matters in proxy material filed pursuant to the federal securities laws (which would suggest "illegality" of a magnitude not alleged in this case). *Compare Landy*, 316 F. Supp. 2d at 64, *with* Pl. Op. at 7 (also arguing that Defendants "cannot avoid liability" under Business Judgment Rule because they allegedly engaged in "unlawful" conduct by authorizing payments of corporate money).

6

This Court rejected the illegality argument, because the distributions that defendants allegedly authorized were not inherently improper -- after all, there is nothing *per se* wrong about issuing stock options, just as there is nothing *per se* wrong about paying benefits to retirees. *Landy*, 316 F. Supp. 2d at 67–68. The types of corporate distributions at issue in both *Landy* and here under most circumstances would be absolutely lawful (in the sense of being a very normal exercise of business judgment) even though under other circumstances they could be deemed "unlawful" (in the sense of giving rise to civil liability under Massachusetts law). But where, as here, the challenged conduct could fit in either category, the presence of an allegation that the conduct should fall in to the "unlawful" category does nothing to dilute -- much less render "inapplicable" -- the Business Judgment Rule presumption:

> Plaintiff's argument relies, however, on a false premise. The business judgment rule *can* insulate unlawful conduct. . . . . One can reasonably conceive of numerous situations in which directors might act on an informed basis, in good faith and in the honest belief that an action taken is in the best interests of the company and yet approve a transaction that, in the end, proves to be unlawful.

*Landy,* 316 F. Supp. 2d at 64–65 (emphasis added). For this reason, this Court dismissed the majority of the claims asserted in *Landy* under the Business Judgment Rule.[9]

*Independent Bank Corp. v. Spence*, 2003 WL 214784 (Mass. Super. Jan. 29, 2003), which Plaintiff also cites, is not to the contrary. The plaintiff in *Independent Bank Corp.* overcame the Business Judgment Rule by alleging that the defendant director was interested,

---

[9]    If anything, *Landy* also illustrates what this Plaintiff needed to plead -- but did not -- to overcome the Business Judgment Rule presumption. Judge Keeton sustained a handful of claims for which plaintiffs provided a pleaded basis to overcome the presumption by alleging *facts* to show that the defendants were "interested" in the "self-dealing" transactions that were the basis for those claims. *Landy,* 316 F. Supp. 2d at 71–72 (sustaining claims against defendants who allegedly paid themselves more than over $100,000 each). In this case, however, Plaintiff has not and could not allege that Defendants were "interested" -- because they were *independent outside directors who are not alleged to have received any personal benefit from the challenged transactions, i.e.,* authorization of payments to *other*s pursuant to long-established retirement plans. Def. Obj. at 15–17.

which contrasts strongly to this Complaint where no such allegation has been made. *Compare* 2003 WL 214784, at \*5–6, *with* Part I.E, *infra* (demonstrating no allegations of interestedness). *Independent Bank* involved allegations that a director refused to leave the board even in the face of a mandatory retirement policy. *Id.* at \*5–6. A board member's personal refusal to leave the board can hardly be characterized a "business judgment" on behalf of company, and the wrongful refusal to give up a board seat is *ultra vires* conduct that could *never* be lawful. By contrast, the Complaint here contains no allegations of *ultra vires* actions by any Defendant; as Plaintiff concedes, exercising discretion as to whether to pay retirees was part of Defendants' job. Pl. Op. at 9.

There is a reason that Plaintiff cites no case holding that the Massachusetts Business Judgment Rule in § 65 is "inapplicable" whenever a plaintiff says a defendant did something "unlawful" (or "patently unlawful"). If that were true, the Business Judgment Rule would always be "inapplicable" -- because presumably every lawsuit against a corporate director alleges that he or she did something that the plaintiff contends was "unlawful." Plaintiff's theory that allegations of illegality "by definition" extinguish the Business Judgment Rule presumption also collapses under Massachusetts courts' repeated dismissal of "unlawful conduct" cases for this very reason. *See, e.g., Harhen*, 431 Mass. at 840–41; *Landy*, 316 F. Supp. 2d at 53–54; *Seidman*, 2003 WL 21528509, at \*9–10.

### 2. The Court Cannot Sustain The Complaint Based On The *Miller* Decision Under New York Law.

Plaintiff misrepresents the Third Circuit's 1974 opinion in *Miller v. American Tel. & Tel. Co.*, 507 F.2d 759 (3d Cir. 1974), upon which he most heavily relies for the "illegality" argument and, in fact, appears to be the only case that he cites for this point that actually denied a motion to dismiss. Pl. Op. at 8–9. There is simply no reasonable reading of *Miller* that would justify

denial of this Motion to Dismiss.[10]

For starters, Plaintiff should not have held out *Miller* as authority for any "interpretation of § 65" -- and certainly not as among the "established precedent" -- without at least acknowledging somewhere in his extended discussion (pages 8–10) that *Miller says nothing about § 65 or any other aspect of Massachusetts law.  See* Pl. Op. at 8–10.  The Third Circuit began by ruling that the "pertinent law" was that of New York (the state of AT&T's incorporation), and was equally clear that the motion was decided following an extensive discussion of New York precedent dating back to 1909.  *Miller*, 507 F.2d at 761–63 (citing *Roth v. Robertson*, 64 Misc. 343, 118 N.Y.S. 351 (Sup. Ct. 1909)).[11]  To defendants' knowledge the *only* Massachusetts case that appears to have relied on *Miller* when sustaining a complaint was the Appeals Court decision that was *reversed by the SJC* in *Harhen.  See Harhen*, 431 Mass. 838 (2000) (reversing *Harhen v. Brown*, 710 N.E. 2d 224 (Mass. Ct. App. 1999)).

This was a major oversight.  As set forth in *Seidman* (also missing from plaintiff's brief), the plain language of § 65 that it "shall be a complete defense" to claims (including those under § 61) cannot be altered by decisions from other jurisdictions, such as New York.  *Seidman*, 2003 WL 21528509, at *9.  Nor does *Miller* even have persuasive value.  There is no basis to assume that the 1909 New York precedent considered by the Third Circuit in 1974 was then (much less is now) relevant to the application of a Massachusetts statute that was enacted in 1964 -- fifty-five years after the New York case and ten years before the Third Circuit case.  *See* 1964 Mass. Acts, ch. 723, § 1, *amended by* 1980 Mass. Acts ch. 265, § 1.  To the contrary, it is immediately

---

[10]    It bears noting that the Bankruptcy Court did not base its recommended ruling on *Miller*, and in fact only cited it in a parenthetical acknowledging the cite in the *Harhen* footnote.  Rec. at 17.

[11]    Defendants pointed out in their Opening Brief that *Miller* was *not* decided under Massachusetts law (but stated incorrectly that it was a Delaware case).

apparent that *Miller* was grounded in New York's "public policy," and also based on precedent that the misconduct at issue (corporate political donations) was an "*ultra vires* act in New York" and therefore not even a business decision. *Miller*, 507 F.2d at 763 n.4.

Finally, Plaintiff's suggestion that § 61 is "like the statute at issue in *Miller*" or that the cases are in any other respect similar, Pl. Op. at 9, is a distortion of the Third Circuit's plainly narrow holding on very different facts. In *Miller*, the plaintiff sued AT&T and its Board for knowingly contributing $1.5 million to the Democratic National Committee (by not to collecting the telephone bill for the 1968 Convention), which violated a federal criminal statute against "corporate political contributions" and also violated a similar New York statute. *Miller*, 507 F.2d at 763 n.4. The Third Circuit ruled that the statutory ban on any corporate political payment meant that the alleged payment to the DNC was by definition an intentional felony that could never be the exercise of lawful business judgment. *Id.* at 762–63 (no Business Judgment Rule protection for decisions to "involve[] the corporation in criminal activity.") (citing *Roth v. Robertson*, 64 Misc. 343, 118 N.Y.S. 351 (Sup. Ct. 1909)). The Third Circuit also ruled that the business judgment rule did not apply because corporate political contributions offended New York public policy and, in any event, were "*ultra vires*" acts that under New York precedent are not even business decisions in the first instance. *Miller*, 507 F.2d at 763 & n.4.

This case is very different from *Miller*, and does not support plaintiff's flip analogy that the "logical extreme" of applying § 65 in this case somehow would open the door for a hypothetical company to "kidnap its competitor's CEO." Pl. Op. at 10.[12] These Defendants are not alleged to have committed any crime, nor alleged to have done something that could never be

---

[12]    In stretching to rely on *Miller*, Plaintiff also misstates § 61. Section 61 does not "proscribe" disbursements. It merely provides a provides a private right of action whereby the disbursement amount may later be recovered -- provided, of course, that plaintiffs can overcome the presumption that § 65 is a "complete defense."

legal (such as paying a political group that is never allowed to be paid, or kidnapping).  Nor are

Defendants alleged to done anything deemed "*ultra vires*" under Massachusetts law.

Instead, Plaintiff has sued Defendants for authorizing payments to retirees (or, more

accurately, for not cutting off the retirement benefits), which Plaintiff concedes Defendants had

the "discretion" to do but in hindsight says they should have stopped once Dehon ran short on

money.  Pl. Op. at 9.  The corporate act of authorizing retirement payments or dividends is not in

any sense "*per se*" unlawful -- these are business decisions that are made lawfully every day.

There is, of course, no question that Plaintiff in hindsight can sue Defendants under § 61 for

having done so, but only if he overcomes the "complete defense" that § 65 says "shall apply" to

claims under § 61.  Mass. Gen. L. ch. 156B, § 65.[13]

### C.     The Plain And Unambiguous Terms Of § 65 Cannot Be Replaced By Plaintiff's Policy Arguments About What Would Be More "Logical" Or His Speculation About What Was "Intended" By The Legislature.

Plaintiff does not even suggest that there is any Massachusetts precedent to support the

Bankruptcy Court's recommended ruling that the Business Judgment Rule presumption set forth

in § 65 should be construed narrowly (or ignored altogether) for claims under § 61.  Def. Obj. at

9; Rec. at 17–18.   That legal conclusion is clearly erroneous -- by its very terms, § 65 provides a

"complete defense to *any claim* asserted against" defendants the director.  *See* Mass. Gen. L. ch.

156B, § 65 (emphasis added).  If that wasn't clear enough, § 65 also expressly states that the

Business Judgment Rule presumption of a "complete defense" to "any claim" includes any

claims "under sections sixty to sixty-four inclusive."  *Id.*

---

[13]     The Balotti and Finkelstein *Delaware* treatise cited by Plaintiff, Pl. Op. at 8, states that only nonsensical or criminal decisions -- such as "assassination" and "arson" but decisions to pay retirees -- are exempt from the Business Judgment Rule presumption.  R. Franklin Balotti & Jesse A. Finkelstein, *The Del. L. of Corp. & Bus. Ass'ns* § 4.32 (2005) ("No matter how ill-advised, stupid or questionable . . . a decision might be, the courts will not hold the directors liable for losses resulting from such decisions, unless the decision is so bizarre that no reasonable person would countenance it.").

Plaintiff has no way around the language of § 65. Obviously, Plaintiff's claim under § 61 is a claim "under sections sixty to sixty-four inclusive." *See* Mass. Gen. L. ch. 156B, § 65. Also obvious is that Plaintiff's common law fiduciary duty claim falls within the category of "any claim." *Id.* And the SJC precedent is just as clear: "Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning . . . ." *Mass. Broken Stone Co. v. Town of Weston*, 430 Mass. 637, 639 (2000); *see also Commonwealth v. Clerk-Magistrate of the West Roxbury Div.*, 439 Mass. 352, 255–56 (2003).

Plaintiff does not even attempt to address *Seidman v. Central Bancorp, Inc.*, 2003 WL 21528509 (Mass. Super. Ct. June 30, 2003). There Judge Van Gestel flatly rejected a similar attempt by plaintiffs to re-interpret § 65 to limit the Business Judgment Rule presumption in ways that were not set forth in the statute. *Id.* at *8–9 (concluding that § 65 applies to all claims, and declining to recognize exceptions that do not appear on the face of the Massachusetts statute). This is because § 65 is unambiguous, it means what it says, and therefore that "Legislative language" should not be "modified or altered" by the Court. *Seidman*, 2003 WL 21528509, at *9; Def. Obj. at 10.

Ignoring the precedent, Plaintiff instead makes blithe assertions that the Bankruptcy Court was entitled to deviate from the express terms of § 65 because to do so was "logical" or must have been the "outcome" that the Massachusetts Legislature would have "intended." *See* Pl. Op. at 11. Neither a litigant's speculation about the state of mind of the Legislature, nor the Bankruptcy Court's conclusion about what would be a "logical" alternative approach, supply an appropriate basis upon which to re-write an unambiguous statute. *See Bennett v. City of Holyoke*, 362 F.3d 1, 12 (1st Cir. 2004) (court should not "ignore the plain meaning of the words chosen by the drafters, because this would "distort the statutory structure, and countervail the

12

legislature's discernible intent.").[14]   The Legislature's intentions are assumed to be those it

reduced to writing.  *See Commonwealth v. Tarver*, 369 Mass. 302, 320 (1975) (Tauro, C.J.,

concurring) (judges "should never substitute their views on matters of judgment and policy for

those of the Legislature").

 Finally, Plaintiff cannot escape the (obligatory) plain meaning application of § 65 by

saying that to do so would "make no sense" or would render § 61 "meaningless."   Pl. Op. at 10–

11; Rec. at 18.[15]   As noted, § 65 itself says that it applies to claims under § 61 (*i.e.,* claims under

"sixty to sixty-four, inclusive").   That means the Legislature made a decision that any would-be

plaintiff who wants to sue under § 61can only do so if he can overcome the presumption in § 65

that Defendants have "a complete defense."   Plaintiff may be correct that § 61 would have more

bite if it were not subject to § 65, but that was the Legislature's choice.   And even Plaintiff

acknowledges that statutes should not be interpreted to render certain terms -- such as the

provision that § 65 applies to §§ 60–64 -- superfluous.   *See Volin v. Bd. of Pub. Accountancy*,

222 Mass. 175, 179 (1996); *Bynes v. School Comm. of Boston*, 411 Mass. 264 (1991); *see also*

Pl. Opp. at 11 n.5.[16]

---

[14] This Court should disregard Plaintiff's opinions about legislative "intent" or the public policy implications, because even if the statute was not clear, Plaintiff's opinions are unsupported by any legislative history or other basis.

[15] For never-explained reasons, the Plaintiff asserts that the Bankruptcy Court's recommendation that the Business Judgment Rule presumption be construed differently in an insolvency claim under § 61 is somehow consistent with the "contours of the business judgment rule" under *Harhen*, *Landy*, and *Miller*.  Pl. Op. at 10.  It is difficult, however, to see how that conclusion is *even remotely or inferentially* supported by those cases.  Neither *Harhen* nor *Landy* was brought under § 61 or had anything to do with insolvency.  *Landy*, 316 F. Supp.2d at 53–54; *Harhen*, 431 Mass. at 840–41. The *Miller* case also had nothing to do with insolvency; in any event, a Third Circuit decision under a New York statute provides no basis for the Bankruptcy Court to construe narrowly a Massachusetts statute.

[16] In any event, plaintiff does not explain why plain-meaning application of § 65 in this case would do any injury to § 61, much less render it "meaningless."   Plaintiffs could still bring "any claim" under § 61 -- just like they could bring "any claim" under any theory -- so long as they plead a basis to overcome the Business Judgment Rule presumption.

**D.    This Federal Court Should Not Re-Interpret a State Statute, But Has The Option To Certify Such Questions To The Supreme Judicial Court.**

Defendants submit that Massachusetts law is clear that the Business Judgment Rule presumption of a "complete defense" requires dismissal of the Complaint. But even if there were a cogent basis upon which to replace the plain meaning of § 65 with the Bankruptcy Court's proposed alternative, this federal Court should decline to do so. Under principles of federalism, federal courts applying state laws -- such as § 65 -- adhere to state precedent. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (a federal court is "bound to accept [a state] court's construction of that State's statutes"); *Tarrant v. Ponte*, 751 F.2d 459, 463 (1st Cir. 1985) (federal court will defer to state court interpretation of state statute except in extreme and rare circumstances). This is especially true where, as here, there is SJC precedent on the topic. *See generally Salemme v. Ristaino*, 587 F.2d 81, 87 (1st Cir. 1978) ("It is well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts.").

It is particularly appropriate for this Court to refrain from making (or adopting) any "first impression" rulings about the scope of the Business Judgment Rule because such issues are fundamental to Massachusetts corporate law.[17] Indeed, the procedural history of *Harhen* -- which involved three courts and led to three different opinions whereby the complaint was dismissed, reinstated, and then ultimately dismissed again by the SJC -- itself suggests that disputes regarding the Massachusetts Business Judgment Rule are best addressed by the state courts. *See Harhen v. Brown*, 46 Mass. App. Ct. 793, 710 N.E. 2d 224 (1999) (reversing

---

[17] *See Davis v. Cox*, 356 F.3d 76, 91 n.11 (1st Cir. 2004) (decisions with great ramifications for state law should be certified to state court rather than decided by federal court); *Migliori v. Airborne Freight Corp.*, 952 F. Supp. 38, 43 (D. Mass. 1997) (certifying question where issue of state law implicated policy issue and concluding that state court was appropriate institutional actor to weigh policy issue).

Superior Court's dismissal), *reversed by* 431 Mass. 838 (2000) (reversing Appeals Court and

sustaining Superior Court's dismissal).

This Court's preference to defer to the state courts on state law questions is also

illustrated by *Seidman*.  There Judge Harrington stayed a parallel federal action (even though it

was the first-filed case) to allow Judge Van Gestel to resolve the state-law dispute over the

proper application of the § 65 Business Judgment Rule presumption because there, as here, the

statute was potentially determinative of the parties' dispute.  *Seidman v. Central Bancorp. Inc.*,

*supra*, 2003 WL 21528509, at *2 (noting that federal court had its case in favor of Superior

Court to allow a state court determination of Business Judgment Rule question).

Although there is no parallel state court action here to which to defer, to the extent that

this Court perceives any ambiguity in § 65, it may achieve the same result as in *Seidman* --

deferring to a state court interpretation of the controlling statute -- by certifying the issue to the

SJC:

> This court may answer questions of law certified to it by . . . a
> United States District Court . . . when requested by the certifying
> court if there are involved in any proceeding before it questions of
> law of this state *which may be determinative of the cause then
> pending in the certifying court* and as to which it appears to the
> certifying court there is no controlling precedent in the decisions of
> this court.

Mass. S.J.C. R. 1:03(1) (emphasis added).  There clearly is no Massachusetts precedent to

jettison a plain meaning application of § 65, so if for whatever reason this Court is inclined to do

so, this would be an appropriate question for certification because the answer would provide the

rule of decision necessary to resolve the lawsuit.  *See Dynamic Machine Works, Inc. v. Machine

& Electrical Consultants, Inc.*, 352 F. Supp. 2d 83, 92 (D. Mass. 2005) (certifying question to the

SJC where "the determinative issue in this case depends on a question of Massachusetts law ").

E.    **Plaintiffs' Protestation That The Complaint Is Adequate Is Belied By The Plainly Inadequate Text Of The Complaint Itself.**

1.    **Plaintiff Does Not Address The Pleading Requirements.**

Plaintiff's insistence that his lawsuit not be scrutinized under § 65 may be explained by the fact that the Complaint plainly does not meet the standard.  Def. Obj. at 13–15.  The law is clear that to survive this Motion to Dismiss -- before the Court on *de novo* review -- Plaintiff must plead facts to overcome the Business Judgment Rule presumption.  *See Harhen*, 431 Mass. at 845; *Landry*, 316 F. Supp. 2d at 64*; see also Solomon v. Armstrong*, 747 A.2d 1098, 1111–12 (Del. Ch. 1999) ("[u]nder the business judgment rule, the burden of pleading and proof is on the party challenging the decision to allege facts to rebut the presumption").

2.    **Paragraph 38 Does Not Rebut The Presumption.**

Plaintiff's conclusion that his Complaint is "adequate" to rebut the Business Judgment Rule rests on Paragraph 38, which does not say much:

> On July 20, 1999, the Board of Directors of Dehon voted that beginning with the second quarter of calendar 1999, the payment of dividends on Dehon stock would not be in the best interests of Dehon and that the dividend payments would thereafter be suspended.

Compl. ¶ 38; *see also* Pl. Op. at 12 (offering ¶ 38 as sole example of allegation that Defendants acted unreasonably or in bad faith).

Plaintiff contends that the Bankruptcy Court correctly proposed that ¶ 38 satisfied the (legally erroneous) standard it applied, but he has never really responded to the reasons why it does not.  *See* Def. Obj. at 15–17.  For the most part, all Plaintiff does is pretend that ¶ 38 contains allegations that do not exist in the *actual* Complaint.  *See* Pl. Op. at 11–12.  That is no basis to oppose a motion to dismiss.  *See Landy*, 316 F. Supp. 2d at 76 (plaintiff cannot overcome motion to dismiss under Business Judgment Rule where, as here, allegations are

inadequate, and new ones cannot be added in a brief); Def. Obj. at 16–17.[18]

In any event, Plaintiff does not even attempt to address the reasons why his Complaint (either the actual pleading or the new improvised allegations made in his brief) fails:

- There is nothing in ¶ 38 alleging "knowing malfeasance," Pl. Op. at 12. To the contrary, it explicitly alleges that on the day in question the directors involved in the decision acted "in the best interests of Dehon." Compl. ¶ 38.

- Paragraph 38 says nothing about *any* defendant at all, and cannot he cannot rebut each Defendant's presumption of good faith without alleging anything to distinguish them.[19]

- Plaintiff's theory that ¶ 38 is a sufficient allegation that "all defendants" acted in bad faith confirms the dangers of fact-free pleading because some Defendants were not even on the Board at the time. *See, e.g.,* Def. Obj. at 17 n.12 (the Complaint alleges that Defendant Berman joined the board in December 1999).

- The Complaint explicitly alleges that Defendants considered a valuation of the company in making decisions, which is consistent with good faith and makes any inference of "abdication" impossible. *Compare* Compl. ¶ 33, *with* Rec. at 18 (describing "abdication" by defendants).

- Plaintiff's claim relies on a theory that alleging that *any* director's decision on *any* day is binding on *any other* director's decision on *any other* day. This theory would hamstring directors from reassessing corporate strategy and lock in decisions that may become unwise with the passage of time or the acquisition of new information. *See* Def. Obj. at 17.

### 3. The Cases Plaintiff Cites Undermine His Position

Plaintiff cites only two cases where a Massachusetts court held that a plaintiff had overcome the Business Judgment Rule presumption, but neither supports his position.[20]  If

---

[18]    For example, Plaintiff now misrepresents that ¶ 38 includes an allegation of bad faith by inserting language ("recognizing Dehon's precarious financial state") that does not appear in the actual Complaint. *Compare* Pl. Op. at 3, *with* Compl. ¶ 38.

[19]    The First Circuit recently reaffirmed that Fed. R. Civ. P. 8 requires a plaintiff to plead "facts as to who did what to whom, when, where, and why . . . . [T]he requirements of Rule 8(a)(2) are minimal  --  but 'minimal requirements are not tantamount to nonexistent requirements.'" *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)).

[20]    It bears noting that the other cases that Plaintiff cites to demonstrate that he can overcome this Motion under the Business Judgment Rule ***did not even address*** the Business Judgment Rule and are thus inapposite. *See* Pl. Op. at 4–5, and note 5, *supra*.

anything, both cases undermine his argument because in both the plaintiffs made highly detailed allegations to overcome the Business Judgment Rule presumption.  As noted above, *Independent Bank Corp.* involved a particularized allegation that the director was "interested," absent here. *See* 2003 WL 214784, at \*5–6.  There is no self-dealing alleged in this case, or any thing else that would come close to "interested."  Def. Obj. at 15–17.

Similarly, in *Brandt* the plaintiff had specifically alleged that the director was interested. Specifically, the plaintiff alleged that board members and management responded to a proxy fight by engineering a "white knight" buyout that profited board members handsomely.  *Brandt v. Hicks, Muse & Co.*, 195 B.R. 971, 977–78 (Bankr. D. Mass. 1996).  The court relied upon this allegation in concluding that the complaint had overcome the presumption of the Business Judgment Rule: "[t]he protection afforded a director by the business judgment rule disappears when the director has a personal interest in the transaction."  *Id.* at 984.  Here, by contrast, Defendants are not alleged to have made a penny.

## II. NOTHING IN PLAINTIFF'S BRIEF SAVES THE COMPLAINT FROM PRECLUSION BY ERISA.

Plaintiff says that the case has "nothing to do with ERISA," but doesn't really address why the Complaint is preempted by the Employee Retirement Income Security Act of 1974, *codified as amended*, 29 U.S.C. § 1001, *et seq.* ("ERISA").  *See* Def. Obj. at 17–20.  Plaintiff essentially reiterates the Bankruptcy Court's Recommendation, but conspicuously fails to address that *(i)* the Complaint itself makes Defendants' "discretion" under the Plans a question upon which the claims turn, *see* Compl. ¶ 35; *(ii)* controlling First Circuit precedent provides that a state law claim is preempted by ERISA when the fact-finder "*necessarily* would be required to consult the ERISA plan to resolve the plaintiff's claims," *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 281 (1st Cir. 2000) (emphasis added); and *(iii)* therefore, there is no

way these claims could be litigated without necessarily consulting the Plans. Def. Obj. at 19–20. This alone establishes that the claims are preempted pursuant to the "reference to" prong of the preemption test. *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 324 (1997).

Defendants also argue that the Complaint is preempted under the "connected to" prong of the ERISA preemption test. Def. Obj. at 18–19; *see Dillingham Constr.*, 519 U.S. at 324. On this point, Plaintiff responds that his claims are not in "connection with" an ERISA Plan because *(i)* at the time the Defendants were acting in a capacity as "directors" and not "fiduciaries" (which, if anything, is another ERISA issue) ; and *(ii)* because corporate affairs are matters traditionally left to the states to regulate (which is another reason why this Court should not involve itself in any novel construction of the Business Judgment Rule statute). Pl. Op. at 16. Neither argument withstands scrutiny.

Plaintiff, however, cites only the Fifth Circuit's decision in *Sommers Drug Store* for the proposition that an executive who decides to terminate or not terminate an ERISA Plan is acting as a "director" and not a fiduciary. Pl. Op. at 16 (citing *Sommers Drug Store Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1468 (5th Cir. 1986)). *Sommers* is distinguishable, however, because in that case the plaintiff was both an ERISA Plan and a shareholder of the corporation, and the defendants were both fiduciaries of the ERISA Plan and directors of the corporation. *Sommers,* 793 F.2d at 1468. The *Sommers* court concluded that this symmetry meant that there was no conflict between the shareholder-director litigation and the ERISA relationship, because the defendants would owe the same duty to plaintiffs under either relationship. *Id.* at 1468–69. By contrast, in the present case the duty owed by Defendants to the Plan beneficiaries and to the companies creditors is not symmetrical -- in fact, on Plaintiff's own

theory, is was the decision not to terminate the Plans that gives rise to the liability.  Def. Obj. at

18.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' Opening Brief, this

Court should reject the Recommendation, and order the dismissal of Counts I–V of the

Complaint.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

/s/ Jonathan A. Shapiro
Jeffrey B. Rudman (BBO #433380)
Mark D. Selwyn (BBO #565595)
Jonathan A. Shapiro (BBO #567838)
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Counsel for Defendants R. Schorr Berman, John W.
Brown, Jerome H. Grossman, M.D., Margaret G.
Kerr, Pamela W. Mcnamara, Arno A. Penzias,
Javier Rotllant, and Gerhard Schulmeyer.*

Dated: January 17, 2006